MARC E. MAYER (SBN 190969)
  mem@msk.com
MARK C. HUMPHREY (SBN 291718)
  mxh@msk.com
GENEVIEVE L. JAVIDZAD (SBN 336138)
  glj@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Activision Publishing, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> ENGINEOWNING UG, a German corporation, CMM HOLDINGS S.A., a German corporation, VALENTIN RICK, an individual, LEONARD BUGLA, an individual, LEON FRISCH, an individual, IGNACIO GAYDUCHENKO, an individual, MARC-ALEXANDER RICHTS, an individual, ALEXANDER KLEEMAN, an individual, and DOES 1-50, inclusive, <br><br> Defendants. | CASE NO. 2:22-cv-00051- MWF (JCx) <br><br> [Assigned to Judge Michael Fitzgerald] <br><br> ***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS** <br><br> Complaint Filed: January 4, 2022 |

Mitchell Silberberg & Knupp LLP

13865460.2

*EX PARTE* **APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

## NOTICE OF *EX PARTE* APPLICATION

PLEASE TAKE NOTICE that Plaintiff Activision Publishing, Inc. ("Plaintiff" or "Activision") hereby applies *ex parte* pursuant to Federal Rule of Civil Procedure 26(d) and Local Rule 7-10 for leave to serve fifteen (15) subpoenas necessary for Activision to learn the identities of unnamed or alias "Doe" Defendants in this action and to ensure that all necessary parties have been named in this lawsuit.  Copies of the proposed subpoenas are attached as **Exhibit 1** to the Declaration of Marc E. Mayer, filed concurrently herewith.

The Defendants in this lawsuit operate, oversee, provide services for, or otherwise participate in an online business venture called "EngineOwning." The EngineOwning venture is engaged in the development, sale, distribution, marketing, and exploitation of a portfolio of malicious cheats and hacks (the "Cheating Software") for popular multiplayer games, especially Activision's immensely popular *Call of Duty* series of games (collectively, the "Games").  The Cheating Software enables players to manipulate the Games to their personal advantage, such as by automatically aiming weapons, revealing locations of opponents, and allowing players to see information that otherwise would be obscured.  The Cheating Software also includes features that are deliberately designed to thwart Activision's cheat detection software and to overcome or nullify actions taken by Activision against cheaters, such as "hardware ID spoofers" that mask the identity of a user's computer.  Defendants' sale and distribution of the Cheating Software has caused and is continuing to cause Activision to lose revenue and to suffer damage to its goodwill and reputation.

Activision's investigation has revealed that in addition to the named Defendants in this case (six individuals and two entities), at least 15 other anonymous individuals are independently and directly engaged in distributing the Cheating Software, maintaining or administering the EngineOwning Website,

Mitchell
Silberberg &
Knupp LLP

13865460.2

*EX PARTE* **APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

1   providing technical support or assistance, and/or assisting with the development of

2   the Cheating Software.  These individuals, who are named as "Doe" defendants

3   (the "Doe Defendants") engage in unlawful activities using online aliases.

4   Activision thus has been unable to determine the true names and capacities of these

5   individuals or entities prior to filing this lawsuit, and have reason to believe that

6   these individuals will continue to conceal their identities.  In order for Activision to

7   obtain the relief it seeks, and to ensure that all appropriate parties are included as

8   Defendants in this lawsuit, expedited third-party discovery is necessary to identify

9   the Doe Defendants as well as any additional unnamed parties.

10         Good cause exists for the requested limited discovery.  This case involves

11   violations of Section 1201 of the Digital Millennium Copyright Act, claims for

12   intentional interference with contract, and claims for unfair competition.  These

13   claims are supported by law and will easily be proven.  Activision has conducted

14   an extensive and diligent investigation and has concluded that (1) subpoenas are

15   necessary to identify the Doe Defendants, and (2) the entities identified in the

16   subpoenas attached hereto are in possession of information that will either disclose

17   the Doe Defendants' true identities, or lead to the discovery thereof.  Accordingly,

18   Activision requests limited early discovery to identify the Doe Defendants and

19   ensure that all such persons or entities are named in the action.

20         This Application is made on an *ex parte* basis, because if Activision is

21   required to bring a noticed motion, it is likely that it will not obtain the requested

22   information for several months, at the earliest.  Activision then would be required

23   to amend its Complaint and locate and serve any new or additional parties.  As a

24   result, without the requested expedited relief, this case potentially would not be at

25   issue for many months.

