MARC E. MAYER (SBN 190969)
  mem@msk.com
MARK C. HUMPHREY (SBN 291718)
  mxh@msk.com
GENEVIEVE L. JAVIDZAD (SBN 336138)
  glj@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENGINEOWNING UG, a German corporation, CMM HOLDINGS S.A., a German corporation, VALENTIN RICK, an individual, LEONARD BUGLA, an individual, LEON FRISCH, an individual, IGNACIO GAYDUCHENKO, an individual, MARC-ALEXANDER RICHTS, an individual, ALEXANDER KLEEMAN, an individual, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-00051-MWF (JCx)<br><br>[Assigned to Judge Michael W. Fitzgerald]<br><br>**PROOF OF SERVICE OF SUMMONS ON DEFENDANT VALENTIN RICK**<br><br>Complaint Filed: January 4, 2022 |

Mitchell
Silberberg &
Knupp LLP

14325342.1

**TO THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE that** Plaintiff Activision Publishing, Inc. ("Plaintiff") effectuated service of the following initiating documents on Defendant **Valentin Rick**:

1. Summons on Complaint;
2. Civil Cover Sheet;
3. Complaint;
4. Complaint Translated in German;
5. Civil Cover Sheet Translated in German; and,
6. Summons on Complaint Translated in German.

These initiating documents were served by the following methods:

A. Service under Article 5 of the Hague Convention at 85276 Pfaffenhofen an der llm, Saazer StraBe 13, Germany on April 28, 2022, *see* Exhibit A.

DATED:  June 28, 2022

MARC E. MAYER
MARK C. HUMPHREY
GENEVIEVE L. JAVIDZAD
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Marc E. Mayer*
Marc E. Mayer (SBN 190969)
Attorneys for Plaintiff

Mitchell Silberberg & Knupp LLP
14325342.1

2

# EXHIBIT A

Amtsgericht Pfaffenhofen a.d.Ilm
Ingolstädter Straße 45
85276 Pfaffenhofen

Az.: **10 AR 14/22**

**Z U S T E L L U N G S Z E U G N I S**

**C E R T I F I C A T E**

**A T T E S T A T I O N**

Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,
The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

1. dass der Antrag erledigt worden ist *)
   that the document has been served *)
   que la demande a été exécutée *)

   - am (Datum) **28.04.2022**
     the (date)
     le (date)

   - in (Ort, Straße, Nummer) **85276 Pfaffenhofen an der Ilm, Saazer Straße 13**
     at (place, street, number)
     à (localité, rue, numéro)

   - in einer der folgenden Formen nach Artikel 5:
     in one of the following methods authorised by article 5:
     dans une des formes suivantes prévues à l'article 5:

| | |
|---|---|
| a) in einer der gesetzlichen Formen (Artikel 5 Absatz 1 Buchstabe a) *). in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *). selon les formes légales (article 5, alinéa premier, lettre a) *). | Da durch den Postbediensteten die Übergabe des Schriftstücks (Ladung in einem Zivilverfahren, Deckblatt für Zivilklagen, Klage wegen (1) unerlaubtem Handel von Umgehungsgeräten (2) vorsätzlichem Eingriff in vertragliche Beziehungen (3) Wettbewerbsverzerrung, jeweils englisch mit deutschen Übersetzungen) an den Adressaten in der Wohnung persönlich nicht möglich war, wurde die Zustellung im Wege der Ersatzzustellung durch Einlegen des zuzustellenden Schriftstücks in den zur Wohnung gehörenden Briefkasten oder ähnliche Vorrichtung am 28.04.2022 bewirkt. |
| b) in der folgenden besonderen Form *): in accordance with the following particular method *): selon la forme particulière suivante *): | |
| c) durch einfache Übergabe *). by delivery to the addressee, who accepted it voluntarily *). par remise simple *). | |

Die in dem Antrag erwähnten Schriftstücke sind übergeben worden an:
The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:

   - (Name und Stellung der Person) _____
     (identity and description of person)
     (identité et qualité de la personne)

   - Verwandtschafts-, Arbeits- oder sonstiges Verhältnis zum Zustellungsempfänger: _____
     relationship to the addressee (family, business or other):
     liens de parenté, de subordination ou autres, avec le destinataire de l'acte:

| | |
|---|---|
| 2. daß der Antrag aus folgenden Gründen nicht erledigt werden konnte *): that the document has not been served, by reason of the following facts *): que la demande n'a pas été exécutée, en raison des faits suivants *): | _____ |

Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der beiliegenden Aufstellung im einzelnen angegeben sind, zu zahlen oder zu erstatten *).
In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *).
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint *).
Anlagen
Annexes
Annexes
Zurückgesandte Schriftstücke: **Doppel der eingereichten Schriftstücke**
Documents returned:
Pièces renvoyées:

| | |
|---|---|
| Gegebenenfalls Erledigungsstücke: In appropriate cases, documents establishing the service: Le cas échéant, les documents justificatifs de l'exécution: | Ausgefertigt in Done at Fait à      **Pfaffenhofen an der Ilm,  06.05.2022** |

Amtsgericht Pfaffenhofen a. d. Ilm
Ingolstädter Str. 45
85276 Pfaffenhofen

Unterschrift und/oder Stempel.          Gauß
Signature and/or stamp.              Rechtspflegerin
Signature et/ou cachet.

*) Unzutreffendes streichen.
   Delete if inappropriate.

**Exhibit A**
**Page 4**

Seal: Pfaffenhofen an der Ilm district court Ingolstädter Strasse 45 85276 Pfaffenhofen

# CERTIFICATE

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

1) that the document has been served*

- the (date)        4/28/2022

-at (place, street, number)   85276 Pfaffenhofen an der Ilm, Saazer Strasse 13

- in one of the following methods authorized by Article 5:

*a)* in accordance with the provisions of sub-paragraph *(a)* of the first paragraph of article 5 of the Convention.*

Since the delivery of the document (summons in a civil lawsuit, lawsuit for (1) unauthorized trading of circumvention devices (2) intentional interference in contractual relationships (3) distortion of competition, each English with German translations) by the postal employee to the addressee in the apartment was personally not possible, the service was effected by way of substitute delivery by placing the document to be served in the mailbox belonging to the apartment or similar device on April 28, 2022.

*b) in accordance with the following particular method* :*

*c) by delivery to the addressee, who accepted it voluntarily* *

The documents referred to in the request have been delivered to:

- (identity and description of person)

- relationship to the addressee (family, business or other)

*2) that the document has not been served, by reason of the following facts* :*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.

*Annexes*

Documents returned:

In appropriate cases, documents establishing the service:

Done at Pfaffenhofen an der Ilm    5/6/2022

the

Signature and/or stamp

Seal: Pfaffenhofen an der Ilm district court Ingolstädter Strasse 45 85276 Pfaffenhofen

//round seal//

**Exhibit A**
**Page 5**

# ANTRAG
## AUF ZUSTELLUNG GERICHTLICHER UND AUSSERGERICHTLICHER SCHRIFTSTÜCKE IM AUSLAND

**Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.**

| Identität und Anschrift des Antragstellers | Anschrift der Empfangsbehörde |
|---|---|
| **ABC Legal Services**<br>**633 Yesler Way**<br>**Seattle, WA 98104**<br>**USA**<br><br>Zugelassener Antragsteller gemäß dem öffentlichen Gesetz 97-351 vom 26. Februar 1983, das die Regel 4(c) 2(a) der Zivilprozessordnung änderte | **Präsident des Oberlandesgerichts**<br>**München**<br>**Prielmayerstrasse 5**<br>**80097 München**<br>**Deutschland**<br><br>Der Präsident<br>des Oberlandesgerichts München<br><br>Eing. 2 2. Feb. 2022<br><br>..... Akt ..... Heft ..... Beil. .... Abdr.<br>Nr. 9341aE  III- 1081 2022 |

Der unterzeichnete Antragsteller übermittelt in zweifacher Ausfertigung die unten bezeichneten Schriftstücke und ersucht in Übereinstimmung mit Artikel 5 des obengenannten Übereinkommens um die unverzügliche Zustellung einer Ausfertigung davon an den folgenden Adressaten:

> (Identität und Anschrift)
> **VALENTIN RICK**
> **Saazer St. 13**
> **85276 Pfaffenhofen**
> **Deutschland**

> GEBURTSDATUM:                    Telefon:

[x] (a) in Übereinstimmung mit den Bestimmungen von Unterabsatz (a) des ersten Absatzes von Artikel 5 des Übereinkommens.*

[ ] (b) in Übereinstimmung mit der folgenden spezifischen Methode (Unterabsatz (b) des ersten Absatzes von Artikel 5):*

_____

[ ] (c) durch Zustellung an den Adressaten, falls er diese freiwillig annimmt (zweiter Absatz von Artikel 5).*

Die Behörde wird darum ersucht, dem Antragsteller eine Ausfertigung der Schriftstücke -- und der Anlagen* -- zu senden oder dies zu veranlassen -- mit einem Nachweis, wie dies auf der Rückseite vorgesehen ist.

| | |
|---|---|
| Datum der Anhörung:<br><br>Liste der Schriftstücke:<br>**LADUNG IN EINER ZIVILKLAGE;**<br>**DECKBLATT FÜR ZIVILKLAGEN; KLAGE**<br>**WEGEN (1) UNERLAUBTEM HANDEL VON**<br>**UMGEHUNGSGERÄTEN;**<br>**(2) VORSÄTZLICHEM EINGRIFF IN**<br>**VERTRAGLICHE BEZIEHUNGEN;**<br>**(3) WETTBEWERBSVERZERRUNG;**<br>**SCHRIFTSTÜCKE WERDEN AUF**<br>**ENGLISCH UND DEUTSCH**<br>**BEREITGESTELLT** | Geschehen in Seattle, Washington, USA, am 4. Februar 2022<br>Unterschrift und/oder Stempel<br><br>⧉abclegal<br><br>(stamp: INTERNATIONAL JUDICIAL ASSISTANCE · WASHINGTON D.C.)<br><br>USM 94 Rev. 11/22/77 |

Trackingnummer: **0082651919**
[Barkode]

USM-94 (VOM 22.11.1977)
(Ehemals OBD-116, was offiziell LAA-116 war, wobei beides möglicherweise noch verwendet wird)
* Nichtzutreffendes streichen

# BESCHEINIGUNG

**Der Unterzeichnete bescheinigt in Übereinstimmung mit Artikel 6 des Übereinkommens,**

1) Dass das Schriftstück zugestellt wurde*
   am (Datum) _____
   an der Adresse (Ort, Straße, Nummer) _____
   _____

auf eine der folgenden, von Artikel 5 zugelassenen Weisen:
   [ ] (a) in Übereinstimmung mit den Bestimmungen des Unterabschnitts (a)
   des ersten Paragrafen von Artikel 5 des Übereinkommens.*

   [ ] (b) in Übereinstimmung mit der folgenden Methode:*
   _____
   _____

   [ ] (c) durch Zustellung an den Empfänger, der es freiwillig angenommen hat.*

Die in diesem Antrag genannten Schriftstücke wurden geliefert an:
   (Identität und Beschreibung der Person)
   _____

   Beziehung zum Empfänger (Familienangehöriger, Unternehmen oder sonstiges)
   _____

2) Dass das Schriftstück nicht zugestellt wurde aufgrund der folgenden Fakten:*
   _____
   _____


**In Übereinstimmung mit dem zweiten Abschnitt von Artikel 12 des Übereinkommens muss der Antragsteller die in der beigefügten Erklärung aufgeführten Kosten zahlen oder wiedererstatten.***


Anlagen

Zurückgesandte Schriftstücke:

_____          Geschehen in _____, am _____
_____
_____          Unterschrift und/oder Stempel

In entsprechenden Fällen, Schriftstücke, die die
Zustellung begründen:

_____          _____
_____
_____
_____

**Trackingnummer: 0082651919**
[Barkode]

USM-94 (VOM 22.11.1977)
(Ehemals OBD-116, was offiziell LAA-116 war, wobei
beides möglicherweise noch verwendet wird)
* Nichtzutreffendes streichen

**Exhibit A**
**Page 7**

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| **ABC Legal Services**<br>**633 Yesler Way**<br>**Seattle, WA 98104**<br>**United States of America**<br><br>Authorized applicant pursuant to public law 97-351 of Feb. 26, 1983<br>which amended rule 4(c) 2(a) Federal Rules of Civil Procedure | **Präsident des Oberlandesgerichts**<br>**München**<br>**Prielmayerstrasse 5**<br>**80097 München**<br>**Germany**<br><br>Des Oberlandesgerichts München<br>Eing. **2 2. Feb. 2022**<br>..... Akt ..... Heft ..... Beil. ..... Abdr.<br>Nr. *9341aE-III-108/2022* |

The undersigned applicant has the honour to transmit-in-duplicate the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.;

(identity and address)

**VALENTIN RICK**
**Saazer St. 13**
**85276 Pfaffenhofen**
**Germany**

DOB:                    Phone:

☒ (a) in accordance with the provisons of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5):*

_____

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of aticle 5).*

The authority is requested to return or to have returned to the applicant a copy of the documents – and of the annexes* – with a certificate as provided on the reverse side.

Hearing Date:

List of Documents:

**SUMMONS IN A CIVIL ACTION; CIVIL COVER SHEET; COMPLAINT FOR: (1) TRAFFICKING IN CIRCUMVENTION DEVICES; (2) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; (3) UNFAIR COMPETITION; DOCUMENTS PROVIDED IN BOTH ENGLISH AND GERMAN**

Done at Seattle, Washington USA, on Feb 4 2022

Signature and/or stamp





Tracking #: **0082651919**

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

**Exhibit A**
**Page 8**

# CERTIFICATE

**The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,**

1) that the document has been served*
   the  (date) _____
   at  (place, street, number) _____

   in one of the following methods authorized by article 5:
   ☐ (a) in accordance with the provisions of sub-paragraph (a)
         of the first paragraph of article 5 of the Convention.*
   ☐ (b) in accordance with the following particular method:*
         _____
         _____
   ☐ (c) by delivery to the addressee, who accepted it voluntarily.*

   The documents referred to in the request have been delivered to:
         (identity and description of person)
         _____
         _____
         relationship to the addressee family, business, or other
         _____

2) that the document has not been served, by reason of the following facts:*
   _____
   _____

**In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.***

Annexes

Documents returned:

_____          Done at _____, the _____
_____
_____          Signature and/or stamp

In appropriate cases, documents establishing
the service:                             _____

_____
_____
_____



Tracking #: **0082651919**

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

**Exhibit A**
**Page 9**

# ZUSAMMENFASSUNG DES ZUZUSTELLENDEN SCHRIFTSTÜCKS

**Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland in Zivil- oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.**

## (Artikel 5, 4. Absatz)

Name und Anschrift der ersuchenden Behörde:  **ABC Legal Services
633 Yesler Way
Seattle, WA 98104
USA**

Angaben zu den Parteien:

**ACTIVISION PUBLISHING, INC., ein Unternehmen** gegen **ENGINEOWNING UG, ein deutsches
von Delaware                                      Unternehmen; UND ANDERE**

## GERICHTSDOKUMENT*

Art des Dokuments:
**Benachrichtigung des Beklagten über die Erhebung einer Zivilklage gegen ihn.**

Art und Zweck des Verfahrens und ggf. Angabe des Streitwerts:
**Der Kläger ersucht um die Wiedererlangung von zivilrechtlichem Schadenersatz und anderen**

**Rechtsbehelfen. Der Betrag ist bei Gericht festzustellen.**

Datum und Ort der Einlassung:*
**Der Beklagte hat 21 Tage nach Erhalt der beigefügten Ladung, um sich schriftlich**

**einzulassen. Die Anschrift ist auf der Ladung vermerkt.**

Gericht, das das Urteil erlassen hat:*
**k.A.**

Datum des Urteils:*
**k.A.**

Die in dem Schriftstück genannten Fristen:*  Der Beklagte hat 21 Tage nach Erhalt der beigefügten Ladung, um sich
                                             schriftlich einzulassen. Die Anschrift ist auf der Ladung vermerkt.

  Datum der Anhörung: **k.A.**

## AUSSERGERICHTLICHES SCHRIFTSTÜCK*

Art des Dokuments:
**k.A.**

Die in dem Schriftstück genannten Fristen:*
**k.A.**

Trackingnummer: **0082651919**
  [Barkode]

USM-94 (VOM 22.11.1977)
.(Ehemals OBD-116, was offiziell LAA-116 war, wobei
beides möglicherweise noch verwendet wird)
* Nichtzutreffendes streichen.

**Exhibit A
Page 10**

# SUMMARY OF THE DOCUMENT TO BE SERVED

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

**(article 5, fourth paragraph)**

Name and address of the requesting authority:   **ABC Legal Services**
**633 Yesler Way**
**Seattle, WA 98104**
**United States of America**

Particulars of the parties:

**ACTIVISION PUBLISHING, INC., a Delaware corporation**   vs.   **ENGINEOWNING UG, a German corporation; ET AL.**

## JUDICIAL DOCUMENT*

Nature of the document:
**To give notice to the Defendant of the institution against them of a civil lawsuit.**

Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
**Plaintiff is seeking to recover civil damages and other relief, amount to be determined in court.**

Date and place for entering appearance:*
**Defendant has 21 days from receipt of the accompanying Summons to make a written appearance, address is noted on the Summons.**

Court which has given judgment:*
**n/a**

Date of judgment:*
**n/a**

Time limits stated in the document:*   **Defendant has 21 days from receipt of the accompanying Summons to make a written appearance, address is noted on the Summons.**
    Hearing Date:   **n/a**

## EXTRAJUDICIAL DOCUMENT*

Name and purpose of the document:
**n/a**

Time limits stated in the document:*
**n/a**



Tracking #: **0082651919**

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

**Exhibit A**
**Page 11**

# ACHTUNG

Übereinkommen über die Zustellung gerichtlicher und außergerichtlicher Schriftstücke im Ausland in Zivil-oder Handelssachen, unterzeichnet in Den Haag am 15. November 1965.