26         This Application is based upon this Notice, the attached Memorandum of

27   Points and Authorities, the attached supporting Declaration of Marc E. Mayer, the

28

Mitchell
Silberberg &
Knupp LLP

13865460.2

3

1   Complaint in this action, and such other and further oral or documentary evidence

2   and legal memoranda as may be presented at or before any hearing on this

3   Application.

4

5   DATED:  January 13, 2022          MARC E. MAYER

6                           MARK C. HUMPHREY
                             GENEVIEVE L. JAVIDZAD

7                           MITCHELL SILBERBERG & KNUPP LLP

8

9                    By:  */s/ Marc E. Mayer*
                             Marc E. Mayer (SBN 190969)

10                            Attorneys for Activision

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

4

13865460.2

1

# **TABLE OF CONTENTS**

2

**Page**

3   MEMORANDUM OF POINTS AND AUTHORITIES ................................................8

4   I.      INTRODUCTION.........................................................................................8

5   II.     STATEMENT OF FACTS............................................................................9

6   III.    ACTIVISION SHOULD BE GRANTED LEAVE TO TAKE LIMITED THIRD
7           PARTY DISCOVERY.................................................................................15

8           A.     The Requested Discovery Will Identify Specific Unnamed Individuals Who
                   are Subject to Jurisdiction in This Court. ...........................................17

9

10          B.     Activision Has Taken Reasonable Steps to Locate and Identify the Unnamed
                   Defendants..........................................................................................20

11          C.     Activision's Claims Will Withstand a Motion to Dismiss. ..................20

12

13          D.     The Requested Discovery is Likely to Reveal the Identities of the Doe
                   Defendants..........................................................................................23

14          E.     The Need for the Requested Discovery Outweighs Any Conceivable
                   Prejudice to Defendants. .....................................................................23

15

16   IV.     CONCLUSION ...........................................................................................25

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

13865460.2

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY
DISCOVERY TO IDENTIFY DOE DEFENDANTS**

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adobe Sys. Inc. v. One Stop Micro, Inc.*,
  84 F. Supp. 2d 1086 (N.D. Cal. 2000) ............................................................... 22

*American LegalNet, Inc. v. Davis*,
  673 F. Supp. 2d 1063 (C.D. Cal. 2009) .............................................................. 16

*Blizzard Ent., Inc. v. Bossland GmbH*,
  2017 WL 7806600 (C.D. Cal. Mar. 31, 2017) ................................................... 21

*Blizzard Ent., Inc. v. Bossland GmbH*,
  No. SACV161236DOCKESX, 2017 WL 412262 (C.D. Cal. Jan. 25, 2017) ........ 18, 19

*Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.*,
  No. SACV191582JVSDFMX, 2020 WL 1972284 (C.D. Cal. Feb. 7, 2020) ........ 18

*Blizzard Entertainment Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006 (C.D. Cal. 2013) ................................................................ 22

*Calder v. Jones*,
  465 U.S. 783 (1984) ........................................................................................... 20

*Core-Vent Corp. v. Nobel Industries AB*,
  11 F.3d 1482 (9th Cir. 1993) .............................................................................. 20

*Coupons, Inc. v. Stottlemire*,
  588 F. Supp. 2d 1069 (N.D. Cal. 2008) .............................................................. 23

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) .............................................................. 18

*Davidson & Assocs., Inc. v. Internet Gateway*,
  334 F. Supp. 2d 1164 (E.D. Mo. 2004), *aff'd*, 422 F.3d 630 (8th Cir. 2005) ........ 22

*Geddes v. United Fin. Grp.*,
  559 F.2d 557 (9th Cir. 1977) .............................................................................. 21

*Gillespie v. Civiletti*,
  629 F.2d 637 (9th Cir. 1980) .............................................................................. 16

*Hallet v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) .............................................................................. 15

*Knapp v. Americredit Fin. Servs., Inc.*,
  204 F.R.D. 306 (S.D. W.Va. 2001) .................................................................... 23

Mitchell
Silberberg &
Knupp LLP

13865460.2

*EX PARTE* **APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Maclin v. Paulson,*
    627 F.2d 83 (7th Cir. 1980)....................................................................................17

*Munz v. Parr,*
    758 F.2d 1254 (8th Cir. 1985)...............................................................................16

*NobelBiz, Inc. v. Wesson,*
    2014 WL 1588715 (S.D. Cal. Apr. 18, 2014)........................................................16

*Rose v. Abraham,*
    2008 WL 3540542 (E.D. Cal. Aug. 13, 2008) .......................................................16

*Semitool, Inc. v. Tokyo Electron Am., Inc.,*
    208 F.R.D. 273 (N.D. Cal. 2002) ....................................................................16, 24

*Skout, Inc v. Jen Processing, Ltd,*
    2015 WL 224930 (N.D. Cal. Jan. 15, 2015) ...............................16, 17, 18, 20, 23

*UMG Recordings, Inc. v. Doe,*
    2008 WL 2949427 (N.D. Cal. July 30, 2008) .......................................................16

*UMG Recordings, Inc. v. Doe,*
    2008 WL 4104214 (N.D. Cal. Sept. 3, 2008)...................................................17, 24

*Valentin v. Dinkins,*
    121 F.3d 72 (2d Cir. 1997) ....................................................................................16

**STATUTES**

17 U.S.C.
    § 1201 ..................................................................................................................3, 21
    § 1201(b)(1)........................................................................................................20, 21

Cal. Bus. & Prof. Code
    § 17200 *et seq.*.........................................................................................................22

**OTHER AUTHORITIES**

Fed. Rule Civ. Proc. 26(d)..............................................................................................2

Mitchell
Silberberg &
Knupp LLP

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

13865460.2

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3         The Defendants in this lawsuit have built a profitable business based on the

4    development, promotion, and sale of software products and related services that

5    enable members of the public to cheat in the immensely popular *Call of Duty* series

6    of video games (the "Cheating Software").  Plaintiff Activision Publishing, Inc.