### Identität und Anschrift des Empfängers:

VALENTIN RICK
Saazer St. 13
85276 Pfaffenhofen
Deutschland

### WICHTIG

*DAS BEIGEFÜGTE SCHRIFTSTÜCK IST RECHTLICHER NATUR UND WIRKT SICH MÖGLICHERWEISE AUF IHRE RECHTE UND PFLICHTEN AUS. DIE „ZUSAMMENFASSUNG DES ZUZUSTELLENDEN SCHRIFTSTÜCKS" INFORMIERT SIE ÜBER DIE ART UND DEN ZWECK DES SCHRIFTSTÜCKS. SIE SOLLTEN JEDOCH DAS SCHRIFTSTÜCK SELBST GENAU DURCHLESEN. ES IST MÖGLICHERWEISE NOTWENDIG, EINEN RECHTSANWALT HINZUZUZIEHEN.*

*WENN IHRE FINANZIELLEN MITTEL UNZUREICHEND SIND, SOLLTEN SIE SICH DAZU INFORMIEREN, OB ES IHNEN MÖGLICH IST, RECHTSBEIHILFE ODER JURISTISCHEN RAT ZU ERHALTEN, ENTWEDER IN DEM LAND, IN DEM SIE LEBEN ODER IN DEM LAND, IN DEM DAS SCHRIFTSTÜCK ERTEILT WURDE.*

*ANFRAGEN ZUR VERFÜGBARKEIT VON RECHTSBEIHILFE ODER JURISTISCHEN RAT IN DEM LAND, IN DEM DAS SCHRIFTSTÜCK ERTEILT WURDE, KÖNNEN GERICHTET WERDEN AN DAS:*

### US-BEZIRKSGERICHT FÜR DEN ZENTRALEN BEZIRK VON KALIFORNIEN

*Es wird empfohlen, dass die Standardklauseln in der Mitteilung in englischer und französischer Sprache verfasst werden, und wenn anwendbar, auch in der Amtssprache oder in einer der Amtssprachen des Staates, in dem das Schriftstück verfasst wurde. Die Leerstellen können entweder in der Sprache des Staates, an den die Schriftstücke zu schicken sind, ausgefüllt werden oder in Englisch oder Französisch.*

Trackingnummer: **0082651919**

[Barkode]

USM-94 (VOM 22.11.1977)
(Ehemals OBD-116, was offiziell LAA-116 war, wobei beides möglicherweise noch verwendet wird)
* Nichtzutreffendes streichen.

**Exhibit A**
**Page 12**

## WARNING

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965

**Identité et adresse du destinataire / Identity and address of the addressee / -----:**

VALENTIN RICK
Saazer St. 13
85276 Pfaffenhofen
Germany

### IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE

### IMPORTANT

*THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.*

*IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.*

*ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:*

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.*

*It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French.*

  Tracking #: 0082651919

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

AO 440 (Fassung 06/12) Ladung in einem Zivilverfahren
========================================================================================================

# US-BEZIRKSGERICHT
### für den
### ZENTRALEN BEZIRK VON KALIFORNIEN

|  |  |
|---|---|
| ACTIVISION PUBLISHING, INC., ein Unternehmen von Delaware, _____ *Kläger* gegen ENGINEOWNING UG, ein deutsches Unternehmen, CMM HOLDINGS S.A., ein deutsches Unternehmen, VALENTIN RICK, eine Privatperson; LEONARD BUGLA, eine Privatperson; LEON FRISCH, eine Privatperson, IGNACIO GAYDUCHENKO, eine Privatperson, MARC-ALEXANDER RICHTS, eine Privatperson, ALEXANDER KLEEMAN, eine Privatperson, und DOE-Beklagte 1 bis einschließlich 50, _____ *Beklagte(r)* | Zivilklagenr. 2:22-cv-00051 |

### LADUNG IN EINEM ZIVILVERFAHREN

An: *(Name und Anschrift des Beklagten)*
VALENTIN RICK
Saazer St. 13
85276 Pfaffenhofen, Deutschland

Gegen Sie wurde ein Gerichtsverfahren eingeleitet.

Sie müssen innerhalb von 21 Tagen nach der Zustellung dieser Ladung an Sie (ausgenommen dem Tag, an dem Sie sie erhalten haben) --- oder 60 Tage, wenn Sie die Vereinigten Staaten von Amerika sind oder eine Behörde der Vereinigten Staaten von Amerika, oder ein Beamter oder Mitarbeiter der Vereinigten Staaten von Amerika, wie beschrieben in Fed. R. Civ. P. 12 (a)(2) oder (3) --- dem Kläger eine Erwiderung zu der beigefügten Klage oder ein Antrag nach Regel 12 der Federal Rules of Civil Procedure (FRCP) zustellen. Die Erwiderung oder der Antrag muss dem Kläger oder dem Rechtsanwalt des Klägers zugestellt werden, dessen Name und Anschrift folgende(r) ist:
Marc E. Mayer (SBN 190969)
Mitchell Silberberg & Knupp LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067, USA
Tel. +1 (310) 312-2000

Wenn Sie die Klage nicht erwidern, wird gegen Sie ein Versäumnisurteil gefällt für den in der Klage geforderten Rechtsbehelf. Sie müssen Ihre Erwiderung oder Ihren Antrag auch bei Gericht einreichen.

*URKUNDSBEAMTER DES GERICHTS*

Datum:

_____          _____
Unterschrift des Urkundsbeamten oder des
Stellvertreters des Urkundsbeamten

American LegalNet, Inc.
www.FormsWorkFlow.com

**Exhibit A**
**Page 14**

Rechtssache 2:22-cv-00051   Dokument 3-5   Eingereicht am 4.1.2022   Seite 2 von 2   Seiten-ID Nr. 39

Formular AO 440 (Fassung 06/12) Ladung in einem Zivilverfahren (Seite 2)

Zivilklagenr.

## ZUSTELLNACHWEIS
### *(Dieser Abschnitt ist nicht bei Gericht einzureichen, es sei denn dies wird von Fed. R. Civ. P. 4 (I) verlangt)*

Diese Ladung für (*Name der Person und ggf. Titel*) _____

wurde von mir erhalten am (*Datum*) _____ .

☐ Ich habe die Ladung persönlich dem Beklagten zugestellt. Ort, an dem zugestellt wurde: _____

_____ am (*Datum*) _____ ; oder

☐ Kopien bei der Wohnadresse des Beklagten oder beim gewöhnlichen Aufenthaltsort des Beklagten hinterlassen
bei (*Name*) _____ , eine Person ausreichenden Alters und Geschäftsfähigkeit,
die damals dort gewohnt hat, und zwar am (*Datum*) _____ , und eine Kopie an die zuletzt bekannte Adresse der
Person zugesandt; oder

☐ Ich habe die Ladung (*Name der Person*) _____ zugestellt, der/die per Gesetz
bestimmt ist, die Zustellung der Gerichtsdokumente im Namen von (*Name der Organisation*) _____
_____ anzunehmen, und zwar am (Datum) _____ ; oder

☐ Ich habe die Ladung als „Nicht zugestellt" zurückgeschickt, weil _____ ; oder

☐ Sonstiges (*bitte angeben*): _____

Meine Gebühren belaufen sich auf US$ _____ für Reisekosten und US$ _____ für Dienste, auf insgesamt
US$ 0,00.

Ich erkläre unter Androhung einer Strafe für Meineid, dass diese Angaben wahr sind.

Datum: _____

_____
*Unterschrift des Zustellers*

_____
*Name und Titel in Druckschrift*

_____
*Adresse des Zustellers*

Weitere Angaben zu der versuchten Zustellung usw.:

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation, <br><br> *Plaintiff(s)* <br><br> v. <br><br> ENGINEOWNING UG, a German corporation, CMM HOLDINGS S.A., a German corporation, VALENTIN RICK, an individual, LEONARD BUGLA, an individual, LEON FRISCH, an individual, IGNACIO GAYDUCHENKO, an individual, MARC-ALEXANDER RICHTS, an individual, ALEXANDER KLEEMAN, an individual, and DOES 1-50, inclusive, <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 2:22-cv-00051 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
VALENTIN RICK
Saazer St.13
85276 Pfaffenhofen, Germany

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Marc E. Mayer (SBN 190969)
Mitchell Silberberg & Knupp LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone: (310) 312-2000

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                    *Signature of Clerk or Deputy Clerk*



**Exhibit A**
**Page 16**

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.


Date: _____                         _____
                                                            *Server's signature*

                                              _____
                                                            *Printed name and title*


                                              _____
                                                            *Server's address*

Additional information regarding attempted service, etc:



**Exhibit A**
**Page 17**

Rechtssache 2:22-cv-00051   Dokument 2   Eingereicht am 4.1.2022   Seite 1 von 3   Seiten-ID Nr. 25

**US-BEZIRKSGERICHT, ZENTRALER BEZIRK VON KALIFORNIEN**
**DECKBLATT FÜR ZIVILKLAGEN**

| **I. (a) KLÄGER** (Kreuzen Sie das Kästchen an, wenn Sie sich selbst vertreten [ ] )<br>ACTIVISION PUBLISHING, INC., ein Unternehmen von Delaware | **BEKLAGTE** (Kreuzen Sie das Kästchen an, wenn Sie sich selbst vertreten [ ] )<br>ENGINEOWNING UG, ein deutsches Unternehmen, und andere |
|---|---|
| (b) Wohnort des erstgenannten Klägers ___Los Angeles___<br>*(AUSGENOMMEN IN SACHEN MIT AMERIKANISCHEN KLÄGERN)* | Wohnort des erstgenannten Beklagten _____<br>*(NUR IN SACHEN MIT AMERIKANISCHEN KLÄGERN)* |
| (c) Anwälte *(Kanzleiname, Anschrift und Telefonnummer)*. Wenn Sie sich selbst vertreten, geben Sie dieselben Angaben an.<br>Marc E. Mayer (SBN 190969); mem@msk.com<br>Mitchell Silberberg & Knupp LLP<br>2049 Century Park East, 18. Etage<br>Los Angeles, Kalifornien 90067-3120 Tel. +1 (310) 312-2000 | Anwälte *(Kanzleiname, Anschrift und Telefonnummer)*. Wenn Sie sich selbst vertreten, geben Sie dieselben Angaben an. |

**II. GRUNDLAGE DER GERICHTSBARKEIT** (Setzen Sie ein „X" in nur einem Kästchen)

| | |
|---|---|
| ☐ 1. US-amerikanische Regierung Kläger | ☒ 3. Föderative Angelegenheit (US-amerikanische Regierung keine Partei) |
| ☐ 2. US-amerikanische Regierung Beklagter | ☐ 4. Vielfalt (Geben Sie die Staatsangehörigkeit der Parteien in Punkt III an) |

**III. STAATSANGEHÖRIGKEIT DER HAUPTPARTEIEN** - (Nur bei Vielfallsachen) (Setzen Sie ein „X" in einem Kästchen für den Kläger und in einem Kästchen für den Beklagten)

| | KLÄ | BEKL | | KLÄ | BEKL |
|---|---|---|---|---|---|
| Staatsangehöriger dieses Staates | ☐ 1 | ☐ 1 | Gegründet in *oder* Hauptsitz in diesem Staat | ☐ 4 | ☐ 4 |
| Staatsangehöriger eines anderen Staates | ☐ 2 | ☐ 2 | Gegründet in *und* Hauptsitz in einem anderen Staat | ☐ 5 | ☐ 5 |
| Bürger oder Staatsangehöriger eines fremden Landes | ☐ 3 | ☐ 3 | Ausländische Nation | ☐ 6 | ☐ 6 |

**IV. URSPRUNG** (Setzen Sie ein „X" in nur einem Kästchen)

☒ 1 Ursprüngliches Gerichtsverfahren   ☐ 2 Vom Staatsgericht   ☐ 3 An das Appellationsgericht oder geöffnet   ☐ 4 Wieder eingestellt zurückverwiesen   ☐ 5 Aus einem anderen Bezirk übertragen (bitte angeben)   ☐ 6 Gerichtsverfahren in mehreren Bezirken - Übertragung   ☐ 8 Gerichtsverfahren in mehreren Bezirken-Direkte Einreichung

**V. GEFORDERT IN DER KLAGE: FORDERUNG EINES GESCHWORENENPROZESSES** ☒ Ja ☐ Nein (Kreuzen Sie „Ja" nur an, wenn in der Klage gefordert)
**GEMEINSCHAFTSKLAGE** nach F.R.Cv.P. 23: ☐ Ja ☒ Nein   ☐ **IN DER KLAGE GEFORDERTER GELDBETRAG: $**

**VI. KLAGEGEGENSTAND** (Führen Sie das US-amerikanische Zivilgesetzbuch unter welchem sie diese Rechtssache einreichen und verfassen Sie eine kurze Aussage zum Klageground. Führen Sie nicht die gerichtlichen Statuten an außer wenn Vielfalt)

Verletzung von 17 USC § 1201, Vorsätzlicher Eingriff

**VII. ART DES VERFAHRENS** (Setzen Sie ein „X" in nur einem Kästchen)

| SONSTIGE GESETZE | VERTRAG | IMMOBILIEN | EINWANDERUNG | KLAGESCHRIFT VON GEFANGENEN | EIGENTUMSRECHTE |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC § 3729(a))<br>☐ 400 Neue Einteilung des Staates<br>☐ 410 Kartell<br>☐ 430 Banken und Bankwesen<br>☐ 450 Handel/ICC Raten/usw.<br>☐ 460 Deportation<br>☐ 470 Erpresser beeinflusst und korrupte Organisationen<br>☐ 480 Konsumentenkredit<br>☐ 490 Kabel-/Satellitenfernsehen<br>☐ 850 Wertpapieren/Rohstoffe/ Börse<br>☐ 890 Sonstige gesetzliche Handlungen<br>☐ 891 Landwirtschaftliche Gesetze<br>☐ 893 Umweltangelegenheiten<br>☐ 895 Gesetz zur Informationsfreiheit<br>☐ 896 Schlichtung<br>☐ 899 Verwaltungsverfahrens- gesetz/ Prüfung oder Anfechtung der Behördenentscheidung<br>☐ 950 Verfassungsmäßigkeit der Staatsgesetze | ☐ 110 Versicherung<br>☐ 120 Seerecht<br>☐ 130 Gesetz Miller<br>☐ 140 Verhandelbares Dokument<br>☐ 150 Wiedererstattung einer Überzahlung & Urteils- durchsetzung<br>☐ 151 Medicare Gesetz<br>☐ 152 Wiedererstattung eines in Verzug geratenen Studentendarlehens (Ausgeschl. Veteranen)<br>☐ 153 Wiedererstattung von Überzahlung von Veteranenleistungen<br>☐ 160 Rechtssachen der Aktieninhaber<br>☐ 190 Sonstiger Vertrag<br>☐ 195 Vertragsprodukthaftung<br>☐ 196 Franchise<br><br>**IMMOBILIEN**<br>☐ 210 Landenteignung<br>☐ 220 Zwangsvollstreckung<br>☐ 230 Mietvertrag & Ausstoßung Immobilien | ☐ 240 Delikte gegen Eigentum<br>☐ 245 Produkthaftung<br>☐ 290 Sämtliche sonstige Immobilien<br><br>**ZIVILRECHTLICHE DELIKTE PERSONENSCHADEN**<br>☐ 310 Flugzeug<br>☐ 315 Flugzeugprodukt- haftung<br>☐ 320 Angriff, Beleidigung & Verleumdung<br>☐ 330 Föderative Arbeitgeber- Haftpflicht<br>☐ 340 See<br>☐ 345 Seeprodukthaftung<br>☐ 350 Kraftfahrzeug<br>☐ 355 Kraftfahrzeugprodukt- haftung<br>☐ 360 Sonstiger Personen- schaden<br>☐ 362 Personenschaden – Behandlungsfehler<br>☐ 365 Personenschaden – Produkthaftung<br>☐ 367 Gesundheitsversorgung/ Pharmazeutische Produkthaftung für Personenhaftung<br>☐ 368 Asbest – Personenschaden Produkthaftung | ☐ 462 Einbürgerungsantrag<br>☐ 465 Sonstige Einwanderungs- handlungen<br><br>**ZIVILRECHTLICHE PRIVATBESITZ**<br>☐ 370 Sonstiger Schwindel<br>☐ 371 Wahrheit in Kredit- gewährung<br>☐ 380 Sonstige Beschädigung des Privatbesitzes<br>☐ 385 Sachschaden - Produkt- haftung<br><br>**INSOLVENZ**<br>☐ 422 Widerspruch 28 USC § 158<br>☐ 423 Rücknahme 28 USC § 157<br><br>**BÜRGERRECHTE**<br>☐ 440 Sonstige Bürgerrechte<br>☐ 441 Abstimmung<br>☐ 442 Arbeitsverhältnis<br>☐ 443 Wohnungswesen/ Unterkunft<br>☐ 445 Amerikaner mit Behinderungen - Arbeit<br>☐ 446 Amerikaner mit Behinderungen - sonstiges<br>☐ 448 Bildung | **Habeaskorpusakte:**<br>☐ 463 Ausländische Gefangene<br>☐ 510 Gesuche zur Aufhebung eines Gerichtsurteils<br>☐ 530 Allgemeines<br>☐ 535 Todesstrafe<br>**Sonstiges:**<br>☐ 540 Befehl & sonstiges<br>☐ 550 Bürgerrechte<br>☐ 555 Gefängnisbedingungen<br>☐ 560 Zivilgefangener – Haft- bedingungen<br><br>**VERWIRKUNG/SANKTION**<br>☐ 625 Drogenbedingte Festnahme des Eigentums 21 USC § 881<br>☐ 690 Sonstiges<br><br>**ARBEIT**<br>☐ 710 Gesetz zur gerechte Arbeitsrichtlinien<br>☐ 720 Arbeits-/ Betriebs- verhältnisse<br>☐ 740 Gesetz zur Eisenbahnarbeit<br>☐ 751 FMLA<br>☐ 790 Sonstige Arbeitsstreitigkeiten<br>☐ 791 Pensionsfürsorge | ☒ 820 Urheberrechte<br>☐ 830 Patent<br>☐ 835 Patent – Abgekürzter Neuer Arzneimittelantrag<br>☐ 840 Handelsmarke<br>☐ 880 Defend Trade Secrets Act von 2016 (DTSA)<br><br>**SOZIALSICHERHEIT**<br>☐ 861 HIA (1395ff)<br>☐ 862 Staublunge (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Titel XIV<br>☐ 865 RSI (405(g))<br><br>**BUNDESSTEUER- RECHTSSTREITE**<br>☐ 870 Steuern (Amerikanischer Kläger oder Beklagter)<br>☐ 871 IRS – Dritte 26 USC § 7609 |