7    ("Activision') is the owner of copyright in the *Call of Duty* games and maintains

8    the competitive online multiplayer aspects of the games.

9         Like many unlawful online business ventures, Defendants operate in the

10   shadows, using anonymous online aliases, private chat channels, fictitious shell

11   corporations, Internet proxy or masking services, and online financial services in

12   order to hide their identities and minimize their online footprints.  In the meantime,

13   under the (mistaken) belief that they cannot be found, Defendants have expressed

14   open disdain for Activision's enforcement efforts, including by creating new

15   cheating products for Activision's just-released game *Call of Duty: Vanguard*,

16   updating their existing products to thwart Activision's cheat detection efforts, and

17   mocking Activision's counsel by creating fake online accounts in their name.

18   Indeed, just days ***after*** this lawsuit was filed, Defendants updated and improved the

19   Cheating Software, announcing this development on their Twitter feed:



26        Defendants' conduct has caused, and is continuing to cause, significant

27   monetary and reputational harm to Activision and its products.  Accordingly, by

Mitchell
Silberberg &
Knupp LLP

13865460.2

28

8

this motion, Activision requests leave of court to issue subpoenas designed to elicit the identities of certain specific individuals whose online aliases have been disclosed in the Complaint and/or who own and or operate the corporate defendant in this action, EngineOwning UG.

Good cause exists for this request.  The Doe Defendants are specific individuals who are actively and deliberately engaged in conduct intended to harm Activision.  For months, Activision has been working to obtain the names of the Doe Defendants.  While Activision has been able to identify some of the participants in the EngineOwning venture, it has not been successful in locating the Doe Defendants.  Thus, the only way to ensure that all necessary individuals are included in this lawsuit (and have been served) is to seek circumscribed early discovery.  The discovery sought by this *Ex Parte* Application should disclose information that will enable Activision to uncover the real names and locations of the primary individuals responsible for the operation of the EngineOwning Website and the development, promotion, and sale of the Cheating Software.

There will be no prejudice to any of the Defendants (named or unnamed) if the requested discovery is permitted.  To the contrary, Activision would be entitled to this discovery in the normal course.  In addition, the subpoenaed party will give notice to any impacted party, who will have a full opportunity to object or move to quash, if he or she so elects.  (And, of course, any Doe Defendant who is identified and added as a named defendant will have a full opportunity to present his or her defenses to the merits of the claims.)  Should any additional discovery be required, Activision will seek leave of Court to serve that discovery.

## II.    STATEMENT OF FACTS

**Activision and Its Anti-Cheating Enforcement Efforts.** Activision is the owner and publisher of the *Call of Duty* series of video games (the "COD Games").  The COD Games are "first-person shooter" video games that allow

Mitchell
Silberberg &
Knupp LLP

players to step into the shoes of elite soldiers and engage in infantry combat against other players around the world.  The COD Games are highly competitive, and the games are played not just by casual players, but also by professional and semi-professional "esports" players (who compete for six and seven-figure prizes).  Many players spend hundreds (or thousands) of hours developing their skills and competing to be at the top of online leaderboards, either for their personal satisfaction or in the hopes of being spotted by recruiters for professional esports franchises.

Activision implements both technical and contractual measures to prevent players from cheating or otherwise gaining unfair advantages in the game.  These technical measures include anti-cheat software and other technology that is designed to detect the use of cheats and restrict access to players who use known software cheats.  Additionally, all users must agree to a Terms of Use and End User License Agreement, which specifically prohibit players from cheating or using unauthorized software that gives them a competitive advantage.

**Defendants and EngineOwning.**  Defendants are a group of individuals and shell corporations who either do business under the name "EngineOwning," or work closely with the owners and operators of the EngineOwning venture.  Collectively, Defendants are engaged in the development, sale, distribution, marketing, and exploitation of a portfolio of malicious cheats and hacks for popular online multiplayer games.  The most popular and prominent of EngineOwning's cheats are those it offers for use with the COD Games (the "Cheating Software").  The Cheating Software provides players with a variety of competitive advantages, such as seeing enemies through walls or other barriers, automatically aiming weapons, and (in EngineOwning's words) "knowing where players, weapons and items are through the entire map."

Mitchell
Silberberg &
Knupp LLP

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

13865460.2

The Cheating Software is sold primarily via a website located at www.EngineOwning.to (the "EngineOwning Website"), which prominently features the Games on its home page, as illustrated below:



Additionally, the Cheating Software is sold through resellers and distributors who are paid a portion of the sales of the Cheating Software. Broadly speaking, Defendants are software developers; website operators, "moderators," and administrators; promoters and online "influencers"; resellers; and customer support representatives.