**NUR ZUR BÜRONUTZUNG:**      Rechtssachenr. 2:22-cv-00051

| | |
|---|---|
| CV-71 (10/20)<br>13064549.1 | DECKBLATT FÜR ZIVILKLAGEN |

American LegalNet, Inc.      Seite 1 von 3
www.FormsWorkFlow.com

Rechtssache 2:22-cv-00051   Dokument 2   Eingereicht am 4.1.2022   Seite 2 von 3   Seiten-ID Nr. 26

# US-BEZIRKSGERICHT, ZENTRALER BEZIRK VON KALIFORNIEN
## DECKBLATT FÜR ZIVILKLAGEN

**VIII. GERICHTSSTAND:** Ihre Antworten zu den Fragen unten entscheiden, welche Division des Gerichts dem Gerichtsfall zuerst zugeordnet wird. Diese erste Zuordnung kann sich ändern, in Übereinstimmung mit den Allgemeinen Verfügungen des Gerichts, nachdem das Gericht Ihre Klage oder Entfernungsanzeige geprüft hat.

| FRAGE A: Wurde diese Gerichtssache am staatlichen Gericht gestrichen?<br>[ ] Ja   [x] Nein<br>Wenn „Nein", machen Sie mit der Frage B weiter. Wenn „Ja", kreuzen Sie das zutreffende Kästchen rechts an, tragen Sie die entsprechende Abteilung in Frage E unten ein, und fahren Sie von dort fort. | STAATLICHE GERICHTSSACHE WAR IM FOLGENDEN US-VERWALTUNGSBEZIRK ANHÄNGIG: | DIE ERSTE DIVISION IN CACD IST DIE: |
|---|---|---|
| | [ ] Los Angeles, Ventura, Santa Barbara oder San Luis Obispo | Westliche |
| | [ ] Orange | Südliche |
| | [ ] Riverside oder San Bernardino | Östliche |

| FRAGE B: Ist die USA oder eine seiner Behörden oder Mitarbeiter ein KLÄGER in dieser Klage?<br><br>[ ] Ja   [x] Nein<br><br>Wenn „Nein", machen Sie mit der Frage C weiter. Wenn „Ja", beantworten Sie die Frage B.1. rechts. | B.1. Leben 50% der Beklagten oder mehr, die im Bezirk leben, in Orange County?<br><br>*Kreuzen Sie eines der Kästchen rechts an* ▸ | JA. Ihr Fall wird zuerst der Südlichen Division zugeordnet.<br>[ ] Tragen Sie „Südliche" in Frage E unten ein, und fahren Sie von dort fort.<br><br>[ ] NEIN. Machen Sie mit Frage B.2. weiter. |
|---|---|---|
| | B.2. Leben 50% der Beklagten oder mehr, die im Bezirk leben, in Riverside County und/oder San Bernardino County? (Betrachten Sie die beiden Counties zusammen)<br>*Kreuzen Sie eines der Kästchen rechts an* ▸ | JA. Ihr Fall wird zuerst der Östlichen Division zugeordnet.<br>[ ] Tragen Sie „Östliche" in Frage E unten ein, und fahren Sie von dort fort.<br><br>NEIN. Ihr Fall wird zuerst der Westlichen Division zugeordnet<br>[ ] Tragen Sie „Westliche" in Frage E unten ein, und fahren Sie von dort fort. |

| FRAGE C: Ist die USA oder eine seiner Behörden oder Mitarbeiter ein BEKLAGTER in dieser Klage?<br><br>[ ] Ja   [x] Nein<br><br>Wenn „Nein", machen Sie mit der Frage D weiter. Wenn „Ja", beantworten Sie die Frage C.1. rechts. | C.1. Leben 50% der Beklagten oder mehr, die im Bezirk leben, in Orange County?<br><br>*Kreuzen Sie eines der Kästchen rechts an* ▸ | JA. Ihr Fall wird zuerst der Südlichen Division zugeordnet.<br>[ ] Tragen Sie „Südliche" in Frage E unten ein, und fahren Sie von dort fort.<br><br>[ ] NEIN. Machen Sie mit Frage C.2. weiter. |
|---|---|---|
| | C.2. Leben 50% der Beklagten oder mehr, die im Bezirk leben, in Riverside County und/oder San Bernardino County? (Betrachten Sie die beiden Counties zusammen)<br>*Kreuzen Sie eines der Kästchen rechts an* ▸ | JA. Ihr Fall wird zuerst der Östlichen Division zugeordnet.<br>[ ] Tragen Sie „Östliche" in Frage E unten ein, und fahren Sie von dort fort.<br><br>NEIN. Ihr Fall wird zuerst der Westlichen Division zugeordnet<br>[ ] Tragen Sie „Westliche" in Frage E unten ein, und fahren Sie von dort fort. |

| FRAGE D: Standort der Kläger und Beklagten? | A.<br>Orange County | B.<br>Riverside County oder Bernardino County | C.<br>Los Angeles County, Ventura County, Santa Barbara County oder San Luis Obispo County |
|---|---|---|---|
| Geben Sie den Ort/die Orte an, in dem/denen 50% oder mehr der *Kläger, die in diesem Bezirk wohnen,* wohnen. (Kreuzen Sie bis zu zwei Kästchen an oder lassen sie sie leer, wenn nichts zutrifft. ) | [ ] | [ ] | [ x ] |
| Geben Sie den Ort/die Orte an, in dem/denen 50% oder mehr der *Beklagten, die in diesem Bezirk wohnen,* wohnen. (Kreuzen Sie bis zu zwei Kästchen an oder lassen sie sie leer, wenn nichts zutrifft. ) | [ ] | [ ] | [ ] |

| D.1. Gibt es wenigstens eine Antwort in Spalte A?<br>[ ] Ja  [ x ] Nein<br><br>Wenn „Ja", dann wird Ihr Fall zuerst der SÜDLICHEN DIVISION zugeordnet.<br><br>Tragen Sie „Südliche" in Frage E unten ein und fahren Sie von dort fort.<br><br>Wenn „Nein", gehen Sie zur Frage D2 rechts. ▸ | D.2. Gibt es wenigstens eine Antwort in Spalte B?<br>[ ] Ja  [ x ] Nein<br><br>Wenn „Ja", dann wird Ihr Fall zuerst der ÖSTLICHEN DIVISION zugeordnet.<br><br>Tragen Sie „Östliche" in Frage E unten ein und fahren Sie von dort fort.<br><br>Wenn „Nein", dann wird Ihr Fall der WESTLICHEN DIVISION zugeordnet.<br><br>Tragen Sie „Westliche" in Frage E unten ein. |
|---|---|

| FRAGE E: Erste Division? | ERSTE DIVISION IN CACD |
|---|---|
| Tragen Sie die erste Division, wie von Frage A, B, C oder D oben bestimmt, ein. ▸ | WESTLICHE |

| FRAGE F: Nördliche US-Verwaltungsbezirke? | |
|---|---|
| Leben 50% oder mehr der Kläger oder Beklagten oder mehr in diesem Bezirk in Venura County, Santa Barbara County oder San Luis Obispo County?   [ ] Ja   [x] Nein | |

Rechtssache 2:22-cv-00051   Dokument 2   Eingereicht am 4.1.2022   Seite 3 von 3   Seiten-ID Nr. 27

**US-BEZIRKSGERICHT, ZENTRALER BEZIRK VON KALIFORNIEN**
**DECKBLATT FÜR ZIVILKLAGEN**

**IX(a). IDENTISCHE FÄLLE:** Wurde diese Klage **in diesem Gericht** vorher eingereicht?     [ x ] NEIN     [ ] JA

Wenn ja, führen Sie die Fallnummer(n) auf: _____

**IX(b). DAMIT ZUSAMMENHÄNGENDE FÄLLE:** Ist dieser Fall mit einem zivilrechtlichen Fall oder strafrechtlichen Fall, der vorher **in diesem Gericht** eingereicht wurde, verbunden (so wie unten näher bestimmt)?     [ x ] NEIN     [ ] JA

Wenn ja, führen Sie die Fallnummer(n) auf: _____

**Zivilrechtliche Fälle** sind verbunden, wenn sie (bitte alles Zutreffende ankreuzen):

[ ] A. Sich aus demselben oder einer eng verwandten Transaktion, Geschehnis, Vorfall ergeben;

[ ] B. Die Bestimmung von denselben oder im Wesentlichen verbundenen oder ähnlichen Fragen zu Rechten oder zum Sachverhalt erfordern;

[ ] C. Aus anderen Gründen, die eine wesentliche Verdoppelung der Arbeit zur Folge haben würden, wenn sie von verschiedenen Richten angehört werden.

Bitte beachten Sie: Dass Fälle dasselbe Patent, dieselbe Handelsmarke oder dasselbe Urheberrecht involvieren, ist nicht ausreichend, dass Fälle als verbundene Fälle angesehen werden.

**Ein zivilrechtlicher Verwirkungsfall und ein strafrechtlicher Fall** sind verwandt, wenn sie (bitte alles Zutreffende ankreuzen):

[ ] A. Sich aus demselben oder einer eng verwandten Transaktion, Geschehnis, Vorfall ergeben;

[ ] B. Die Bestimmung von denselben oder im Wesentlichen verbundenen oder ähnlichen Fragen zu Rechten oder zum Sachverhalt erfordern;

[ ] C. Einen oder mehr Beklagte von dem gemeinsamen strafrechtlichen Fall involvieren und dies eine wesentliche Verdoppelung der Arbeit zur Folge haben würde, wenn sie von verschiedenen Richten angehört werden.

**X. UNTERSCHRIFT DES RECHTSANWALTS**
**(ODER DES SICH SELBST VERTRETENEN PROZESSFÜHRERS):** /Unterschrift/ Marc E. Mayer        DATUM: 4. Januar 2022

**Mitteilung an den Rechtsbeistand/die Parteien:** Die Einreichung dieses Deckblatts für Zivilklagen wird von Lokaler Regel 3-1 verlangt. Dieses Formular CV-71 und die darin enthaltenen Informationen ersetzen oder ergänzen nicht die Einreichung und Zustellung von gesetzlich vorgeschriebenen schriftlichen Vorträgen oder anderen Dokumenten, es sei denn, dies wird von den Lokalen Regeln des Gerichts so vorgesehen. Weitere detailliertere Informationen finden Sie auf dem separaten Anweisungsblatt (CV-071A).

Schlüssel zu statistischen Codes in Bezug auf Sozialversicherungsfälle:

| Art der Code-Abkürzung für das Gerichtsverfahren | | Substanzielle Erklärung des Klagegrunds |
|---|---|---|
| 861 | HIA | Alle Forderungen von Krankenversicherungsleistungen (Medicare) nach Titel 18, Teil A, des Sozialversicherungsgesetzes, in seiner jüngsten Fassung. Beinhaltet auch Forderungen von Krankenhäusern, qualifizierten Pflegeheimen usw. für die Zertifizierung als Dienstleistungsbereitsteller nach dem Programm (42 U.S.C. 1935FF(b)) |
| 862 | BL | Alle Forderungen von „Staublungen"-Leistungen nach Titel 4, Teil B des Federal Coal Mine Health and Safety Act von 1969. (30 U.S.C. 923) |
| 863 | DIWC | Alle von versicherten Arbeitern eingereichte Ansprüche auf Gewährung von Invalidenversicherungsleistungen nach Titel 2 des Sozialversicherungsgesetzes, in seiner jüngsten Fassung; zuzüglich alle Forderungen von Kindesversicherungsleistungen basierend auf Invalidität. (42 U.S.C. 405 (g)) |
| 863 | DIWW | Alle Forderungen von Hinterbliebenenversicherungsleistungen basierend auf Invalidität nach Titel 2 des Sozial-Versicherungsgesetzes, in seiner jüngsten Fassung. (42 U.S.C. 405 (g)) |
| 864 | SSID | Alle Forderungen von ergänzenden Sozialversicherungszahlungen basierend auf Invalidität nach Titel 16 des Sozialversicherungsgesetzes, in seiner jüngsten Fassung. |
| 865 | RSI | Alle Forderungen von Rentenleistungen und Hinterbliebenenleistungen nach Titel 2 des Sozialversicherungsgesetzes, in seiner jüngsten Fassung. (42 U.S.C. 405 (g)) |

**Exhibit A**
**Page 20**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation | ENGINEOWNING UG, a German corporation, et al |

| (b) County of Residence of First Listed Plaintiff  Los Angeles | County of Residence of First Listed Defendant_____ |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |

| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |
|---|---|
| Marc E. Mayer (SBN 190969); mem@msk.com<br>Mitchell Silberberg & Knupp LLP<br>2049 Century Park East, 18th Floor<br>Los Angeles, CA 90067-3120 Tel.: (310) 312-2000 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multidistrict Litigation - Transfer   ☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of 17 USC § 1201, Intentional Interference

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions. | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 835 Patent - Abbreviated New Drug Application |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 880 Defend Trade Secrets Act of 2016 (DTSA) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | **SOCIAL SECURITY** |
| ☐ 470 Racketeer Influ- enced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 861 HIA (1395ff) |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 862 Black Lung (923) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 850 Securities/Com- modities/Exchange | | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 864 SSID Title XVI |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 865 RSI (405 (g)) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Right | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/ Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities- Employment | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: 2:22-cv-00051 |
|---|---|

American LegalNet, Inc.
www.FormsWorkFlow.com

**Exhibit A**
**Page 21**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

American LegalNet, Inc.
www.FormsWorkFlow.com

Exhibit A
Page 22

Case 2:22-cv-00051   Document 2   Filed 01/04/22   Page 3 of 3   Page ID #:27

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?      ☒ NO      ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO      ☐ YES

If yes, list case number(s):

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT)** :/s/ Marc E. Mayer                    DATE: January 4, 2022

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

I3064549.I

American LegalNet, Inc.
www.FormsWorkFlow.com

**Exhibit A**
**Page 23**



MARC E. MAYER (SBN 190969)
mem@msk.com
MARK C. HUMPHREY (SBN 291718)
mem@msk.com
GENEVIEVE L. JAVIDZAD (SBN 336138)
glj@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18. Etage
Los Angeles, CA  90067-3120, USA
Tel. +1 (310) 312-2000
Fax +1 (310) 312-3100

Rechtsanwälte für den Kläger

US-BEZIRKSGERICHT
ZENTRALER BEZIRK VON KALIFORNIEN

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., ein Unternehmen von Delaware,<br><br>Kläger,<br><br>gegen<br><br>ENGINEOWNING UG, ein deutsches Unternehmen, CMM HOLDINGS S.A., ein deutsches Unternehmen, VALENTIN RICK, eine Privatperson; LEONARD BUGLA, eine Privatperson; LEON FRISCH, eine Privatperson, IGNACIO GAYDUCHENKO, eine Privatperson, MARC-ALEXANDER RICHTS, eine Privatperson, ALEXANDER KLEEMAN, eine Privatperson, und DOE-Beklagte 1 bis einschließlich 50,<br><br>Beklagte. | ZIVILKLAGENR. 2:22-cv-00051<br><br>**KLAGE WEGEN:**<br><br>**(1) UNERLAUBTEM HANDEL VON UMGEHUNGSGERÄTEN**<br><br>**(2) VORSÄTZLICHEM EINGRIFF IN VERTRAGLICHEN BEZIEHUNGEN**<br><br>**(3) WETTBEWERBSVERZERRUNG**<br><br>**Forderung eines Geschworenenprozesses** |

Activision Publishing, Inc. ("Activision" oder "Kläger") behauptet Folgendes:

## EINLEITENDE AUSFÜHRUNGEN

1.    Activision ist der Eigentümer und Herausgeber der *Call of Duty* Serie von Videospielen (die „COD-Spiele"). Durch dieses Gerichtsverfahren versucht Activision das unrechtmäßige Verhalten einer Organisation zu stoppen, die zahlreiche schädliche Softwareprodukte für Profit verteilt und verkauft, welche es Mitgliedern der Öffentlichkeit

Mitchell Silberberg & Knupp LLP

13821751.1

1   erlauben sollen, unfaire Wettbewerbsvorteile (*d. h.* Cheaten) in COD-Spielen zu erlangen.

2   Diese fortlaufenden Aktivitäten schaden Activions Spielen, seinem gesamten Geschäft und

3   dem Erlebnis der COD-Spielegemeinschaft.