In order for the Cheating Software to operate, it circumvents or bypasses the technical anti-cheat and access control protections used by Activision to protect the integrity of the COD Games. Additionally, the use of the Cheating Software necessarily violates the Terms of Service and End-User License Agreement. In fact, the Cheating Software has no other purpose but to enable players to engage in conduct that is prohibited by Activision's contracts with its players. Defendants are well aware that the use of cheats is prohibited by Activision – and that Activision spends an enormous amount of time, money, and energy policing its

Mitchell
Silberberg &
Knupp LLP

13865460.2

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

game for cheaters – and thus it advertises the Cheating Software as "undetectable" by Activision.  Defendants also provide "Hardware ID Spoofing," which allows users to hide their computer's digital "signature" and thus evade attempts by Activision to terminate the players' accounts when they are caught cheating.  As a result, when Defendants market and distribute the Cheating Software, they are knowingly engaging in acts of intentional interference with the contracts between Activision and its customers.

**Activision's Pre-Lawsuit Investigation.**  Starting in 2017, Activision, with the assistance of a highly experienced outside investigative service, conducted an extensive and diligent investigation into the owners and operators of EngineOwning.  The investigation involved scouring public sources and databases, reviewing thousands of web pages and online message boards, and monitoring public chat rooms and video streams.  As a result of this investigation, Activision was able to discover the identities of some of the operators of EngineOwning, including Defendants Valentin Rick (a/k/a Skyfail), Mark-Alexander Richts, and Ignacio Gayduchenko (a/k/a Kokole).  In 2017 and 2018, Activision contacted each of these individuals in writing and demanded that they cease and desist from further selling the Cheating Software.  They did not respond to these communications, even after four or five follow-up letters and emails.  Declaration of Marc E. Mayer ("Mayer Decl."), ¶ 5.

In the meantime, Defendants – now fully aware of Activision's claims against them – expanded their operations.  For example, Defendants created new versions of the Cheating Software, updated existing software, and expanded their reseller network and staff.

Activision's investigators continued their investigation for the next two years, in an attempt to identify all of the participants in the EngineOwning business venture.  During that investigation, Activision discovered the existence of many

Mitchell
Silberberg &
Knupp LLP

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

13865460.2

more individuals who were directly involved in developing, supporting, or distributing the Cheating Software.  Activision was able to identify some of these individuals, such as Defendants Leonard Bulga and Leon Frisch.  However, despite its best efforts, Activision was not able to discover the real names of several other individuals, such as those using the aliases "Bonsai," "Agriolo," "Chronos," "Deutschlander," "Enceladus," "Homie," "Jeuwifghue," "LogicX," "LuoZheng," "mortyy," "NOL3X," "SlapstiK," "Croatle," "Speedi13," and "Requi."  These individuals have been sued as Does 1 through 15 in this lawsuit.

Activision has reason to believe that all of these Doe Defendants play direct, significant roles in connection with the EngineOwning enterprise and the sale of the Cheating Software.  For example, "Croatle" or "Boss" (Doe 13) has a leadership role within the organization, through which he or she participates and/or assists in the development, maintenance, distribution and sale of the Cheating Software. "Speedi13" (Doe 14) and "Requi" (Doe 15) act or have acted as coders for the Cheating Software, and in that role have participated and/or assisted in the development, maintenance, distribution and sale of the Cheating Software.

**The Requested Discovery.**  Activision's investigation disclosed that Defendants (including the Doe Defendants) use a variety of online services to engage in their activities.  These services include social media networks, payment processors, domain name registrars, and video game distribution platforms.  Activision has reason to believe that each of these online services possesses critical information that will enable Activision to identify the Doe Defendants and other anonymous individuals who create, sell, market, and otherwise promote the Cheating Software.  The requested third-party discovery falls into the following categories:

**1.    Social Media Platforms.**  Defendants use several social media networks and platforms to advertise the Cheating Software, communicate with

Mitchell
Silberberg &
Knupp LLP

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

customers, announce updates and new products, and warn customers when the Cheating Software is detected by Activision.  Most prominent of these is Discord, which is a communications platform focused on the video game community. Defendants operate several Discord "servers" and regularly communicate with each other on these servers.  Defendants, including the Doe Defendants, also have Twitter, Instagram, Reddit, YouTube, and Trustpilot accounts that are used to promote the Cheating Software and otherwise communicate their activities to the public.  These social media platforms require users to create an account by providing names and valid email addresses.  They also keep records of IP addresses used to create these accounts.  Accordingly, Defendants expect that subpoenas to these platforms will produce information that can be used to identify the Doe Defendants or other unnamed defendants that are involved with EngineOwning and the Cheating Software.

      **2.**      **Payment Processors.**  Defendants use various online payment processors to sell the Cheating Software to the public.  Additionally, Defendants may transfer money between and among themselves.  For example, a reseller of the Cheating Software will remit a portion of the sale price to others within the organization.  Among the payment processors used by Defendants are Stripe, PayPal, Amazon Pay, and Coinbase.  Activision believes that these payment processors will possess critical information about the Doe Defendants, including email addresses, IP addresses, and other account information.