4         2.      EngineOwning („EO") ist ein gewerbliches Online-Unternehmen, das aus

5   einer deutschen Geschäftseinheit und zahlreichen Einzelpersonen besteht – darunter u. a.

6   die Beklagten Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio Gayduchenko, Marc-

7   Alexander Richts, Alexander Kleeman und verschiedene Einzelpersonen, die unter

8   verschiedenen Aliasnamen[1] handeln – und die über die Website

9   http://www.engineowning.to (die „EO-Website") agieren. EO ist tätig mit der Entwicklung,

10  Verkauf, Vertrieb, Vermarktung und Ausnutzung eines Portfolios an böswilligen Cheats und

11  Hacks für beliebte Online-Multiplayer-Spiele, insbesondere die COD-Spiele. Über die EO-

12  Website und andere damit verbundene Websites und Social-Media-Accounts verkaufen EO

13  und zahlreiche angegliederte Einzelpersonen und Wiederverkäufer Cheats für zahlreiche

14  COD-Spiele, darunter u. a. *Call of Duty: Warzone, Call of Duty: Modern Warfare (2019), Call*

15  *of Duty World War II, Call of Duty: Modern Warfare III; Call of Duty Black Ops, Call of Duty*

16  *Black Ops II* und *Call of Duty Black Ops III* (gemeinsam, die „Cheating-Software"). EO

17  behauptet auch, neue „Cheating-Software" für das beliebte Multiplayer-Spiel *Overwatch* zu

18  entwickeln, das dem verbundenen Unternehmen von Activision, Blizzard Entertainment,

19  Inc., gehört und von ihm veröffentlicht wird. Die Cheating-Software ermöglicht es den

20  Spielern, die COD-Spiele zu ihrem persönlichen Vorteil zu manipulieren, wie zum Beispiel

21  das automatische Zielen von Waffen, die Preisgabe der Orte von Gegnern, und die

22  Möglichkeit für den Spieler Infomationen zu sehen, die den Spielern üblicherweise nicht zur

23  Verfügung stehen, weil dies ihnen einen unfairen Wettbewerbsvorteil im Spiel geben würde.

---

[1] EngineOwning und die verschiedenen Beklagten, die Einzelpersonen sind, werden im Folgenden gemeinsam als „EO" oder „Beklagte" bezeichnet.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.      Die COD-Spiele sind so gestaltet, das sie von allen Spielern genossen werden können und für alle Spieler fair sind. Wenn Spieler Exploits wie die Cheating-Software verwenden, beeinträchtigt dieses Verhalten das Spiele-Gleichgewicht, und in vielen Fällen führt es dazu, dass Spieler, die nicht schummeln, die Matche frustriert verlassen. Weitverbreitetes Cheating kann auch negative Posts in den Social Medien und negative Schlagzeilen in den Medien zur Folge haben, was sich negativ auf das Verbrauchervertrauen auswirkt. Dementsprechend hat Activision enorme Mengen an Ressourcen ausgegeben, und wird dies auch weiterhin tun, um das Cheating in seinen Spielen zu bekämpfen. Ungeachtet all dieser Bemühungen hat der Verkauf und der Vertrieb der Cheating-Software durch die Beklagten Activision massiven und nicht wieder gutzumachenden Schaden an seinem Firmenwert und Ruf angerichtet und dazu geführt, dass Activision wesentliche Einnahmenverluste erlitten hat.

4.      Durch die Erstellung, die Vermarktung, den Verkauf, die Wartung und den Vertrieb von Cheating-Software haben die Beklagten nach dem US-Recht und den Gesetzen von Kalifornien zahlreiche rechtswidrige Handlungen vorgenommen. Die Beklagten haben den Paragrafen 1202 des Digital Millennium Copyright Act („DMCA"), 17 U.S.C. § 1201(b)(1) verletzt, und dies durch den Verkauf, die Einfuhr, das Angebot, die Bereitstellung und anderweitigen rechtswidrigem Handel von Technologien, die die von Activision zum Schutz der Integrität von COD-Spielen verwendeten Anti-Cheat-Technologien umgehen oder ihnen ausweichen. Die Beklagten haben wissentlich, vorsätzlich und böswillig in die Verträge eingegriffen oder sie beeinträchtigt, die Activision mit seinen Kunden in den USA hat, die explizit die genaue Art von Cheating, die die Beklagten durch die Vermarktung und den Verkauf ihrer Cheating-Software ermöglichen, dazu ermutigen und erbitten, verbieten. Die Beklagten wissen nicht nur, dass ihre Verhalten rechtswidrig ist, sondern sie nehmen diese Handlungen mit der vorsätzlichen Absicht vor,

Mitchell
Silberberg &
Knupp LLP

13821751.1

3

1  Activision, Activisions Geschäften und dessen Spielergemeinschaft zu schaden. Dieses

2  Gericht muss das Fehlverhalten der Beklagten stoppen, und Activision hat Anspruch auf

3  finanziellen Schadenersatz, Unterlassungs- und andere billigkeitsrechtliche Ansprüche und

4  Anspruch auf Strafschadenersatz gegen die Beklagten.

5  <u>**ZUSTÄNDIGKEIT UND GERICHTSSTAND**</u>

6

7       5.     Dies ist eine Zivilklage auf Schadenersatz, Unterlassungs- und andere

8  billigkeitsrechtliche Ansprüche nach den Umgehungsverbotsbestimmungen von DMCA, 17

9  U.S.C. § 1201 und den Gesetzen des US-Bundesstaates Kalifornien.

10       6.     Dieses Gericht ist sachlich für die Ansprüche von Activision wegen der

11  Verletzung von Umgehungsverbotsbestimmungen von DMCA nach 28 U.S.C. § 1331 und §

12  1338(a) zuständig. Gemäß 28 U.S.C. § 1367 hat dieses Gericht die ergänzende

13  Zuständigkeit für auf einzelstaatliches Recht gestützte Ansprüche von Activision wegen

14  vorsätzlichem Eingriff in vertragliche Beziehungen und unlauterem Wettbewerb, die mit

15  Acitvisions bundesstaatlichen Ansprüchen derart verbunden sind, dass sie ein Teil

16  desselben Falls oder derselben Kontroverse sind.

17       7.     Dieses Gericht ist für die Beklagten personenbezogen zuständig, weil sie

18  vorsätzlich ihre Aktivitäten auf die USA gerichtet haben, und auf Kalifornien insbesondere,

19  sie vorsätzlich die Nutzen der Geschäftsbetreibung in Kalifornien in Anspruch genommen

20  haben und eine fortdauernde Präsenz in Kalifornien gegründet haben. Activision ist

21  unterrichtet und glaubt, und behauptet auf dieser Grundlage, dass ohne Beschränkung

22  Folgendes geschah:

23       (a)     Die Beklagten betrieben im US-Bundesstaat Kalifornien und in den

24  USA umfangreiche und fortdauernde Geschäfte mit Usern;

25       (b)     Die Beklagten richteten die Cheating-Software auf User in den USA,

26  darunter den US-Bundesstaat Kalifornien, aus, und dies in dem Wissen, dass für ihre

27

Mitchell
Silberberg &
Knupp LLP

28

4

13821751.1

1   Cheating-Software in den USA ein wesentlicher Markt besteht. Zum Beispiel zeigen die

2   Beklagten ihren gesamten Text auf ihrer Website auf „Englisch (USA)", bieten

3   Sonderverkäufe um die Feiertage in den USA (z. B. Halloween und Schwarzer Freitag)

4   herum an und stellen Kundendienst auf Englisch bereit.

5           (c)       Die Beklagten vertrieben die Cheating-Software im US-Bundesstaat

6   Kalifornien, bewarben und vermarkteten die Cheating-Software in den USA und im US-

7   Bundesstaat Kalifornien und kommunizierten direkt mit den Usern in den USA und im US-

8   Bundesstaat Kalifornien, darunter zum Zweck des Erbittens von Käufen der Cheating-

9   Software durch diese User und zur Bereitstellung von technischem Support für die Cheating-

10  Software;

11

12          (d)       Die Beklagten haben mit Einzelpersonen im US-Bundesstaat

13  Kalifornien Verträge geschlossen und werden dies auch weiterhin tun, darunter Verträge

14  nach denen diese Einzelpersonen von den Beklagten Lizenzen für das Recht erhalten, die

15  Cheating-Software zu installieren und verwenden. Als Gegenleistung für diese Lizenzen

16  erhalten die Beklagten von Personen in den USA und im US-Bundesstaat Kalifornien

17  laufende, wiederkehrende tägliche, wöchentliche oder monatliche Zahlungen; und

18          (e)       Die Beklagten schließen mit Entitäten im US-Bundesstaat Kalifornien

19  im Zusammenhang mit ihren Geschäften Verträge ab. Dies beinhaltet z. B. Domain-Name-

20  Register, Hosting-Dienste, Content Delivery Services sowie Kreditkartenverarbeiter und

21  Handelsbanken. In der Tat prahlen die Beklagten auf ihrer Website, dass sie in den USA

22  mindestens zwei Server unterhalten, darunter einen in Kalifornien:

23  Server-Status [Abbildung von Landkarte]

24          (f)       Die Beklagten üben Tätigkeiten aus, von denen sie wissen, dass sie

25  wahrscheinlich Activision im US-Bundesstaat Kalifornien, darunter in diesem Bezirk, wo sich

26  Activision befindet und seinen Hauptgeschäftssitz hat, Schaden zufügen.

27

28

Mitchell
Silberberg &
Knupp LLP

13821751.1

5

8.     Dieser Bezirk ist der ordentliche Gerichtsstand gemäß 28 U.S.C. § 1391(b), weil dies ein Gerichtsbezirk ist, in dem ein wesentlicher Teil der Ereignisse stattfand, die zu den Ansprüchen führen und/oder in dem die Schäden von Activision erlitten wurden.

**DIE PARTEIEN**

9.     Activision ist ein Unternehmen, das nach den Gesetzen des US-Bundesstaates Delaware ordnungsgemäß errichtet wurde und besteht. Activision hat seinen Hauptgeschäftssitz in Santa Monica, Kalifornien, USA.

10.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass die Beklagten CMM Holdings S.A. und EngineOwning Software UG deutsche Geschäftseinheiten mit Sitz in Pfaffenhofen an der Ilm sind (gemeinsam die „körperschaftlichen Beklagten"). Activision ist ferner informiert und glaubt und behauptet auf dieser Grundlage, dass die einzelnen Beklagten die Cheating-Software (darunter über das Online „Chat-Room"-System bekannt als „Discord") entwickeln, warten, vermarkten, verteilen und verkaufen, und auch die EO-Website betreiben und warten, durch einen oder mehrere körperschaftliche Beklagten.

11.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass der Beklagte Valentin Rick, auch bekannt als Skyfail („Rick") eine Privatperson ist, die in Deutschland lebt und die körperschaftlichen Beklagten gegründet hat, der alleinige Geschäftsführer (Managing Director) und Teilhaber der körperschaftlichen Beklagten ist und historisch der Hauptadministrator der EO-Website ist. Activision ist ferner informiert und glaubt und behauptet auf dieser Grundlage, dass Rick der faktische Leiter von EO gewesen ist, und dies weiterhin ist, und in dieser Funktion hat er die Cheating-Software geleitet und/oder war verantwortlich für die Entwicklung, Wartung, Vermarktung, den Vertrieb und Verkauf der Cheating-Software. Activision kontaktierte Rick früher, 2018 und 2020, wegen

Mitchell
Silberberg &
Knupp LLP

13821751.1

6

1 seiner Beteiligung an EO und an der EO-Website, und als Antwort darauf behauptete er,

2 dass er die EO-Website an einen unbekannten Käufer verkauft habe. Rick hat nie einen

3 Beweis dafür erbracht, dass ein derartiger Kauf stattfand, und Activision ist informiert und

4 glaubt und behauptet auf dieser Grundlage, dass Rick zu jeder für das Gerichtsverfahren

5 relevanten Zeit EO und die EO-Website weiterhin verwaltet und betrieben hat.

6          12.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

7 der Beklagte Leonard Bugla, auch bekannt als Reganmian und Noodleman („Bugla"), eine

8 Privatperson ist, die in Deutschland lebt und die als ein Operations Manager der EO-Website

9 im Jahre 2019 und 2020 gelistet ist und schien als solcher zu handeln. Activision ist ferner

10 informiert und glaubt und behauptet auf dieser Grundlage, dass Bugla in dieser Rolle die

11 Entwicklung, Wartung, den Vertrieb und den Verkauf der Cheating-Software ermöglichte.

12 Activision ist ferner informiert und glaubt und behauptet auf dieser Grundlage, dass Rick und

13 Bugla eine lange persönliche Beziehung zueinander haben, die vor der Erschaffung von EO

14 und der EO-Website zurückdatiert (*d. h.* vor 2012).

15          13.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

16 der Beklagte Leon Frisch, auch bekannt als „Kraisie" („Frisch"), eine Privatperson ist, die in

17 Deutschland lebt und die als ein Lead Moderator in den EO-Website Foren fungiert.

18 Activision ist ferner informiert und glaubt und behauptet auf dieser Grundlage, dass Frisch in

19 dieser Rolle bei dem Verkauf der Cheating-Software hilft, darunter u. a. durch die

20 Bereitstellung von technischem Support für Cheats und durch Kommunizieren mit Kunden in

21 Bezug auf die Bezahlung für Cheating-Software.

22          14.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

23 der Beklagte Ignacio Gayduchenko, auch bekannt als Weather und Kokole („Gayduchenko"),

24 eine Privatperson ist, die in Spanien lebt und die als ein Kodierer und Entwickler der

25 Cheating-Software fungiert hat, und die über die EO-Website und andere Orte technischen

7

1    Support für die Cheating-Software bereitgestellt hat.

2        15.    Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

3    der Beklagte Marc-Alexander Richts, auch bekannt als „x0000x" und „Twenty" („Richts"),

4    eine Privatperson ist, die in Deutschland lebt und die an dem Vertrieb und dem Verkauf der

5    Cheating-Software über EO und die EO-Website beteiligt war.

6        16.    Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

7    Alexander Kleemann, auch bekannt als „A200k" („Kleeman"), eine Privatperson ist, die in

8    Veitshöchheim, Deutschland, lebt und die an dem Vertrieb der Cheating-Software beteiligt

9    war und verschiedene administrative Funktionen in Bezug auf die EO-Website bereitstellte.

10

11        17.    Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

12    die folgenden Personen, deren wahre Namen bislang nicht bekannt sind, Entwickler der

13    Cheating-Software sind, Administratoren der EO-Website sind, Wiederverkäufer und

14    Vertreiber der Cheating-Software sind und/oder anderweitig an der Erschaffung,

15    Vermarktung und dem Vertrieb der Cheating-Software beteiligt sind: „Bonsai", „Agriolo",

16    „Chronos", „Deutschländer", „Enceladus", „Homie", „Jeuwifghue", „LogicX", „LuoZheng",

17    „mortyy", „NOL3X" und „SlapstiK". Diese Personen werden hier als DOE-Beklagte 1 bis

18    einschließlich 12 aufgenommen.

19

20        18.    Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

21    der DOE-Beklagte 13, auch bekannt als „Crotle" (in den EO-Website Foren „Boss" genannt),

22    ein hochrangiges Mitglied von EO ist, das innerhalb des Unternehmens eine Führungsrolle

23    einnimmt, durch die er oder sie an der Entwicklung, Wartung, dem Vertrieb oder Verkauf der

24    Cheating-Software teilnimmt und/oder damit hilft.

25        19.    Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

26    der DOE-Beklagte 14, auch bekannt als „Speedi13", und der DOE-Beklagte 15, auch

27    bekannt als „Requi", als Kodierer für EO agieren oder agiert haben, und in dieser Rolle an

Mitchell
Silberberg &
Knupp LLP

13821751.1

28

8

der Entwicklung, Wartung, dem Vertrieb oder Verkauf der Cheating-Software teilnehmen und/oder damit helfen.

20.   Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass mehrere DOE-Beklagte (darunter u. a. die oben genannten DOE-Beklagten 1 bis einschließlich 15) möglicherweise die Aliases von EO-Mitarbeitern (Staffers) sind, darunter einige der in diesem Fall genannten Beklagten, die versucht haben, ihre Identität zu verschleiern, nachdem sie zuvor von Activision in Verbindung mit ihrer Beteiligung an EO kontaktiert wurden.

21.   Die wahren Namen und Funktionen, gleich ob Privatpersonen, Unternehmen, beteiligte Unternehmen oder andere, der DOE-Beklagten sind Activision nicht bekannt. Activision hat diese Beklagten daher unter Aliasnamen und fiktiven Namen verklagt. Diese Beklagten umfassen Privatpersonen, deren wirkliche Identitäten Aktivision noch nicht bekannt sind, die jedoch bei dem Begehen von in dieser Klage genannten rechtswidrigen Handlungen zusammen mit dem jeweils anderen handeln, oft unter dem Deckmantel von Aliasnamen. Unter den DOE-Beklagten befinden sich Entwickler, Wiederverkäufer, Mitarbeiter des technischen Support, und andere Personen, die an der Entwicklung, dem Verkauf und dem Vertrieb der Cheating-Software beteiligt waren. Activision wird um Erlaubnis bitten, diese Klage mit ihren wahren Namen und Funktionen zu ergänzen, sobald diese Identitäten und Funktionen der Beklagten festgestellt wurden. Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass alle hierin verklagten Beklagten gegenüber Activision infolge ihrer Beteiligung an allen oder einigen in dieser Klage ausgeführten Handlung haftbar sind. (Alle oben genannten Beklagten, sowohl die Beklagten mit Namen und die DOE-Beklagten, werden hierin gemeinsam als „Beklagte" bezeichnet).