      **3.**      **Domain Name Services.**  Defendants have registered domain names for the EngineOwning Website and other related websites through domain registrars located in the United States: namely, Tucows, Inc. and NameCheap, Inc. These entities are in possession of relevant information, such as names, addresses, email addresses, and IP addresses for the Doe Defendants.  Additionally,

Mitchell
Silberberg &
Knupp LLP

14

13865460.2

Defendants use the services of Cloudflare to conceal the identity of the servers that they use to host the EngineOwning Website.

**4.**     **Github Code Repositories.**  Defendants operate or participate in repositories of computer code related to the Cheating Software.  These code repositories are maintained by Github.  Github allows members of the public to upload and share computer code and modify or improve code uploaded by others.  Github users must register accounts with the service, and thus Github will be in possession of relevant identifying information.

**5.**     **Steam.**  Steam is a video game distribution platform that also includes certain community and social features, such as the ability to create social "groups," lists of "friends," and chat rooms.  The Doe Defendants maintain Steam accounts.  They also created accounts and groups intended to "troll" Activision and its counsel, such as the group titled "MSK Crime" and the account name "Marc E. Mayer."  Steam possesses information concerning these accounts, including verified email addresses and IP addresses.

Activision has attached all of its proposed subpoenas as **Exhibit 1** to this Application.  These subpoenas have been prepared in good faith and for the legitimate purpose of identifying the Doe Defendants.  They are narrow and limited only to information that is relevant to the identification of the Doe Defendants or other yet-unknown operators and sellers of the Cheating Software.  Activision will provide the third parties with no less than 21 days to respond to the subpoenas.

## III.   ACTIVISION SHOULD BE GRANTED LEAVE TO TAKE LIMITED THIRD PARTY DISCOVERY.

District courts have broad discretion in scheduling discovery, including broad discretion to order expedited discovery prior to a Rule 26 conference.  *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  The court may authorize expedited

Mitchell Silberberg & Knupp LLP

13865460.2

1   discovery for "good cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D.

2   273, 276 (N.D. Cal. 2002); *accord American LegalNet, Inc. v. Davis*, 673 F. Supp.

3   2d 1063, 1066 (C.D. Cal. 2009); *NobelBiz, Inc. v. Wesson*, 2014 WL 1588715, at

4   *1 (S.D. Cal. Apr. 18, 2014); *Rose v. Abraham*, 2008 WL 3540542, at *3 (E.D.

5   Cal. Aug. 13, 2008); *UMG Recordings, Inc. v. Doe*, 2008 WL 2949427, at *3

6   (N.D. Cal. July 30, 2008) (collecting cases).

7        Good cause generally exists "where the need for expedited discovery, in

8   consideration of the administration of justice, outweighs the prejudice to the

9   responding party." *Semitool*, 208 F.R.D. at 276.  In determining whether good

10  cause exists for pre-service discovery, courts consider whether: (1) the plaintiff can

11  identify the missing party with sufficient specificity such that the Court can

12  determine that defendant is a real person or entity who could be sued in federal

13  court; (2) the plaintiff has identified all previous steps taken to locate the elusive

14  defendant; (3) the plaintiff's suit against defendant could withstand a motion to

15  dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood

16  of being able to identify the defendant through discovery such that service of

17  process would be possible.  *Skout, Inc v. Jen Processing, Ltd*, 2015 WL 224930, at

18  *2 (N.D. Cal. Jan. 15, 2015).

19       As set forth below, good cause exists for the requested limited expedited

20  discovery.  In fact, Courts routinely allow early discovery to identify anonymous

21  or "Doe" defendants such as the Doe Defendants in this action.  *See Gillespie v.

22  Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of [the] alleged

23  defendant[] [is] not [] known prior to the filing of a complaint[,] the plaintiff

24  should be given an opportunity through discovery to identify the unknown

25  defendants, unless it is clear that discovery would not uncover the identities, or that

26  the complaint would be dismissed on other grounds[.]"); *Valentin v. Dinkins*, 121

27  F.3d 72, 75-76 (2d Cir. 1997); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985);

28

Mitchell
Silberberg &
Knupp LLP

16

*EX PARTE* **APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

1  *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980).  Such discovery is especially

2  appropriate where individuals "pseudonymously or anonymously" commit tortious

3  acts over the Internet.  *UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *4

4  (N.D. Cal. Sept. 3, 2008) ("In Internet infringement cases, courts routinely find

5  good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's

6  identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie

7  showing of infringement, and there is no other way to identify the Doe defendant,

8  and there is a risk an ISP will destroy its logs prior to the conference.") (citation

9  omitted).  The Court likewise should allow such discovery here.

10      A.      **The Requested Discovery Will Identify Specific Unnamed**

11              **Individuals Who are Subject to Jurisdiction in This Court.**

12      Under the first factor, "the Court must examine whether the Plaintiff has

13  identified the Defendants with sufficient specificity, demonstrating that each

14  Defendant is a real person or entity who would be subjected to jurisdiction in this

15  Court."  *Skout, Inc*, 2015 WL 224930, at *2.

16      Activision's Complaint includes specific allegations that each of the

17  aforementioned fifteen Doe Defendants is a real individual who has undertaken a

18  demonstrated effort to develop, maintain, and distribute the Cheating Software,

19  assist customers in operating the Cheating Software, give advice to customers as to

20  how to avoid being caught or detected by Activision for using the Cheating

21  Software, communicate to users about updates and improvements to the Cheating

22  Software, act as moderator and/or administrator of the EngineOwning Website,

23  resell the Cheating Software (both through the EngineOwning Website and other

24  means), or otherwise facilitate the distribution and use of the Cheating Software.