22.   Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass jeder der Beklagten zu jeder in dieser Klage genannten Zeit der Bevollmächtigte von jeweils

der anderen Beklagten war und bei dem Begehen der in dieser Klage behaupteten Handlungen im Laufe und im Rahmen dieser Bevollmächtigung handelte.

### AUF ALLE ANSPRÜCHE ANWENDBARER SACHVERHALT

23.     Activision ist der Herausgeber und Eigentümer der COD-Spiele, die aus mehr als 15 Videospielen bestehen, die seit dem Jahr 2003 auf verschiedenen Videospielplattformen erstveröffentlicht wurden. Die COD-Spiele werden jährlich erstveröffentlicht, mit Echtbetrieb und zusätzlichem herunterladbarem Content, der regelmäßig erstveröffentlicht wird. Die COD-Spiele sind beständig unter den meistverkauften Spielen in einem gegebenen Jahr, mit insgesamt mehr als 400 Millionen Kopien, die bis dato verkauft wurden. Im Dezember 2020 verkündete Activision, dass die COD-Spiele in den vorangegangenen 12 Monaten mehr als $3 Mrd. an Netto-Bookings generierten.

24.     Die COD-Spiele sind „Ego-Shooter"-Computerspiele, die den Spielern ermöglichen, in die Schuhe von Soldaten und Elite-Operateuren in Schlachten im Laufe der Geschichte, vom Zweiten Weltkrieg bis zur modernen Gegenwart und den ganzen Weg in die Zukunft, zu schlüpfen. Fast alle COD-Spiele beinhalten Einzelspieler-Kampagne-Modi, die die Spieler in eine fiktionale Geschichte setzen. Alle COD-Spiele enthalten jedoch die populären kompetitiven Multiplayer-Modi, in denen sich Spieler Online zuschalten, um in Echtzeit live zusammen zu spielen. Jedes COD-Spiel bietet so viele wie ein Dutzend oder mehr verschiedene Online Multiplayer-Spielarten, wobei alle von ihnen hochintensiv sind, da Spieler gegeneinander antreten, um Erfahrungspunkte zu verdienen, um ihre Rankings und Statistiken zu verbessern und um verschiedene Rewards für siegreiche Matche und die Erreichung bestimmter Ziele und Zielsetzungen zu gewinnen.

25.     Die Online Multiplayer-Modi der COD-Spiele sind so beliebt, dass sie zu mehreren kompetitiven „eSports" Ligen und Turniere geführt haben, die auf Streaming-Plattformen wie z. B. Twitch und YouTube mehrere Millionen Zuschauer anziehen.

Mitchell
Silberberg &
Knupp LLP

13821751.1

10

### **Das Geschäftsmodell der COD-Spiele**

26.     In Anbetracht der Beliebtheit und Wiederspielbarkeit der Online Multiplayer-Modi der COD-Spiele arbeitet Activision sehr hart daran, dass die COD-Spiele beständig spannende Spielererfahrungen bieten, damit Kunden in den COD-Spielen engagiert bleiben, sie weiterhin lang anhaltende Zeiträume spielen und auf zukünftige Erstveröffentlichungen gespannt sind.

27.     Im März 2020 veröffentlichte Activision zum ersten Mal *Call of Duty: Warzone* („Warzone"), ein kostenloses Standalone-Multiplayer-Spiel, das der Öffentlichkeit angeboten wird, ohne den Kunden zu verpflichten, eine Kopie irgendeines *Call of Duty*-Spiels zu kaufen. Um *Call of Duty: Warzone* spielen zu können, muss ein Mitglied der Öffentlichkeit bei Activision ein Account anmelden, die *Call of Duty: Warzone*-Software herunterladen und sich mit den Online-Multiplayer-Servern von Activision verbinden. Dementsprechend kommen die von Activision durch *Call of Duty: Warzone* erzielten Einnahmen ausschließlich von Verkäufen von „virtuellen Waren" (d. h. Waffen, Häuten usw.) oder saisonalen „Gefechtspässen (battle passes)", die den Spielern ermöglichen, Belohnungen im Spiel für Errungenschaften im Spiel zu erhalten.

28.     Die durch die COD-Spiele erzielten Einnahmen helfen wiederum die enormen Kosten für Updates, Verbesserung, Wartung und Bedienung der COD-Spiele und ihrer kompetitiven Online-Modi zu zahlen. Wenn Spieler wahrnehmen, dass ein Spiel unfair ist, darunter weil Andere schummeln oder einen unfairen Vorteil haben, können die Spieler mit den COD-Spielen immer mehr frustriert werden, weniger Interesse am Spielen und an der Unterstützung der Spiele haben (darunter durch Kaufen neuer Spiele und Objekte) und können sogar vollkommen aufhören, sie zu spielen. Das Cheating schadet daher nicht nur COD-Spielergemeinschaften (und könnten sie sogar vernichten), es wirkt sich auch schlecht auf die Fähigkeit von Activision aus, schnelle, stabile, qualitativ hohes Online-Spiel zu bieten,

Mitchell
Silberberg &
Knupp LLP

13821751.1

11

1  an das Millionen von Fans gewöhnt sind.

2  **Die Bemühungen von Activision, sich vor Hackern und Cheatern zu schützen**

3  29.    Da die COD-Spiele so beliebt sind, versuchen skrupellose Personen und

4  Unternehmen, wie z. B. die Beklagten, oft die Spiele für ihren eigenen persönlichen Vorteil

5  und Profit auszubeuten, durch den Verkauf von Cheats, Hacks und anderer bösartiger Soft-

6  ware, wobei sie genau wissen, dass sie für die anderen Spieler das Spielerlebnis verderben

7  und Activision schaden. Aus diesem Grund unternimmt Activision wesentliche Anstreng-

8  ungen, die Integrität der COD-Spiele durch technische und vertragliche Mittel zu schützen.

9

10                          Technischer Schutz

11  30.    Ein Weg, auf dem Activision versucht die COD-Spiele vor Cheating und

12  unauthorisierter Ausbeutung zu schützen, ist durch die Entwicklung und den Einsatz von

13  Anti-Cheat-Technologien. Diese Technologien helfen dabei zu entdecken, wenn Spieler

14  Cheating-Software Dritter verwenden, und verhindern unauthorisierte Zugriffe auf die COD-

15  Spiele durch diese Spieler. Es ist nicht möglich, Online-Multiplayer-Modi von COD-Spielen

16  zu spielen (oder *Call of Duty: Warzone* überhaupt zu spielen), ohne die Anti-Cheat-

17  Technologien von Activision zu installieren. Activision konnte mithilfe der Cheating-Software

18  in den COD-Spielen im Verlauf des letzten Jahres allein hundertausende von Konten

19  identifizieren und sperren.

20

21  31.    Damit eine Hack- oder Cheat-Software laufen kann, muss sie so konzipiert

22  sein, dass sie die Entdeckung durch eine Anti-Cheat-Software verhindert oder vermeidet,

23  wie z. B. durch ihre eigene Verbergung oder durch das Unfähigmachen der Anti-Cheat-

24  Technologie. Ansonsten wird der Cheat entdeckt, und dem User wird der Zugriff Online-

25  Multiplayer des bestimmen Spiels verweigert, und er kann permanent vom Spielen

26  überhaupt ausgeschlossen werden.

27                          Vertraglicher Schutz

Mitchell
Silberberg &
Knupp LLP

13821751.1

28                               12

32.     Um auf die COD-Spiele zugreifen zu können und sie herunterladen oder spielen zu können, müssen User ein Account bei Activision erstellen und registrieren. Beim ersten Spielen der COD-Spiele und bei Beginn der Installation müssen User ausdrücklich durch Anklicken ihre Zustimmung zu den Nutzungsbedingungen (Terms of Use) von Activision (gemeinsam, die „TOU") bekunden. Wenn der User die Zustimmung zu den TOU verweigert, kann er nicht fortfahren und das Spiel nicht spielen.

33.     Die TOU beinhalten eine eingeschränkte Lizenzvereinbarung zwischen Activsion und seinen Usern. Nach den TOU gewährt Activision den Usern eine „persönliche, begrenzte, nichtausschließliche Lizenz", seine Spiele für „nicht-kommerzielle Zwecke" zu verwenden, die ausdrücklich von der Befolgung der TOU durch den User abhängt. Neben anderen Bestimmungen stimmen die User durch Zustimmung zu den TOU ausdrücklich zu, „Cheats, Automatisierungssoftware (Bots), gemoddete Lobbies, Hacks, Mods oder irgendeine andere nicht authorisierte Drittsoftware" in Verbindung mit Activisions Spielen „nicht zu verwenden, entwickeln, hosten oder verteilen" oder „sich mit irgendeiner Art von Cheating, Boosting oder Booting zu beschäftigen."

34.     Die Online Multiplayer-Modi der COD-Spiele (sowie das gesamte *Call of Duty: Warzone* Spiel) werden der Öffentlichkeit verfügbar gemacht über die proprietären Server und Matchmaking-Systeme von Activision. Es ist für einen User nicht möglich ohne ausdrückliche Zustimmung zu den TOU, zu den Online Multiplayer-Modi der COD-Spiele (oder *Call of Duty: Warzone*) rechtmäßig Zugang zu erhalten oder sie zu spielen.

## Die Beklagten und ihr rechtswidriges Verhalten

35.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass sich die Beklagten mit der Entwicklung, Aktualisierung, Vermarktung, dem Vertrieb, Verkauf und der Unterstützung der Cheating-Software beschäftigen. Zu jeder hier entscheidungs-erheblichen Zeit haben die Beklagten die Cheating-Software entwickelt, aktualisiert,

13

vermarktet, verteilt, verkauft und unterstützt. Sie haben dies über die EO-Website, Email und andere Kommunikationsplattformen, wie z. B. Discord, getan und werden dies auch weiterhin tun.

36.     Die EO-Website behauptet, „hochqualitative Cheats" zu verkaufen auf der Grundlage der Überzeugung, dass „jeder die Möglichkeit haben sollte Online Matche zu gewinnen und genießen". Derzeit bietet die EO-Website Cheats an für *Call of Duty: Warzone; Call of Duty: Modern Warfare (2019); Call of Duty World War II; Call of Duty: Modern Warfare 3; Call of Duty Black Ops; War of Duty Black Ops II;* und *Call of Duty Black Ops III.* Die Beklagten behaupten auch, dass sie vorhaben einen Cheat für das Spiel *Overwatch* erstzuveröffentlichen, das von Activisions verbundenem Unternehmen Blizzard Entertainment, Inc. entwickelt und veröffentlicht wurde.

37.     Besucher der EO-Website können Zugriff auf die Cheating-Software in verschiedenen Bündeln für jedes der angebotenen COD-Spiele erwerben. Zugriff auf die Cheats wird in verschiedenen Inkrementen angeboten: zu Preisen von 4,49 Euro für drei Tage Zugriff bis 19,99 Euro für dreißig Tage Zugriff sowie 39,99 Euro für ganze neunzig Tage Zugriff auf Cheats für *Call of Duty: Modern Warfare (2019)* und *Call of Duty: Warzone.* Die folgenden „Features" werden für jeden der Cheats angeboten:

- Aimbots, die automatisch das Zielen des schummelnden Spielers auf einen Gegner „einschnappen", wenn der Gegner auf dem Bildschirm sichtbar ist, wodurch schnelle und präzise Schüsse möglich sind.

- Triggerbots, die veranlassen, dass schummelnde Spieler ihre Waffe automatisch abfeuern, wenn sie auf einen anderen Spieler zielen.

- ESP und 2D/3D Radar, die dem schummelnden Spieler ermöglichen, Gegner im Spiel zu visualisieren, so dass die Integrität des Spiels zerstört wird, z. B. durch Erlauben des Cheaters, andere Spieler durch Wände und andere

14

Mitchell Silberberg & Knupp LLP

13821751.1

Hindernisse zu sehen.

- Verschiedene Methoden und Exploits, die die Entdeckung durch Anti-Cheat Software verhindern sollen sowie die Möglichkeit, Cheat vor Videoaufnahme-software zu verbergen (*d. h.* um zu verhindern, dass Cheats von anderen Spielern, die das Gameplay aufnehmen und überprüfen, entdeckt werden).

38.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass die Beklagten zusätzlich zu der Vermarktung und dem Vertrieb der Cheats (darunter u. a. die Cheating-Software) umfangreichen und fortdauernden Kunden-Support und technische Hilfe bereitstellen, darunter durch die Foren auf der EO-Website sowie durch andere Mittel, wie z. B. Email und Discord.

39.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass die Cheating-Software von Spielern der COD-Spiele heruntergelanden und verwendet wurden, tausendfach von Spielern, die in den USA leben. Activision ist ferner informiert und glaubt und behauptet auf dieser Grundlage, dass die Beklagten durch ihren Vertrieb und Verkauf der Cheating-Software hunderte von Tausend Dollar erwirtschafteten.

### Die rechtswidrigen Aktivitäten der Beklagten

40.     Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass die Cheating-Software - damit die Cheating-Software mit den COD-Spielen arbeiten kann - notwendigerweise Technologie beinhaltet, die hauptsächlich derart gestaltet ist, Anti-Cheat-Technologien von Activision zu vermeiden, umzuleiten, ihnen auszuweichen oder anderweitig umzugehen. Dementsprechend handeln die Beklagten jedes Mal, wenn sie eine Lizenz für die Cheating-Software verkaufen, rechtswidrig mit Technologie, die den Zugriff auf die COD-Spiele kontrolliert.

41.     Die Beklagten bewerben und promoten spezifisch und aggressiv die Cheating-Software als dass sie dafür konzipiert wurde, um die Anti-Cheat-Software

Mitchell
Silberberg &
Knupp LLP

13821751.1

15

1 von Activision zu umgehen. Produktlistings auf der EO-Website werben damit, dass die

2 Cheating-Software „mehrere Schutzschichten gegen Anti-Cheats" bietet. Die Listings auf der

3 EO-Website umfassen auch Zertifizierungen, dass die Cheats der Entdeckung durch die

4 Anti-Cheat-Software von Activision entgehen und sie umgehen werden:

## Unterstützte Anti-Cheats

- Battle.net – Unterstützt
- Anti-Cheat von Call of Duty – Sicher
- Warnung: Sie können für offenkundiges Cheaten manuell ausgeschlossen werden

10 *Siehe* https: //www.engineowning.to/shop/product/21/engineowning-for-call-of-duty-modern-

11 warfare-2019.

12      42.      Jedes Mal, wenn ein Spieler die Cheating-Software verwendet, um in den

13 COD-Spielen zu schummeln, verstößt er oder sie gegen die TOU von Activision, darunter

14 gegen die Bestimmungen, die den Spielern ausdrücklich verbieten „Cheats,

15 Automatisierungssoftware (Bots), gemoddete Lobbies, Hacks, Mods oder irgendeine andere

16 nicht authorisierte Drittsoftware" in Verbindung mit Activisions Spielen „zu verwenden,

17 entwickeln, hosten oder verteilen" oder „sich mit irgendeiner Art von Cheating, Boosting oder

18 Booting beschäftigen". Dementsprechend ist Activsion informiert und glaubt und behauptet

19 auf dieser Grundlage, dass sich mindestens zehntausende Verletzungen dieser Verträge

20 ereignet haben.

21

22      43.      Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

23 sich die Beklagten im Vollem darüber im Klaren sind, dass die Verwendung der Cheating-

24 Software die TOU verletzt. Zum Beispiel warnt die EO-Website User deutlich davor, dass sie

25 von Activision „manuell ausgeschlossen" werden können wegen „offenkundiges" Cheating.

26 Dies ist eine Sorge der Spieler, die die Cheating-Software verwenden wollen, weil einige von

27 der Cheating-Software vermittelte Vorteile Spielercharaktere möglicherweise Dinge machen

28

Mitchell
Silberberg &
Knupp LLP

13821751.1

16

1  lassen, die unnatürlich erscheinen oder in der Welt des Spiels sogar physisch unmöglich

2  erscheinen, wie z. B. das schnelle „zuschnappende" Zielen auf einen gegnerischen Spieler

3  mit einer Geschwindigkeit und Genauigkeit, die sogar darüber hinausgehen, was der

4  geschickteste Spieler erreichen könnte. Daher betont die EO-Website, dass die Cheating-

5  Software Features enthält, die dabei helfen sollen, der Entdeckung mit dem bloßem Auge zu

6  entgehen, darunter „Smooth Aim", was die Zielbewegung verlangsamt, damit ein Spieler, der

7  einen Aimbot verwendet, so erscheint, dass er sich natürlich bewegt, und „Fire Delay", dass

8  einen Spieler, der Triggerbot verwendet, warten lässt, bevor automatisch geschossen wird.

9

10       44.    Die Cheating-Software hat keinen anderen Zweck und keine andere Funktion

11  als Spielern zu ermöglichen, durch die Verwendung von Cheats und Exploits gegen die TOU

12  zu verstoßen. Daher ist es das Ziel der Beklagten sicherzustellen, dass ihre Kunden

13  weiterhin die Nutzen ihrer Verträge mit Activision erhalten, während sie gleichzeitig

14  fortgesetzte Verletzungen ihrer Verpflichtungen nach diesen Verträgen begehen.

15       45.    Zu mehreren Gelegenheiten in den letzten Jahren hat Activision zu einigen

16  der Personen, von denen vermutet wurde, dass sie mit EO involviert sind, Kontakt

17  aufgenommen oder versucht Kontakt aufzunehmen, und gefordert, dass sie mit einer

18  weiteren Entwicklung, Wartung, Vermarktung, Vertrieb und Verkauf der Cheating-Software

19  aufhören und davon ablassen. Activision ist informiert und glaubt und behauptet auf dieser

20  Grundlage, dass sich die Beklagten in diesem Gerichtsverfahren vollständig bewusst

21  darüber sind und es waren, dass ihr Verhalten die Rechte von Activision verletzt, jedoch

22  nichtsdestotrotz ihre Tätigkeiten unverfroren fortgesetzt haben.