25  Compl. ¶¶ 35-47.  Activision has identified at least fifteen of the Doe Defendants'

26  specific online aliases and personas.  *Id.* at ¶¶ 11-20; *see also* Mayer Decl. ¶ 8.

27  The online activity engaged in by Defendants is in service of promoting

28

Mitchell
Silberberg &
Knupp LLP

17

13865460.2

widespread sales and use of the Cheating Software.  *Id.* at ¶ 9.  Therefore, the requested third party discovery is likely to uncover substantially more information about the Doe Defendants.  The requested discovery will provide a tangible trail of evidence that will enable Activision to ascertain precisely who is behind these pseudonyms and where he, she, or they are located, so they may be identified, and if possible, named as defendants in this action.

Activision also has sufficiently alleged that the unnamed Doe Defendants are subject to the jurisdiction of this Court.  *See* Compl. ¶¶ 5-8; *see also Skout, Inc*, 2015 WL 224930, at *2 (finding that the allegations of the plaintiff's complaint showed personal jurisdiction over unnamed defendants).  Without discovery, Activision cannot conclusively determine where the Doe Defendants reside, but some or all of them may be located in the United States.  Regardless, when foreign individuals advertise and distribute malicious software products in the United States, knowing that the software will be used to disrupt the business activities of a U.S. company and interfere with contracts between the company and its customers, they may be subject to personal jurisdiction in U.S. federal courts.  *See, e.g., Blizzard Ent., Inc. v. Bossland GmbH*, No. SACV161236DOCKESX, 2017 WL 412262, at *5 (C.D. Cal. Jan. 25, 2017) (personal jurisdiction over German company selling World of Warcraft cheating software to U.S. customers); *Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.,* No. SACV191582JVSDFMX, 2020 WL 1972284, at *6 (C.D. Cal. Feb. 7, 2020) ("The Court finds that Zroad HK purposefully availed itself of the privilege of conducting business in the United States by distributing the Infringing Game on platforms such as the Google Play store and Microsoft App store, selling virtual currency to American customers, and advertising the Infringing Game via platforms like Facebook."); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (personal jurisdiction established in California where nonresident defendant: (i) maintained

Mitchell
Silberberg &
Knupp LLP

18

commercial website that was interactive and open to California residents; (ii) knowingly and intentionally accessed and used Plaintiff's website and developed, marketed, and sold software for the sole purpose of enabling users to bypass the security measures of Plaintiff's website, in violation of its TOUs; and (iii) directly targeted California and knew that Plaintiff would suffer the brunt of its harm in California because Plaintiff was headquartered and maintained its website in California).

As Judge Carter explained *in Blizzard Ent., Inc. v. Bossland GmbH*, No. SACV161236DOCKESX, 2017 WL 412262, at *5 (C.D. Cal. Jan. 25, 2017):

> Bossland's software works exclusively in conjunction with Blizzard's American-designed and American-based game. Bossland's Bots have been widely circulated in the United States, as Bossland has sold almost 100,000 licenses to persons in the United States to use its Bots in the United States.  Bossland caused copyright injury in the United States, and the "brunt" of the harm felt by Blizzard was suffered in the United States. Further, Bossland generates between ten and fifteen percent of its companywide revenue from the sale of the Bots in the United States.

Here, not only do the facts closely parallel those in *Bossland*, but Defendants have further solidified their presence in California – and intent to attract, maintain, and service U.S. and California customers – by boasting on the EngineOwning Website that they maintain at least two servers in the United States, including one in California.  Compl. ¶ 7(e).  Activision's investigation also has revealed that Defendants contract with and extensively use a variety of entities located in the United States and the State of California, including domain name registries, hosting or content delivery services, as well as credit card processors and merchant banks.  Moreover, Defendants know that their conduct is causing harm to Activision in the United States (and the State of California in particular).  They

Mitchell
Silberberg &
Knupp LLP

13865460.2

1 even created fake online profiles for the purpose of harassing Activision's outside

2 counsel.

3      The foregoing is more than sufficient to establish specific personal

4 jurisdiction over Defendants, including under the "effects" test of *Calder v. Jones*,

5 465 U.S. 783 (1984). *See Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482,

6 1486 (9th Cir. 1993) (in tort cases, jurisdiction is appropriate where there are "(1)

7 intentional actions (2) expressly aimed at the forum state (3) causing harm, the

8 brunt of which is suffered – and which the defendant knows is likely to be suffered

9 – in the forum state.").