23       46.    Durch ihr Verhalten haben die Beklagten den COD-Spielen und Activision

24  schwerwiegenden Schaden zugefügt und werden dies auch weiterhin tun. Dieser Schaden

25  ist unmittelbar, enorm und irreparabel, und umfasst u. a. Folgendes:

26

27

28

1   Die Beklagten schädigen irreparabel die Fähigkeit von Activisions' legitimen Kunden, die von

2   Activision sorfältig geschaffenen Online-Erfahrungen zu genießen, und an ihnen teilzuhaben.

3   Dies kann wiederum dazu führen, dass die User mit den Spielen zunehmend unzufrieden

4   werden, ihr Interesse daran verlieren und aufhören zu spielen.

5          (a)      Das wissentliche und vorsätzliche Fehlverhalten der Beklagten hat

6   Activision dazu gezwungen, wesentliche Ressourcen auszugeben in dem Versuch, den von

7   der Cheating-Software verursachten Schaden zu beheben. Dies umfasst die Erstellung und

8   Erstveröffentlichung von Updates für die COD-Spiele, die der Cheating-Software entgegen-

9   arbeiten, die Beantwortung von Spielerbeschwerden, das Einstellen von Mitarbeitern, um die

10  Spiele zu überwachen, um die Verwendung von Cheating-Software aufzudecken sowie den

11  „Ausschluss" (d. h. die permanente Löschung der Accounts) von Usern, die die Cheating-

12  Software verwenden.

13  

14         (b)      Das Verhalten der Beklagten schädigt den Ruf von Activision und führt

15  zu dem Verlust an signifikantem Kunden-Goodwill.

16         47.      Das Verhalten der Beklagten hat zu Schaden an Activision geführt in einer

17  Höhe, die in der Gerichtsverhandlung nachgewiesen wird. Nach Activisions' Schätzung

18  beläuft sich dieser Betrag möglicherweise auf Millionen von Dollar. Bis den Beklagten dies

19  nicht vorläufig und fortdauernd durch eine gerichtliche Verfügung untersagt wird, wird

20  Activision weiterhin durch die Cheating-Software Schaden erleiden.

21  

22  

23                          **ANKLAGEPUNKT I**

24                  **Unerlaubter Handel von Umgehungsgeräten**

25         48.      Activision behauptet erneut die in den Punkten 1 bis einschließlich 47

26  enthaltenen Behauptungen und macht sie durch Bezugnahme zum Bestandteil dieses

27                                  18

Mitchell   28
Silberberg &
Knupp LLP

13821751.1

1   Punktes, als ob sie in Gänze aufgeführt werden.

2      49.    Die COD-Spiele, darunter u. a. ihre Quellcode und audiovisuelle Gameplay

3   Umgebungen, sind urheberrechtlich geschützte Werke.

4      50.    Activision hat in die COD-Spiele technologische Mittel eingefügt, die effektiv

5   den Zugriff auf die COD-Spiele kontrollieren, darunter den Zugriff auf die dynamischen

6   audiovisuellen Elemente, die das Spiel einbeziehet.

7      51.    Die Cheating-Software besteht aus oder enthält Technologien, Produkte,

8   Dienste, Geräte, Bestandteile, oder Teile davon, die hauptsächlich zum Zweck der

9   Umgehung technologischer Maßnahmen, die den Zugriff auf die COD-Spiele effektiv

10  kontrollieren,  konstruiert oder produziert sind.

11     52.    Die Cheating-Software (und die Teile davon, die Activisions' Anti-Cheat-

12  Technologien umgehen) haben keinen anderen gewerblichen signifikanten Zweck oder

13  Gebrauch, als dass sie eine technologische Maßnahme umgehen, die den Zugriff auf ein

14  urheberrechtlich geschütztes Werk effektiv kontrolliert und die Exklusivrechte eines

15  Eigentümers eines Urheberrechts schützt.

16     53.    Die Beklagten vermarkten die Cheating-Software in den USA mit dem Wissen

17  ihrer Verwendung, die technologischen Zugriffkontrollen von Activision zu umgehen.

18     54.    Infolge von Vorstehendem bieten die Beklagten der Öffentlichkeit Technologie

19  an, stellen sie bereit, importieren sie oder handeln unerlaubt mit ihr, was 17 U.S.C. §

20  1201(a)(2) verletzt.

21     55.    Die Handlungen der Beklagten, die Verstöße gegen DMCA darstellen, wurden

22  ohne die Genehmigung, Authorisierung oder Zustimmung von Activision ausgeführt und

23  werden auch weiterhin derart ausgeführt werden.

24     56.    Die Beklagten haben vorsätzlich und zur privaten kommerziellen

25  Bereicherung gegen § 1201 von DMCA verstoßen.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

13821751.1

19

57.     Das Verhalten der Beklagten hat Activision Schaden zugefügt und hat die Beklagten ungerechtfertigt bereichert, in einer Höhe, die in der Gerichtsverhandlung nachgewiesen wird.

58.     Infolge der Handlungen und des Verhaltens der Beklagten hat Activision erheblichen, unmittelbaren und irreparablen Schaden erlitten, und wird dies auch weiterhin tun, für den es vom Gesetz her kein angemessenes Mittel zur Heilung gibt. Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass die Beklagten weiterhin § 1201 von DMCA verletzen werden, wenn ihnen dies nicht von diesem Gericht verboten wird und sie von diesem Gericht davor nicht zurückgehalten werden. Activision hat ein Recht auf eine Unterlassungsverfügung, um das fortdauernde rechtswidrige Verhalten der Beklagten zu unterbinden und zu bändigen.

59.     Als eine direkte und unmittelbare Folge des Verhaltens der Beklagten, hat Activision nach 17 U.S.C. § 1203(c) ein Recht auf die Gewinne der Beklagten, die ihren Verstößen gegen 17 U.S.C. § 1201 zuschreibbar sind.

60.     Hilfsweise hat Activision ein Recht auf den Höchstsatz an gesetzlichem Schadenersatz nach 17 U.S.C. § 1203(c)(A), in Höhe von $2.500 in Hinblick auf jeden Verstoß durch die Beklagten.

61.     Activision hat ferner ein Recht auf seine Rechtsanwaltsgebühren und den gesamten Kosten nach 17 U.S.C. § 1203(b).

## ANKLAGEPUNKT II

### Vorsätzlicher Eingriff in vertragliche Beziehungen

62.     Activision behauptet erneut die in den Punkten 1 bis einschließlich 61 enthaltenen Behauptungen und macht sie durch Bezugnahme zum Bestandteil dieses Punktes, als ob sie in Gänze aufgeführt werden.

63.     Wie hierin ausgeführt, müssen lizenzierte User in den USA zuerst den TOU

Mitchell
Silberberg &
Knupp LLP

13821751.1

20

1    von Activision zustimmen, bevor sie die COD-Spiele installieren und spielen können.

2        64.    Die Verträge von Activision mit seinen Usern sind gültig und durchsetzbar.

3        65.    Jedes Mal, wenn ein Käufer der Cheating-Software die Cheating-Software in

4    Verbindung mit den COD-Spielen verwendet, verstößt er oder sie gegen die TOU. Activision

5    ist informiert und glaubt und behauptet auf dieser Grundlage, dass tausende dieser Verstöße

6    durch die Kunden der Beklagten stattgefunden haben.

7        66.    Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass

8    die Beklagten von beidem Kenntnis haben, der Existenz und den spezifisch relevanten

9    Bedingungen der Verträge zwischen Activision und seinen Usern in den USA, darunter die

10   TOU. Insbesondere wissen die Beklagten, dass die TOU Spielern verbietet, die Cheating-

11   Software zu verwenden und dass Spieler das Risiko eingehen von den COD-Spielen

12   ausgeschlossen zu werden, wenn sie beim Gebrauch der Cheating-Software erwischt

13   werden. Nichtsdestotrotz ermutigen die Beklagten die User vorsätzlich und verleiten die User

14   der COD-Spiele dazu, die Cheating-Software zu kaufen und zu verwenden, und dies in dem

15   Wissen, dass die Verwendung dieser Produkte durch ihre Kunden eine Verletzung der

16   Verträge dieser Kunden mit Activision darstellen.

17       67.    Durch Verleiten der User von Activision zur Verletzung ihrer Verträge mit

18   Activision griffen die Beklagten vorsätzlich in die Verträge zwischen Activision und seinen

19   Usern ein und werden dies auch weiterhin tun.

20       68.    Als eine direkte und unmittelbare Folge der Handlungen der Beklagten hat

21   Activision Schäden erlitten in einer Höhe, die in der Gerichtsverhandlung nachgewiesen

22   wird, darunter u. a. der Verlust an Goodwill unter den Usern der Spiele von Activision, die

23   Umlenkung von Activisions Ressourcen zum Versuch, die Verwendung von Cheating-

24   Software zu entdecken und verhindern, geminderte Gewinne und ein Verlust des Gewinnes

25   von Usern, deren Accounts Activision beendigt hat wegen Verletzung der TOU in den USA.

69.    Als eine weitere Folge der Handlungen der Beklagten haben die Beklagten ungerechtfertigt spezifisch identifizierbares Eigentum eingenommen, das aus all den Erlösen besteht, die dem Verkauf der Cheating-Software in den USA zuschreibbar sind, und alle anderen Produkte oder Dienste, die ein Recht von Activision verletzen sowie weiteres Eigentum, das rückverfolgbar ist auf diese Erlöse. Diese Erlöse, die direkt der Manipulation und dem Fehlgebrauch der COD-Spiele durch die Beklagten und dem vorsätzlichem Eingriff der Beklagten in Activisions Verträgen zuschreibbar sind, gehören rechtmäßig und billigkeitsrechtlich Activision.

70.    Der vorsätzliche Eingriff der Beklagten in die Verträge zwischen Activision und seinen lizenzierten Usern in den USA gibt Activision ein Recht auf Unterlassungsansprüche und adäquaten Schadenersatz, die Verhängung eines gesetzlichen Treuhandverhältnisses über die unrechtmäßig erhaltenen Erlöse der Beklagten und sonstige verfügbare Abhilfen.

71.    Die Beklagten sind schuldig der Unterdrückung, Betrugs oder böser Absicht, und Activision hat daher zusätzlich zu seinem tatsächlichem Schadenersatz ein Recht auf ein übernormal hohes Schadenersatzurteil und Strafschadenersatz gegen die Beklagten.

### ANKLAGEPUNKT III

#### Wettbewerbsverzerrung

72.    Activision behauptet erneut die in den Punkten 1 bis einschließlich 71 enthaltenen Behauptungen und macht sie durch Bezugnahme zum Bestandteil dieses Punktes, als ob sie in Gänze aufgeführt werden.

73.    Die Handlungen und das Verhalten der Beklagten stellen eine Wettbewerbsverzerrung in den USA dar nach California Business & Professions Code § 17200 ff. und nach dem Gewohnheitsrecht von Kalifornien.

Mitchell
Silberberg &
Knupp LLP

13821751.1

22

74.   Als eine direkte und unmittelbare Folge des unlauteren Wettwerbs der Beklagten in den USA wurde Activision geschädigt, und die Beklagten haben sich ungerechtfertigterweise anbereichert, in einer Höhe, die in der Gerichtsverhandlung nachgewiesen wird, für das Schadenersatz und/oder Restitution und Abschöpfung angemessen sind. Dieser Schadenersatz und/oder diese Restitution und Abschöpfung sollte eine Erklärung durch dieses Gericht enthalten, dass die Beklagten gesetzliche Treuhänder zum Gunsten von Activision sind, und eine Verfügung, dass die Beklagten Activision die Bruttoeinnahmen, die erhalten wurden oder zu erhalten sind und dem Verkauf der Cheating-Software in den USA zuschreibbar sind, übergeben.

75.   Die Beklagten sind schuldig der Unterdrückung, Betrugs oder böser Absicht, und Activision hat daher zusätzlich zu seinem tatsächlichem Schadenersatz ein Recht auf ein übernormal hohes Schadenersatzurteil und Strafschadenersatz gegen die Beklagten.

76.   Infolge der Handlungen und des Verhaltens der Beklagten in den USA hat Activision erheblichen, unmittelbaren und irreparablen Schaden erlitten, und wird dies auch weiterhin tun, für den es vom Gesetz her kein angemessenes Mittel zur Heilung gibt. Activision ist informiert und glaubt und behauptet auf dieser Grundlage, dass die Beklagten weiterhin Wettbewerbsverzerrung betreiben werden, wenn ihnen dies nicht von diesem Gericht verboten wird und sie von diesem Gericht davor nicht zurückgehalten werden. Nach California Business & Professions Code § 17203 hat Activision ein Recht auf eine vorläufige, einstweilige Verfügung auf Unterlassen und auf ein Unterlassungsurteil, die weitere Wettbewerbsverzerrungshandlungen verbieten.

## KLAGEANTRAG

DAHER beantragt Activision, dass dieses Gericht zu seinem Gunsten ein Urteil fällt zu jedem Entlastungsanspruch, wie oben ausgeführt, und Zuspruch an ihn von Abhilfe, darunter, nicht beschränkt auf eine Verfügung:

Mitchell
Silberberg &
Knupp LLP

13821751.1

23

1.       Den Beklagten, ihren Funktionären, Mitarbeitern, Bevollmächtigten, Töchtern, Vertretern, Vertreibern, Händlern, Mitgliedern, verbundenen Unternehmen und allen Personen, die in Übereinstimmung mit den Beklagten handeln oder sich an den Handlungen der Beklagten beteiligen, einstweilig und fortgesetzt Folgendes zu verbieten: (i) rechtswidrig in den USA mit Umgehungsgeräten zu handeln; (iii) vorsätzlich in die Verträge von Activision oder seinen verbundenen Unternehmen mit Spielern in den USA einzugreifen; und (iv) Wettbewerbsverzerrung in den USA zu betreiben.

2.       Die Beklagten zu verpflichten, die Cheating-Software, jede demnächst erscheinende Software, die Spielern erlaubt in einem von Activision oder seinen verbundenen Unternehmern herausgegebenem Spiel zu schummeln, und jede fingierte Kopie davon, die auf einer Domaine, an einer Adresse, an einem Ort oder ISP gehostet wird, herunterzufahren und zu schließen.

3.       Die Beklagten zu verpflichten, Activision alle Kopien von Material zu geben, die ein Recht von Activision beeinträchtigen oder verletzen, wie hierin dargelegt, darunter u. a. den Quellcode für die Cheating-Software.

4.       Die Beklagten zu verpflichten, Activision eine Rechnungslegung aller Produkt- oder Dienstverkäufe in den USA zu geben, die ein Recht von Activision oder der verbundenen Unternehmen von Activision beeinträchtigen oder verletzen, wie hierin dargelegt.

5.       Activision tatsächlichen Schadenersate oder den Höchstsatz an gesetzlichem Schadenersatz wegen Verletzung von § 1201 von DCMA, wie angemessen, nach 17 U.S.C. § 1203(c) zuzusprechen.

6.       Activision seine vollständigen Kosten und Rechtsanwaltsgebühren in dieser Klage nach 17 U.S.C. § 1203(b) und anderen anwendbaren Gesetzen zuzusprechen.

7.       Activision ein übernormal hohes Schadenersatzurteil und Strafschadenersatz

Mitchell
Silberberg &
Knupp LLP

13821751.1

1   gegen die Beklagten zuzusprechen zum Klagegrund von Activision wegen vorsätzlichem

2   Eingriff in vertragliche Beziehungen.

3       8.      Activision die Restitution der unrechtmäßigen Erlöse der Beklagten

4   zuzusprechen, darunter eine Rechnungslegung aller Verkäufe der Cheating-Software in den

5   USA und/oder aller Produkte und Dienste, die ein Recht von Activision, wie hierin

6   ausgeführt, verletzen.

7       9.      Die Verhängung eines gesetzlichen Treuhandverhältnisses über die von den

8   Beklagten unrechtmäßig erhaltenen Erlöse über die Verkäufe der Cheating-Software in den

9   USA und/oder eines Produkts oder eines Dienstes, das/der ein Recht von Activision, wie

10   hierin dargelegt, verletzt.

11       10.     Jeden sonstigen und weiteren Rechtsbehelf zuzusprechen, den dieses

12   Gericht für gerecht und angemessen erachtet.

13

14   DATUM: 4. Januar 2022          MARC E. MAYER
                                    MARK C. HUMPHREY
15                                  GENEVIEVE L. JAVIDZAD
                                    MITCHELL SILBERBERG & KNUPP LLP
16

17                                  Durch: /Unterschrift/ Marc E. Mayer
                                    _____
18                                  Marc E. Mayer (SBN 190969)
19                                  Rechtsbeistand für den Kläger

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

13821751.1

25



## FORDERUNG EINES GESCHWORENENPROZESSES

Activision fordert für alle so verhandelbaren Punkte einen Geschworenenprozess.