10      **B.**    **Activision Has Taken Reasonable Steps to Locate and Identify the**

11        **Unnamed Defendants.**

12      "Under the second factor, the party should identify all previous steps taken

13 to locate the elusive defendant." *Skout, Inc*, 2015 WL 224930, at *3. As set forth

14 above, Activision has conducted an extensive preliminary investigation, including

15 with the assistance of outside private investigative firms. Mayer Decl. ¶ 4. This

16 comprehensive investigation revealed that the Doe Defendants have taken steps to

17 obscure their identities, including by operating exclusively using online aliases. *Id.*

18 ¶¶ 5-8; *see also* Compl. ¶¶ 11-20. Activision currently cannot tie these online

19 aliases to real names without additional information maintained by the above-

20 described third parties. The primary avenue available to Activision in order to

21 collect core evidence in this case before it is lost or destroyed is to seek early

22 discovery to identify those unnamed individuals responsible for the EngineOwning

23 Website and the Cheating Software.

24      **C.**    **Activision's Claims Will Withstand a Motion to Dismiss.**

25      Activision's claims are straightforward, strong, supported by relevant case

26 law, and would easily survive a Motion to Dismiss. The DMCA, Section 17

27 U.S.C. § 1201(b)(1), provides that "[n]o person shall manufacture, import, offer to

28

Mitchell
Silberberg &
Knupp LLP

13865460.2

20

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY
DISCOVERY TO IDENTIFY DOE DEFENDANTS**

the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that… circumvent[s] protection afforded by a technological measure that effectively protects a right of a copyright owner[.]" Activision has sufficiently pleaded all elements of this claim: Activision alleges that the Call of Duty Games ("COD Games") are protected works, Compl. ¶ 49, and that Activision has long maintained numerous technological measures within the COD Games that effectively control access to them, "including access to the dynamic audiovisual elements that comprise the game." *Id.* ¶ 50.

The Complaint explains, in detail, how the Cheating Software is designed, marketed, sold and used for the sole purpose of enabling players of the COD Games to circumvent the extensive technological measures put in place to deny access to individuals using such software. *Id.* ¶¶ 40-47. In particular, the Complaint includes specific factual allegations that describe Defendants' marketing of the Cheating Software to specifically circumvent anti-cheating technologies and violate the DMCA. *Id.* ¶ 41. Further, Activision alleges that the Cheating Software has "no commercially significant purpose or use other than to circumvent a technological measure that effectively controls a copyrighted work and that protects the exclusive rights of a copyright owner." *Id.* ¶ 52. These allegations are more than sufficient to state a claim for violation of the anti-circumvention provisions of the DMCA, 17 U.S.C. § 1201(b)(1). *See Blizzard Ent., Inc. v. Bossland GmbH*, 2017 WL 7806600, at *4 (C.D. Cal. Mar. 31, 2017) (allegations that defendants' cheating software was "designed to circumvent technological measures that control access to a copyright-protected work" satisfied a similar, if not higher, standard to obtain a default judgment under Rule 54.).[1]

---

[1] Similar to a Rule 12 inquiry, a Default Judgment inquiry requires the Court to evaluate the sufficiency of a Complaint's well-pleaded allegations. *Id.* at *2, *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Mitchell Silberberg & Knupp LLP

21

*EX PARTE* **APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

1    Activision also is likely to prevail on its claim for Intentional Interference

2    with Contractual Relations.  Activision's Terms of Use ("TOU") for online

3    services are enforceable contracts under California law.  *Blizzard Entertainment*

4    *Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013)

5    (granting summary judgment against hack maker for inducing breach of Blizzard's

6    EULA); *see also Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086,

7    1089-93 (N.D. Cal. 2000) (end user license agreement valid under California law);

8    *Davidson & Assocs., Inc. v. Internet Gateway*, 334 F. Supp. 2d 1164, 1170-71,

9    1177-78 (E.D. Mo. 2004), *aff'd*, 422 F.3d 630 (8th Cir. 2005).

10    As is alleged in the Complaint, the Cheating Software cannot be used

11    without violating Activision's EULA, which expressly prohibits players from

12    using precisely the type of Cheating Software that Defendants market and sell.

13    Compl. ¶¶ 32-34.  The Complaint alleges and explains that these agreements must

14    be reviewed and assented to by each and every user in order to play the COD

15    Games.  *See id.* ¶¶ 32, 34.  In other words, the Complaint adequately alleges that

16    every user who uses the Cheating Software in the Games also necessarily has

17    assented to enforceable agreements that clearly prohibit the use of cheating

18    software.  Furthermore, as is alleged in the Complaint, Defendants intentionally

19    induced other users to breach the TOU by selling the Cheating Software, despite

20    their knowledge that licensed users of the Games were required to assent to those

21    agreements.  *Id.* ¶ 41.

22    Activision also has adequately alleged an Unfair Competition claim.

23    California Business & Professions Code § 17200 *et seq.* defines "unfair

24    competition" as an "unlawful, unfair or fraudulent business act or practice…."