DATUM: 4. Januar 2022

MARC E. MAYER
MARK C. HUMPHREY
GENEVIEVE L. JAVIDZAD
MITCHELL SILBERBERG & KNUPP LLP

Durch: /Unterschrift/ Marc E. Mayer

Marc E. Mayer (SBN 190969)
Rechtsbeistand für den Kläger

Mitchell
Silberberg &
Knupp LLP

13821751.1

26

1  MARC E. MAYER (SBN 190969)
     mem@msk.com
2  MARK C. HUMPHREY (SBN 291718)
     mxh@msk.com
3  GENEVIEVE L. JAVIDZAD (SBN 336138)
     glj@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
5  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
6  Facsimile: (310) 312-3100

7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 ACTIVISION PUBLISHING, INC., a          CASE NO. 2:22-cv-00051
12 Delaware corporation,
                                           **COMPLAINT FOR:**
13             Plaintiff,
                                           **(1) TRAFFICKING IN**
14       v.                                **CIRCUMVENTION DEVICES;**

15 ENGINEOWNING UG, a German               **(2) INTENTIONAL**
   corporation, CMM HOLDINGS S.A., a       **INTERFERENCE WITH**
16 German corporation, VALENTIN            **CONTRACTUAL RELATIONS;**
   RICK, an individual, LEONARD
17 BUGLA, an individual, LEON              **(3) UNFAIR COMPETITION**
   FRISCH, an individual, IGNACIO
18 GAYDUCHENKO, an individual,             **Demand For Jury Trial**
   MARC-ALEXANDER RICHTS, an
19 individual, ALEXANDER KLEEMAN,
   an individual, and DOES 1-50,
20 inclusive,

21             Defendants.

22

23

24       Activision Publishing, Inc. ("Activision" or "Plaintiff") alleges as follows:

25

26              **PRELIMINARY STATEMENT**

27       1.    Activision is the owner and publisher of the *Call of Duty* series of

28 video games (the "COD Games").  By this lawsuit, Activision seeks to put a stop
   to unlawful conduct by an organization that is distributing and selling for profit

Mitchell
Silberberg &
Knupp LLP

13821751.1

**Exhibit A**
**Page 50**

1   numerous malicious software products designed to enable members of the public to

2   gain unfair competitive advantages (*i.e.*, to cheat) in the COD Games.  These

3   ongoing activities damage Activision's games, its overall business, and the

4   experience of the COD player community.

5        2.     EngineOwning ("EO") is a commercial online business enterprise

6   consisting of a German business entity and numerous individuals – including

7   without limitation Defendants Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio

8   Gayduchenko, Marc-Alexander Richts, Alexander Kleeman, and several

9   individuals acting under various aliases[1] – operating via the website

10   http://www.engineowning.to (the "EO Website").  EO is engaged in the

11   development, sale, distribution, marketing, and exploitation of a portfolio of

12   malicious cheats and hacks for popular online multiplayer games, most

13   prominently the COD Games.  Via the EO Website and other related websites and

14   social media accounts, EO and numerous affiliated individuals and resellers sell

15   cheats for numerous COD Games, including without limitation *Call of Duty:*

16   *Warzone, Call of Duty: Modern Warfare (2019), Call of Duty World War II, Call*

17   *of Duty: Modern Warfare III, Call of Duty Black Ops, Call of Duty Black Ops II,*

18   and *Call of Duty Black Ops III* (collectively, the "Cheating Software").  EO also

19   claims to be developing new cheating software for the popular multiplayer game

20   *Overwatch*, which is owned and published by Activision's affiliate, Blizzard

21   Entertainment, Inc.  The Cheating Software enables players to manipulate the COD

22   Games to their personal advantage, such as by automatically aiming weapons,

23   revealing the locations of opponents, and allowing the player to see information

24   that is not normally available to players because it would give them an unfair

25   advantage within the game.

26

27

28   [1] EngineOwning and the various individual defendants are referred to hereinafter
collectively as "EO" or "Defendants."

Mitchell
Silberberg &
Knupp LLP

13821751.1

2

3.    The COD Games are designed to be enjoyed by and fair for all players.  When players use exploits like the Cheating Software, such conduct disturbs game balance and in many cases leads non-cheating players to quit matches in frustration.  Widespread cheating also can lead to negative social media posts and headlines in the press, which can impact consumer confidence.  Accordingly, Activision has spent and continues to spend an enormous amount of resources to combat cheating in its games.  Notwithstanding those efforts, Defendants' sale and distribution of the Cheating Software has caused Activision to suffer massive and irreparable damage to its goodwill and reputation and to lose substantial revenue.

4.    In creating, marketing, selling, servicing, and distributing the Cheating Software, Defendants have engaged in numerous unlawful acts under United States and California law.  Defendants have violated Section 1201 of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(b)(1), by selling, importing, offering, providing, and otherwise trafficking in technologies that circumvent or evade anti-cheat technologies used by Activision to protect the integrity of the COD Games.  Defendants also have knowingly, intentionally, and maliciously interfered with and disrupted the contracts Activision has with its customers in the United States, which explicitly prohibit the exact type of cheating that Defendants enable, encourage, and solicit by marketing and selling their Cheating Software.  Defendants not only know that their conduct is unlawful, but they engage in that conduct with the deliberate intent to harm Activision, its businesses, and its player community.  This Court must put a stop to Defendants' misconduct, and Activision is entitled to monetary damages, injunctive and other equitable relief, and punitive damages against Defendants.

Mitchell Silberberg & Knupp LLP
13821751.1

3

## JURISDICTION AND VENUE

5.    This is a civil action seeking damages, injunctive relief, and other equitable relief under the anti-circumvention provisions of the DMCA, 17 U.S.C. § 1201, and the laws of the State of California.

6.    This Court has subject matter jurisdiction over Activision's claims for violating the anti-circumvention provisions of the DMCA pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Activision's state law claims for intentional interference with contract and unfair competition, which are so related to Activision's federal claims as to be part of the same case or controversy.

7.    This Court has personal jurisdiction over Defendants because they have purposefully directed their activities at the United States, and at California in particular, have purposefully availed themselves of the benefits of doing business in California, and have established a continuing presence in California.  Activision is informed and believes, and on that basis alleges, that, without limitation:

(a)    Defendants conduct extensive and ongoing business with users in the State of California and the United States;

(b)    Defendants target the Cheating Software to users in the United States, including in the State of California, knowing that a substantial market exists for their Cheating Software in the United States.  For example, Defendants display all of the text of their website in "English (US)," offer special sales around U.S. holidays (such as Halloween and Black Friday), and provide customer service in English.

(c)    Defendants distribute the Cheating Software in the State of California, advertise and market the Cheating Software in the United States and the State of California, and communicate directly with users in the United States and in the State of California, including for the purposes of soliciting purchases of the

1   Cheating Software by such users and providing technical support for the Cheating

2   Software;

3        (d)   Defendants have entered into, and continue to enter into,

4   contracts with individuals in the State of California, including contracts pursuant to

5   which these individuals license from Defendants the right to install and use the

6   Cheating Software.  In return for such licenses, Defendants receive ongoing

7   recurring daily, weekly, or monthly payments from individuals in the United States

8   and the State of California; and

9        (e)   Defendants contract with entities located in the State of

10  California in connection with their businesses.  This includes, for example, domain

11  name registries, hosting or content delivery services, as well as credit card

12  processors and merchant banks.  In fact, Defendants boast on their website that

13  they maintain at least two servers in the United States, including one in California:

14

15

16



17

18

19

20

21

22

23

24        (f)   Defendants engage in conduct that they know is likely to cause

25  harm to Activision in the State of California, including in this District, where

26  Activision is located and has its principal place of business.

27

28

Mitchell
Silberberg &
Knupp LLP
13821751.1

5

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or in which Activision's injuries were suffered.

## THE PARTIES

9.    Activision is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Santa Monica, California.

10.    Activision is informed and believes, and on that basis alleges, that Defendants CMM Holdings S.A. and EngineOwning Software UG are German business entities headquartered in Pfaffenhofen an der Ilm (collectively, the "Corporate Defendants"). Activision is further informed and believes, and on that basis alleges, that the individual defendants develop, maintain, market, distribute, and sell the Cheating Software (including via the online "chat room" system known as "Discord"), and also operate and maintain the EO Website, through one or more of the Corporate Defendants.

11.    Activision is informed and believes, and on that basis alleges, that Defendant Valentin Rick a/k/a Skyfail ("Rick") is an individual residing in Germany who founded the Corporate Defendants, is the sole managing director and shareholder of the Corporate Defendants, and historically has been the primary administrator of the EO Website. Activision is further informed and believes, and on that basis alleges, that Rick has been and continues to be the de facto leader of EO, and in that capacity has directed and/or been responsible for developing, maintaining, marketing, distributing, and selling the Cheating Software. Activision previously contacted Rick in 2018 and 2020 regarding his involvement with EO and the EO Website, and in response he claimed to have sold the EO Website to an unknown purchaser. Rick has never provided any evidence that such a sale took place, and Activision is informed and believes, and on that basis alleges, that Rick

Mitchell
Silberberg &
Knupp LLP

13821751.1

6

1   has continued to manage and operate EO and the EO Website at all times relevant

2   to this lawsuit.

3          12.    Activision is informed and believes, and on that basis alleges, that

4   Defendant Leonard Bugla, a/k/a Reganmian and Noodleman ("Bugla"), is an

5   individual residing in Germany who is listed as, and appeared to act as, an

6   operations administrator of the EO Website in 2019 and 2020.  Activision is

7   further informed and believes, and on that basis alleges, that in this role Bugla

8   enabled the development, maintenance, distribution, and sale of the Cheating

9   Software.  Activision is further informed and believes, and on that basis alleges,

10  that Rick and Bugla have a long-standing personal relationship dating back to

11  before EO and the EO Website were created (*i.e.*, before 2012).

12         13.    Activision is informed and believes, and on that basis alleges, that

13  Defendant Leon Frisch a/k/a "Kraisie" ("Frisch") is an individual residing in

14  Germany who acts as a lead moderator on the EO Website forums.  Activision is

15  further informed and believes, and on that basis alleges, that in this role Frisch

16  assists with the sale of the Cheating Software, including without limitation by

17  providing technical support for cheats and communicating with customers

18  regarding payment for the Cheating Software.

19         14.    Activision is informed and believes, and on that basis alleges, that

20  Defendant Ignacio Gayduchenko, a/k/a Weather and Kokole ("Gayduchenko"), is

21  an individual residing in Spain who has acted as a coder and developer of the

22  Cheating Software, and who has provided technical support for the Cheating

23  Software through, among other venues, the EO Website.

24         15.    Activision is informed and believes, and on that basis alleges, that

25  Defendant Marc-Alexander Richts a/k/a "x0000x" and "Twenty" ("Richts") is an

26  individual residing in Germany who has been involved with distributing and

27  selling the Cheating Software through EO and the EO Website.

28

Mitchell
Silberberg &
Knupp LLP
13821751.1

7

**Exhibit A**
**Page 56**

1      16.    Activision is informed and believes, and on that basis alleges, that

2    Alexander Kleemann a/k/a "A200k" ("Kleeman") is an individual residing in

3    Veitshöchheim, Germany, who has been involved in distributing the Cheating

4    Software and providing various administrative functions with regard to the EO

5    Website.

6      17.    Activision is informed and believes, and on that basis alleges, that the

7    following individuals, whose true names are yet unknown, are developers of the

8    Cheating Software, administrators of the EO Website, resellers and distributors of

9    the Cheating Software, and/or otherwise involved in the creation, marketing, and

10   distribution of the Cheating Software: "Bonsai," "Agriolo," "Chronos,"

11   "Deutschlander," "Enceladus," "Homie," "Jeuwifghue," "LogicX," "LuoZheng,"

12   "mortyy," "NOL3X," and "SlapstiK."  These individuals are included as

13   defendants herein as Does 1 through 12.

14     18.    Activision is informed and believes, and on that basis alleges, that

15   defendant Doe 13 a/k/a "Crotle" (referred to as "Boss" on the EO Website forums)

16   is a high-level member of EO who has a leadership role within the organization,

17   through which he or she participates and/or assists in the development,

18   maintenance, distribution and sale of the Cheating Software.

19     19.    Activision is informed and believes, and on that basis alleges, that

20   Doe 14 a/k/a "Speedi13" and Doe 15 a/k/a "Requi" act or have acted as coders for

21   EO, and in that role have participated and/or assisted in the development,

22   maintenance, distribution and sale of the Cheating Software.

23     20.    Activision is informed and believes, and on that basis alleges, that

24   several of the Doe defendants (including without limitation the aforementioned

25   Does 1 through 15) may be aliases of EO staffers, including some of the named

26   Defendants in this case, who have sought to mask their identities after previously

27   being contacted by Activision in connection with their involvement in EO.

28

Mitchell
Silberberg &
Knupp LLP
13821751.1

8

21.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Doe defendants are unknown to Activision, which has therefore sued said defendants by such aliases and fictitious names.  These defendants include individuals whose real identities are not yet known to Activision, but who are acting in concert with one another, often under the guise of Internet aliases, in committing the unlawful acts alleged herein.  Among the Doe defendants are developers, resellers, technical support staff, and other individuals who have participated in the development, sale, and distribution of the Cheating Software.  Activision will seek leave to amend this complaint to state their true names and capacities once said defendants' identities and capacities are ascertained.  Activision is informed and believes, and on that basis alleges, that all defendants sued herein are liable to Activision as a result of their participation in all or some of the acts set forth in this complaint.  (All of the aforementioned defendants, both the named defendants and the Doe defendants, are referred to herein collectively as "Defendants.")

22.     Activision is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things alleged in this complaint, was acting within the course and scope of such agency.

## **FACTS APPLICABLE TO ALL CLAIMS**

23.     Activision is the publisher and owner of the COD Games, which consist of over 15 video games released since 2003 on various video game platforms.  The COD Games are released annually, with live operations and with additional downloadable content released regularly, and are consistently among the best-selling games in a given year, having sold over 400 million total copies to date.  In December 2020, Activision announced that the COD Games generated over $3 billion in net bookings in the prior 12 months.

Mitchell
Silberberg &
Knupp LLP

13821751.1

9

1    24.    The COD Games are "first-person shooter" video games that allow

2  players to step into the shoes of soldiers and elite operators in combat throughout

3  history, ranging from World War II to modern day and all the way into the future.

4  Nearly all of the COD Games include single player campaign story modes which

5  place players within a fictional narrative. However, all COD Games include the

6  popular competitive online multiplayer modes, where players join online to play

7  live together in real-time.  Each of the COD Games offers as many as a dozen or

8  more different online multiplayer game types, all of which are extremely intense as

9  players compete to earn experience points, increase their rankings and statistics,

10  and acquire various rewards for winning matches and achieving certain goals and

11  objectives.

12    25.    The COD Games' online multiplayer modes are so popular that they

13  have given rise to multiple competitive "esports" leagues and tournaments which

14  attract several million viewers on streaming platforms such as Twitch and

15  YouTube.

16

17              **The COD Games' Business Model**

18    26.    Given the popularity and replayability of the COD Games' online

19  multiplayer modes, Activision works very hard to ensure that the COD Games

20  offer consistently compelling player experiences so that customers will remain

21  engaged in the COD Games, continue to play them for sustained periods of time,

22  and be excited about future releases.

23    27.    In March 2020, Activision released *Call of Duty: Warzone*

24  ("Warzone"), a free standalone multiplayer game that is offered to the public

25  without requiring that the customer purchase a copy of any *Call of Duty* game.  In

26  order to play *Call of Duty: Warzone*, a member of the public must register an

27  account with Activision, download the *Call of Duty: Warzone* software, and

28  connect to Activision's online multiplayer servers.  Accordingly, the revenue

Mitchell
Silberberg &
Knupp LLP
13821751.1

1  Activision generates through *Call of Duty: Warzone* comes exclusively from sales

2  of "virtual goods" (*i.e.*, weapons, skins, etc.) or seasonal "battle passes" that enable

3  the player to receive in-game rewards for accomplishments within the game.

4     28.     Revenue generated by the COD Games in turn helps pay for the

5  enormous cost of updating, improving, maintaining, and serving the COD Games

6  and their competitive online modes.  If players perceive that a game is unfair,

7  including because others are cheating or have an unfair advantage, players may

8  grow frustrated with the COD Games, become less interested in playing and

9  supporting them (including by purchasing new games and items) and may even

10  stop playing entirely.  Cheating therefore not only harms (and could even destroy)

11  COD player communities, but also impacts Activision's ability to offer the fast-

12  paced, stable, high-quality online gameplay to which millions of fans have become

13  accustomed.

14

15     **Activision's Efforts To Protect Against Hackers And Cheaters**

16     29.     Because the COD Games are so popular, unscrupulous individuals

17  and companies such as Defendants frequently seek to exploit the games for their

18  own personal gain and profit by selling cheats, hacks, and other malicious

19  software, knowing full well that they are ruining the experience for other players

20  and harming Activision.  For this reason, Activision undertakes significant efforts

21  to protect the integrity of the COD Games through both technical and contractual

22  means.

23

24     Technical Protection

25     30.     One way that Activision seeks to protect the COD Games from

26  cheating or unauthorized exploitation, is by developing and employing anti-cheat

27  technologies.  These technologies help detect when players are using third party

28  cheating software, and prevents unauthorized access to the COD Games by those

Mitchell
Silberberg &
Knupp LLP

13821751.1

11

1    players.  It is not possible to play the COD Games' online multiplayer modes (or to

2    play *Call of Duty: Warzone* at all) without installing Activision's anti-cheat

3    technologies.  Activision has been able to identify and ban hundreds of thousands

4    of accounts using cheating software in the COD Games in just over the past year.

5         31.   In order for any hack or cheat software to operate, it must be designed

6    to prevent or avoid detection by the anti-cheat software, such as by concealing

7    itself or by disabling the anti-cheat technology.  Otherwise, the cheat will be

8    detected and the user will be denied access to the particular game's online

9    multiplayer, and may be permanently banned from playing the game at all.

10

11                              Contractual Protection

12        32.   In order to access, download, or play the COD Games, users must

13   create and register accounts with Activision.  Upon first playing the COD Games

14   and beginning installation, users must expressly manifest their assent to

15   Activision's Terms of Use (collectively, the "TOU") by clicking through.  If the

16   user refuses to consent to the TOU, they cannot proceed and play the game.