25    Common law unfair competition has four elements: (1) a substantial investment of

26    "time, skill or money in developing its property"; (2) appropriation and use of the

27    property by another company at little or no cost; (3) the appropriation and use of

28

Mitchell
Silberberg &
Knupp LLP

***EX PARTE* APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY
DISCOVERY TO IDENTIFY DOE DEFENDANTS**

13865460.2

the "property was without the authorization or consent"; and (4) injury by the appropriation and use by the other company. *Coupons, Inc. v. Stottlemire*, 588 F. Supp. 2d 1069, 1075 (N.D. Cal. 2008).  Activision has invested substantial time, skill and money in developing both the highly successful and lucrative Games, as well as maintaining anti-cheat technology. *See, e.g.,* Compl. ¶¶ 30-31.  The Cheating Software uses and interacts with the Games in direct violation of Activision's EULA in order to disrupt the player experience.  And, as noted, Defendants' for-profit activities harm Activision, while enriching Defendants. *Id.* at ¶ 35, 40-47.

### D.    <u>The Requested Discovery is Likely to Reveal the Identities of the Doe Defendants.</u>

"The final factor concerns whether the discovery sought will uncover the identities of the Doe Defendants." *Skout, Inc*, 2015 WL 224930, at *4.  Here, the requested discovery will likely reveal the identities of the individuals or entities primarily responsible for the operation of the EngineOwning Website and the development, marketing, and sale of the Cheating Software, including the at least fifteen Doe Defendants, because the discovery will seek identifying information that the Doe Defendants were required to provide to the target Internet service providers in order to use their services, but instead did so under various aliases.

### E.    <u>The Need for the Requested Discovery Outweighs Any Conceivable Prejudice to Defendants.</u>

The proposed (limited) expedited discovery will serve the interests of justice, as it will ensure that all necessary defendants are included in this lawsuit as soon as possible. *See Knapp v. Americredit Fin. Servs., Inc.*, 204 F.R.D. 306, 308-09 (S.D. W.Va. 2001) (granting expedited discovery to determine the identity of Doe defendants because it "further[s] the goal of assuring that the necessary parties are joined and participating in this action at the earliest possible date");

*Semitool*, 208 F.R.D. at 277 (reasoning that expedited discovery is justified where it will "substantially contribute to moving th[e] case forward"); *see also* Mayer Decl. ¶ 15.  Here, it is critical that Activision be able to expeditiously identify and include in this lawsuit all of the individuals responsible for the EngineOwning Website and the Cheating Software, including and especially the Doe Defendants in this lawsuit, for several reasons:

      ***First***, online data is often ephemeral in nature and is only retained for a limited period of time before it is destroyed in the ordinary course of business.  *See UMG Recordings, Inc.*, 2008 WL 4104214, at *5 (finding good cause for expedited discovery where there is a risk an online service provider might destroy logs and records of a defendant's identifying information).  The risk of losing critical data and evidence is particularly acute here, since this lawsuit has been publicized by the video game press and thus the Doe Defendants are aware that they have been sued.  They may undertake efforts to make themselves even more difficult to find.  For example, they may switch service providers or domain name providers.  They may transfer assets to other corporations or other individuals.  They may delete online profiles and accounts.  They may use alternative payment processors or financial institutions, may move to untraceable currencies such as Bitcoin, or may change their aliases.

      ***Second***, if Activision is required to wait to take discovery until the named defendants appear in the action and participate in a Rule 26 conference (which they may not do), the Doe Defendants may not be named and included in the lawsuit for several months and, potentially, after the Court has already conducted a scheduling conference and set a trial date.  It certainly is in the interests of justice for all necessary parties to be identified, and service commenced, immediately.

      ***Third***, some aspects of Activision's requested relief, such as an order and injunction requiring Defendants to shut down the EngineOwning Website and the

Mitchell
Silberberg &
Knupp LLP

*EX PARTE* **APPLICATION OF PLAINTIFF ACTIVISION PUBLISHING, INC. FOR LIMITED EARLY DISCOVERY TO IDENTIFY DOE DEFENDANTS**

1  Cheating Software, provide an accounting and deliver infringing materials, are

2  only possible if aimed at an identified individual (or individuals).

3        In contrast to the foregoing, there will be no prejudice to Defendants (both

4  named and unnamed) if the Application is granted.  If the Court grants this

5  Application, Activision will promptly serve the subpoenas and will provide a

6  reasonable response date for the subpoena (no less than 21 days).  The subpoenaed

7  parties will be able to notify any affected persons that Activision is seeking their

8  identities and all parties will have the opportunity to raise objections by filing a

9  motion to quash in this Court before the return date of the subpoena.  What's more,

10  the subpoenaed parties will be asked for information that they would have

11  eventually provided in the normal course of discovery, so it imposes no extra

12  burden for these same third parties to respond to discovery on an expedited basis.

13

14  **IV.    CONCLUSION**

15        For the foregoing reasons, Activision's *Ex Parte* Application for leave to

16  take expedited discovery should be granted.

17

18  DATED:  January 13, 2022          MARC E. MAYER

19                                    MARK C. HUMPHREY
                                      GENEVIEVE L. JAVIDZAD

20                                    MITCHELL SILBERBERG & KNUPP LLP

21                                    By:  */s/ Marc E. Mayer*

22                                         Marc E. Mayer (SBN 190969)
                                           Attorneys for Activision

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

13865460.2

25