17        33.   The TOU includes a limited license agreement between Activision

18   and its users.  Under the TOU, Activision grants to users a "personal, limited, non-

19   exclusive license" to use its games for "non-commercial use," expressly

20   conditioned upon the user's compliance with the TOU.  Among other provisions,

21   by assenting to the TOU, users expressly agree not to "use, develop, host or

22   distribute cheats, automation software (bots), modded lobbies, hacks, mods or any

23   other unauthorized third-party software" in connection with Activision's games "or

24   engage in any form of cheating, boosting, or booting."

25        34.   The COD Games' online multiplayer modes (as well as the entire *Call*

26   *of Duty: Warzone* game) are made available to the public through Activision's

27   proprietary servers and matchmaking systems.  It is not possible for a user to

28

Mitchell
Silberberg &
Knupp LLP
13821751.1

12

1 | lawfully obtain access to or play the COD Games' online multiplayer modes (or

2 | *Call of Duty: Warzone*) without expressly consenting to the TOU.

3

4 | <u>**Defendants And Their Unlawful Conduct**</u>

5 |     35.    Activision is informed and believes, and on that basis alleges, that

6 | Defendants are engaged in developing, updating, marketing, distributing, selling,

7 | and supporting the Cheating Software.  At all times relevant herein, Defendants

8 | have developed, updated, marketed, distributed, sold, and supported the Cheating

9 | Software.  They have done so, and continue to do so, via the EO Website, email,

10 | and other communication platforms such as Discord.

11 |     36.    The EO Website claims to sell "high quality cheats" based on a belief

12 | that "everyone should have the ability to win and enjoy online matches."

13 | Currently, the EO Website offers cheats for *Call of Duty: Warzone*; *Call of Duty:*

14 | *Modern Warfare (2019)*; *Call of Duty World War II*; *Call of Duty: Modern*

15 | *Warfare 3*; *Call of Duty Black Ops*; *Call of Duty Black Ops II*; and *Call of Duty*

16 | *Black Ops III*.  Defendants also claim that they intend to release a cheat for the

17 | game *Overwatch*, developed and published by Activision's affiliate Blizzard

18 | Entertainment, Inc.

19 |     37.    Visitors to the EO Website are able to purchase access to the Cheating

20 | Software in various bundles for each of the offered COD Games.  Access to the

21 | cheats is offered in various increments at prices ranging from 4.49€ for three days

22 | of access to 19.99€ for thirty days of access, as well as 39.99€ for a full ninety

23 | days of access to cheats for *Call of Duty: Modern Warfare (2019)* and *Call of*

24 | *Duty: Warzone*.  The following "features" are offered for each of the cheats:

25 |       • Aimbots, which automatically "snap" the cheating player's aim to an

26 |         opponent when the opponent is visible onscreen, thereby allowing for

27 |         quick and precise shots.

28

Mitchell
Silberberg &
Knupp LLP
13821751.1

13

- Triggerbots, which cause cheating players to automatically fire their weapon when aiming at another player.
- ESP and 2D/3D Radar, which allow the cheating player to visualize opponents within the game in ways that destroy the integrity of the game , such as by allowing the cheater to see other players through walls and other obstacles.
- Various methods and exploits designed to avoid detection by anti-cheat software, as well as the ability to hide cheats from video recording software (*i.e.*, in order to prevent cheats from being discovered by other players recording and reviewing gameplay).

38.    Activision is informed and believes, and on that basis alleges, that in addition to marketing and distributing cheats (including but not limited to the Cheating Software), Defendants provide extensive and ongoing customer support and technical assistance, including through the forums on the EO Website, as well as by other means such as email and Discord.

39.    Activision is informed and believes, and on that basis alleges, that the Cheating Software has been downloaded and used by players of the COD Games thousands of times by players residing in the United States.  Activision also is informed and believes that Defendants have made hundreds of thousands of dollars, or more, from their distribution and sale of the Cheating Software.

**Defendants' Unlawful Activities**

40.    Activision is informed and believes, and on that basis alleges, that in order for the Cheating Software to operate with the COD Games, the Cheating Software necessarily includes technology that primarily is designed to avoid, bypass, evade, or otherwise circumvent Activision's anti-cheat technologies. Accordingly, each time Defendants sell a license to the Cheating Software they are trafficking in technology that controls access to the COD Games.

Mitchell
Silberberg &
Knupp LLP

13821751.1

14

1     41.    Defendants specifically and aggressively advertise and promote the

2  Cheating Software as having been designed to circumvent Activision's anti-cheat

3  software.  Product listings on the EO Website advertise that the Cheating Software

4  offers "multiple protection layers against anti-cheats."  The listings also include

5  certifications that the cheats will bypass and avoid detection by Activision's anti-

6  cheat software:

## Supported Anti Cheats

- Battle.net - Supported
- Call of Duty Anti-Cheat - Secure
- Warning: You can get manually banned for cheating obvious

*See* https://www.engineowning.to/shop/product/21/engineowning-for-call-of-duty-
modern-warfare-2019.

14     42.    Each time a player uses the Cheating Software to cheat in the COD

15  Games, he or she also violates Activision's TOU, including those provisions that

16  specifically prohibit players from "us[ing], develop[ing], host[ing] or distribut[ing]

17  cheats, automation software (bots), modded lobbies, hacks, mods or any other

18  unauthorized third-party software" in connection with Activision's games "or

19  engag[ing] in any form of cheating, boosting, or booting."  Accordingly, Activision

20  is informed and believes, and on that basis alleges, that as a result of Defendants'

21  conduct, at least tens of thousands of breaches of these contracts have occurred.

22     43.    Activision is informed and believes, and on that basis alleges, that

23  Defendants are fully aware that the use of the Cheating Software violates the TOU.

24  For example, the EO Website prominently warns users that they can be "manually

25  banned" by Activision for "obvious" cheating.  This is a concern for players

26  seeking to use the Cheating Software, because some advantages conferred by the

27  Cheating Software may make player characters do things that appear unnatural or

28  even physically impossible within the world of the game, such as quickly

Mitchell
Silberberg &
Knupp LLP
13821751.1

15

1   "snapping" aim to an opposing player with speed and accuracy beyond what even
2   the most skilled player could achieve.  Consequently, the EO Website stresses that
3   the Cheating Software contains features designed to help avoid detection by the
4   naked eye, including "Smooth Aim," which slows down aim movement to make a
5   player using an Aimbot appear to be moving naturally, and "Fire Delay," which
6   causes a player using a Triggerbot to wait before automatically shooting.

7        44.    The Cheating Software has no purpose or function other than to
8   enable players to violate the TOU by using cheats and exploits.  Thus, Defendants'
9   goal is to ensure that their customers continue to receive the benefits of their
10  contracts with Activision while they simultaneously engage in continuing breaches
11  of their obligations under these contracts.

12       45.    On multiple occasions over the past few years, Activision has
13  contacted or sought to contact some of the individuals suspected to be involved
14  with EO and demanded that they cease and desist from any further development,
15  maintenance, marketing, distribution, and sale of the Cheating Software.
16  Activision is informed and believes, and on that basis alleges, that the Defendants
17  in this action are and have been fully aware that their conduct violates Activision's
18  rights but nevertheless have brazenly continued their activities.

19       46.    By their conduct, Defendants have caused and continue to cause
20  serious harm to the COD Games and to Activision.  Such harm is immediate,
21  massive and irreparable, and includes (but is not limited to) the following:

22            (a)    Defendants irreparably harm the ability of Activision's
23  legitimate customers to enjoy and participate in the online experiences carefully
24  created by Activision.  That, in turn, may cause users to grow dissatisfied with the
25  COD Games, lose interest, and stop playing.

26            (b)    Defendants' knowing and willful misconduct has forced
27  Activision to expend substantial resources attempting to remediate the damage
28  caused by the Cheating Software.  This includes creating and releasing updates to

Mitchell
Silberberg &
Knupp LLP

13821751.1

16

1   the COD Games that counteract the Cheating Software, responding to player

2   complaints, employing personnel to police the games to detect the use of the

3   Cheating Software, and "banning" (*i.e.*, permanently deleting the accounts of)

4   users who are using the Cheating Software.

5         (c)    Defendants' conduct harms Activision's reputation and results

6   in the loss of significant customer goodwill.

7       47.    Defendants' conduct has resulted in damage to Activision in an

8   amount to be proven at trial. By Activision's estimation, such damage may

9   amount to millions of dollars. Unless and until Defendants are preliminarily or

10   permanently enjoined, Activision will continue to suffer severe harm from the

11   Cheating Software.

12

13                   **COUNT I**

14       **Trafficking In Circumvention Devices**

15       48.    Activision re-alleges and incorporates by reference the allegations in

16   paragraphs 1 through 47, as if set forth fully herein.

17       49.    The COD Games, including but not limited to their source code and

18   audiovisual game play environments, are copyrighted works.

19       50.    Activision has incorporated into the COD Games technological

20   measures that effectively control access to the COD Games, including access to the

21   dynamic audiovisual elements that comprise the game.

22       51.    The Cheating Software is comprised of or contains technologies,

23   products, services, devices, components, or parts thereof that primarily are

24   designed or produced for the purpose of circumventing technological measures that

25   effectively control access to the COD Games.

26       52.    The Cheating Software (and the portions thereof that circumvent

27   Activision's anti-cheat technologies) have no commercially significant purpose or

28   use other than to circumvent a technological measure that effectively controls

Mitchell
Silberberg &
Knupp LLP

13821751.1

17

1   access to a copyrighted work and that protects the exclusive rights of a copyright

2   owner.

3      53.   Defendants market the Cheating Software in the United States with

4   knowledge of their use to circumvent Activision's technological access controls.

5      54.   As a result of the foregoing, Defendants are offering to the public,

6   providing, importing, or otherwise trafficking in technology that violates 17 U.S.C.

7   § 1201(a)(2).

8      55.   Defendants' acts constituting DMCA violations have been and

9   continue to be performed without the permission, authorization, or consent of

10  Activision.

11     56.   Defendants have violated Section 1201 of the DMCA willfully and for

12  private commercial gain.

13     57.   Defendants' conduct has caused damage to Activision and has

14  unjustly enriched Defendants, in an amount to be proven at trial.

15     58.   As a result of Defendants' acts and conduct, Activision has sustained

16  and will continue to sustain substantial, immediate, and irreparable injury, for

17  which there is no adequate remedy at law.  Activision is informed and believes,

18  and on that basis alleges, that, unless enjoined and restrained by this Court,

19  Defendants will continue to violate Section 1201 of the DMCA.  Activision is

20  entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful

21  conduct.

22     59.   As a direct and proximate result of Defendants' conduct, pursuant to

23  17 U.S.C. § 1203(c), Activision is entitled to Defendants' profits attributable to

24  their violations of 17 U.S.C § 1201.

25     60.   Alternatively, Activision is entitled to the maximum statutory

26  damages, pursuant to 17 U.S.C. § 1203(c)(A), in the amount of $2,500 with respect

27  to each violation by Defendants.

28

Mitchell
Silberberg &
Knupp LLP
13821751.1

18

1    61.    Activision further is entitled to its attorneys' fees and full costs

2    pursuant to 17 U.S.C. § 1203(b).

3

4                              **COUNT II**

5              **Intentional Interference With Contractual Relations**

6    62.    Activision re-alleges and incorporates by reference the allegations in

7    paragraphs 1 through 61, as if set forth fully herein.

8    63.    As described herein, in order to install and play the COD Games,

9    licensed users in the United States first must assent to Activision's TOU.

10   64.    Activision's contracts with its users are valid and enforceable.

11   65.    Each time a purchaser of the Cheating Software uses the Cheating

12   Software in connection with the COD Games, he or she breaches the TOU.

13   Activision is informed and believes, and on that basis alleges, that thousands of

14   such breaches have taken place by Defendants' customers.

15   66.    Activision is informed and believes, and on that basis alleges, that

16   Defendants are aware of both the existence and specific relevant terms of contracts

17   between Activision and its users in the United States, including the TOU.

18   Specifically, Defendants are aware that the TOU prohibits players from using the

19   Cheating Software and that players are at risk of being banned from the COD

20   Games should they be caught using the Cheating Software.  Nevertheless,

21   Defendants intentionally encourage and induce users of the COD Games to

22   purchase and use the Cheating Software, knowing that the use of these products by

23   their customers is a breach of these customers' contracts with Activision.

24   67.    By inducing Activision's users to breach their contracts with

25   Activision, Defendants have intentionally interfered, and continue to interfere, with

26   the contracts between Activision and its users.

27   68.    As a direct and proximate result of Defendants' actions, Activision

28   has suffered damages in an amount to be proven at trial, including but not limited

Mitchell
Silberberg &
Knupp LLP

13821751.1

19

1   to a loss of goodwill among users of Activision's games, diversion of Activision's

2   resources to attempt to detect and prevent the use of the Cheating Software,

3   decreased profits, and a loss of profits from users whose accounts Activision has

4   been terminated for violation of the TOU in the United States.

5        69.    As a further result of Defendants' actions, Defendants have unjustly

6   obtained specifically identifiable property, consisting of all of the proceeds

7   attributable to the sale of the Cheating Software in the United States, and any other

8   products or services that violate any of Activision's rights, and any additional

9   property traceable to those proceeds. Those proceeds, which are directly

10  attributable to Defendants' manipulation and misuse of the COD Games and

11  intentional interference with Activision's contracts, rightfully and equitably belong

12  to Activision.

13       70.    Defendants' intentional interference with the contracts between

14  Activision and its licensed users in the United States entitles Activision to

15  injunctive relief and compensatory damages, the imposition of a constructive trust

16  over Defendants' wrongfully obtained proceeds, and other available relief.

17       71.    Defendants are guilty of oppression, fraud, or malice, and Activision,

18  in addition to its actual damages, by reason thereof, is entitled to recover

19  exemplary and punitive damages against Defendants.

20

21                             **COUNT III**

22                       **<u>Unfair Competition</u>**

23       72.    Activision re-alleges and incorporates by reference the allegations in

24  paragraphs 1 through 71, as if set forth fully herein.

25       73.    The acts and conduct of Defendants constitute unfair competition in

26  the United States under California Business & Professions Code § 17200 *et seq.*

27  and under California common law.

28

Mitchell
Silberberg &
Knupp LLP

13821751.1

20

74.   As a direct and proximate result of Defendants' unfair competition in the United States, Activision has been damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Activision, and an order that Defendants convey to Activision the gross receipts received or to be received that are attributable to the sale of the Cheating Software in the United States.

75.   Defendants are guilty of oppression, fraud or malice, and Activision, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

76.   As a result of Defendants' acts and conduct in the United States, Activision has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Activision is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to engage in unfair competition. Pursuant to California Business & Professions Code § 17203, Activision is entitled to temporary, preliminary and permanent injunctions prohibiting further acts of unfair competition.

**PRAYER FOR RELIEF**

WHEREFORE, Activision prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to an order:

1.   Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with Defendants from: (i) trafficking in circumvention devices in the United States; (iii) intentionally

Mitchell
Silberberg &
Knupp LLP

13821751.1

21

1  interfering with Activision's or its affiliates' contracts with players in the United

2  States; and (iv) engaging in unfair competition in the United States.

3       2.    Requiring Defendants to shut down the Cheating Software, any

4  forthcoming software that allows players to cheat in any game published by

5  Activision or its affiliates, and any colorable copies thereof, hosted at any domain,

6  address, location, or ISP.

7       3.    Requiring Defendants to deliver to Activision all copies of materials

8  that infringe or violate any of Activision's rights, as described herein, including,

9  without limitation, the source code for the Cheating Software.

10       4.    Requiring Defendants to provide Activision with an accounting of any

11  and all sales of products or services in the United States that infringe or violate any

12  of Activision's or affiliates' rights, as described herein.

13       5.    Awarding Activision actual or maximum statutory damages for

14  violation of Section 1201 of the DMCA, as appropriate, pursuant to 17 U.S.C. §

15  1203(c).

16       6.    Awarding Activision its full costs and attorneys' fees in this action

17  pursuant to 17 U.S.C. § 1203(b) and other applicable laws.

18       7.    Awarding Activision exemplary and punitive damages against

19  Defendants on Activision's cause of action for intentional interference with

20  contractual relations.

21       8.    Awarding Activision restitution of Defendants' unlawful proceeds,

22  including an accounting of any and all sales of the Cheating Software in the United

23  States, and/or any other products or services that violate any of Activision's rights

24  described herein.

25       9.    Imposing a constructive trust over the proceeds unjustly obtained by

26  Defendants through the sales of the Cheating Software in the United States, and/or

27  any other products or services that violate any of Activision's rights described

28  herein.

Mitchell
Silberberg &
Knupp LLP

13821751.1

             22

1       10.    Awarding such other and further relief as this Court may deem just

2   and appropriate.

3   DATED:  January 4, 2022        MARC E. MAYER

4                                 MARK C. HUMPHREY
                              GENEVIEVE L. JAVIDZAD

5                                 MITCHELL SILBERBERG & KNUPP LLP

6                   By:  _/s/ Marc E. Mayer_

7                           Marc E. Mayer (SBN 190969)
                        Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

13821751.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Activision demands a trial by jury on all issues so triable.

DATED:  January 4, 2022            MARC E. MAYER
                                   MARK C. HUMPHREY
                                   GENEVIEVE L. JAVIDZAD
                                   MITCHELL SILBERBERG & KNUPP LLP


                        By:   _/s/ Marc E. Mayer_
                              Marc E. Mayer (SBN 190969)
                              Attorneys for Plaintiff

Mitchell
Silberberg &
Knupp LLP

13821751.1

24