ELLIOT GIPSON PC
ELLIOT B. GIPSON (State Bar. No. 234020)
egipson@elliotgipson.com
BRIANNA LOGAN (State Bar No. 347947)
blogan@elliotgipson.com
15260 Ventura Blvd., Ste. 835
Los Angeles, California 91403
Telephone: 310.817.1268

Attorneys for Defendants EngineOwning UG,
Valentin Rick, Leonard Bugla, Leon Frisch,
Ignacio Gay Duchenko, Marc-Alexander Richts,
Alexander Kleeman, Leon Schlender, Bennet
Huch, Pascal Claβen, and Remo Löffler

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation, | CASE NO. 2:22-CV-00051-MWF |
| Plaintiffs, | |
| vs. | **MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| ENGINEOWNING UG, a German corporation, CMM HOLDINGS S.A., a German corporation, GARNATZ ENTERPRISE LTD., a Belize corporation, VALENTIN RICK, an individual, LEONA RD BUGLA, an individual, LEON FRISCH, an individual, IGNACIO GAYDUCHENKO, an individual, MARC-ALEXANDER RICHTS, an individual, ALEXANDER KLEEMAN, an individual, LEON SCHLENDER, an individual, ERICK PFEIFER, an individual, BENNET HUCH, an individual, ZAIN JONDAH, an individual, RICKY SZAMEITAT, an individual, MARCEL BINDEMANN, an individual, REMO LOFFLER, an individual, MARVIN BAOTIC NEUMEYER, an individual, HENDRIK SMAAL, an individual, CHARLIE WIEST, an individual, DENNIS REISSLEICH, an individual, TYLER BYRD, an individual, SIMON | Judge: Hon. Michael W. Fitzgerald Dept.: 5A

Complaint Filed: January 4, 2022
First Amended Complaint Filed: September 16, 2022

Hearing Date: March 27, 2023
Hearing Time: 10:00 AM |

- 4 -

MASIAS, an individual, NICHOLAS
JAMES BALDWIN, an individual,
ANTONIO MEDIAN, an individual,
REMY CARTIGNY, an individual,
PASCAL CLASSEN, an individual,
MANUEL T. SANTIAGO, an
individual, and KATERINA DISDLE,
an individual, and DOES 1-50,
inclusive,

Defendants.

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ..................................................................................12

II.  **FACTUAL BACKGROUND** .................................................................13

  A.  **General Allegations** ......................................................................13

  B.  **Particular Allegations** ..................................................................14

    1.   *EngineOwning UG* ...................................................................15

    2.   *Valentin Rick* ...........................................................................15

    3.   *Leon Schlender* ........................................................................15

    4.   *Bennet Huch* .............................................................................16

    5.   *Leonard Bugla* .........................................................................16

    6.   *Marc-Alexander Richts* ...........................................................16

    7.   *Ignacio Efimov Gayduchenko* ..................................................17

    8.   *Leon Frisch* ..............................................................................17

    9.   *Alexander Kleeman* ..................................................................17

    10.  *Remo Löffler* ............................................................................17

    11.  *Pascal Claßen* ..........................................................................17

  C.  **Foreign Status of EngineOwning** ...............................................18

  D.  **Foreign Status of Individual Foreign Defendants and Evidence**...........18

  E.  **Hardship of US Case on Foreign Defendants** ............................19

  F.  **Resources of Plaintiff and Plaintiff's Presence in Germany**...................19

  G.  **German Lawsuit** ...........................................................................19

  H.  **German Legal System** ..................................................................20

III. **LEGAL STANDARD** ............................................................................21

  A.  **No Personal Jurisdiction under FRCP 12(b)(2)** ........................21

  B.  **Forum Non Conveniens** ...............................................................21

  C.  **International Comity** ....................................................................22

  D.  **Failure to State a Claim** ..............................................................23

  E.  **Extraterritoriality** .......................................................................24

IV.  **ARGUMENT** .........................................................................................25

  A.  **This Case Should be Dismissed for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2)**.....................................25

- 3 -

**1.** *There Is No General Jurisdiction* ....................................................25

**2.** *There is No Specific Personal Jurisdiction Over the Foreign Defendants* 29

**B.** **This Case Should be Dismissed Under** *Forum Non Conveniens* .............32

**1.** *Germany is an Adequate Alternative Forum* .................................33

**2.** *The Private and Public Interest Favor Dismissal* .........................34

   **a.** **The Private Interest** ...............................................................34

      i)   *The Residence of the Parties and Witnesses* ....................34

      ii)  *The Forum's Convenience* ................................................35

      iii) *Access to Evidence* .........................................................35

      iv) *Whether Unwilling Witnesses Can Be Compelled to Testify*..............36

      v)  *The Costs of Bringing Witnesses to Trial* .........................36

      vi) *The Enforceability of Judgement* .....................................37

      vii) *Other Practical Problems Making the Case Easy, Expeditious and Inexpensive* ...................................................................37

   **b.** **The Public Interest** ................................................................38

      i)   *The Local Interest* ...........................................................38

      ii)  *Familiarity With Governing Law* ......................................38

      iii) *Burden on Local Courts and Juries* ..................................38

      iv) *Court Congestion* ............................................................39

      v)  *The Costs of Resolving a Dispute Unrelated to this Forum*..............39

**C.** **This Case Should be Dismissed Under International Comity** .................39

**1.** *The United States Has Little Interest in This Dispute*..............................39

**2.** *The Interests of the Germany Are Great* ......................................40

**3.** *German Courts Are an Adequate Alternative Forum* .....................40

**D.** **Rule 12(b)(6) Failure to State a Claim** ...........................................42

**1.** *All Counts Should Be Dismissed Due to Failure to State a Claim Given the Complete Lack of Differentiation Between Defendants for any Alleged Conduct Giving Rise to Liability Under Any Alleged Cause of Action* ..........42

**2.** *Counts II, III, VI and VII Should be Dismissed Due to Plaintiff's Failure to State Claim* ..............................................................44

   **a.** **The RICO Counts VI and VII Fail to State a Claim**......................44

   **b.** **The Computer Fraud and Abuse (Count III) Fails to State a Claim** 46

   **c.** **The False Designation of Origin (Count II) Fails to State Claim** ...47

- 4 -

**E.    All Counts Should Be Dismissed Due to the Extraterritoriality Principle** 48

**F.    Plaintiff's FAC Should be Dismissed with Prejudice without Leave to Amend** ............................................................................................... 51

**V.  CONCLUSION** ..................................................................................... 52

## <u>TABLE OF AUTHORITIES</u>

### Cases

*818 Media Prods., LLC v. Wells Fargo Bank, N.A.*,
   No. CV16-9427 PSG (PLAX), 2017 WL 3049565 (C.D. Cal. 2017) .................39

*Aaron v. Aguirre*, No. 06-CV-1451-H POR,
   2007 WL 959083 (S.D. Cal. Mar. 8, 2007) ....................................................20, 40

*Alan Neuman Prods. Inc. v. Albright*,
   862 F.2d 1388 (9th Cir.1988) .............................................................................41

*Armstrong v. Investor's Bus. Daily, Inc.*,
   No. CV182134MWFJPRX, 2018 WL 6787049 (C.D. Cal. 2018) .....................40

*Ascon Properties, Inc. v. Mobil Oil Co.*,
   866 F.2d 1149 (9th Cir. 1989) ............................................................................49

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
   223 F.3d 1082 (9th Cir. 2000)......................................................................23, 25

*be2 LLC v. Ivanov*,
   642 F.3d 555 (7th Cir.2011)................................................................................24

*Belize Telecom, Ltd. v. Gov't of Belize*,
   528 F.3d 1298 (11th Cir. 2008)..........................................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................20

*Beluca Ventures LLC v. Aktiebolag*,
   No. 21-CV-06992-WHO, 2022 WL 3579879 (N.D. Cal. Aug. 19, 2022) ...........39

*Bintu v. Delta Air Lines, Inc.*,
   860 F. App'x 700 (11th Cir. 2021)......................................................................30

*Biotronik, Inc. v. Zurich Ins. Plc Niederlassung fur Deutschland*,
   No. 3:18-CV-01631-SB, 2019 WL 5858189 (D. Or. 2019) ...............................30

*Blackmer v. United States*,
   284 U.S. 421 (1932)…………………………………..……………………………21

*Boschetto v. Hasting*,
   539 F.3d. 1011 (9th Cir. 2008)............................................................................22

*Brand v. Menlove Dodge*,
   796 F.2d 1070 (9th Cir. 1986).............................................................................23

*Browne v. McCain*,
   612 F. Supp. 2d 1118 (C.D. Cal. 2009) ..............................................................26

*Burger King Corp. v. Rudzewicz*,

471 U.S. 462 (1985) ................................................................................27

*Chirag v. MT Marida Marguerite Schiffahrts*,
   983 F.Supp.2d 188 (D. Conn. 2013) ...................................................30

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011)...................................................23, 24, 25

*Congoleum Corp. v. DLW Aktiengesellschaft*,
   729 F.2d 1240 (9th Cir. 1984)...............................................................26

*Cooper v. City of Hesperia*,
   No. EDCV-15-1665-MWF-SP, 2016 WL 11741134 (C.D. Cal. July 29, 2016)..49

*Cubbage v. Merchent*,
   744 F.2d 665 (9th Cir.1984).................................................................23

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).......................................................................22, 28

*DFSB Kollective Co. Ltd. v. Bourne*,
   897 F. Supp. 2d 871 (N.D. Cal. 2012) ..................................................24

*Diamond Multimedia Sys., Inc. v. Superior Court*,
   19 Cal.4th 1036 (1999).........................................................................47

*Dish Network, LLC v. Jadoo TV, Inc.*,
   No. CV 18-9768 FMO (KSX), 2020 WL 6536659 (C.D. Cal. Mar. 16, 2020)....26

*EEOC v. Arabian American Oil Co.*,
   499 U.S. 244 (1991) ......................................................................21, 46

*Foley Bros., Inc. v. Filardo*,
   336 U.S. 281 (1949)......................................................................21, 46

*Goulatte v. CitiMortgage, Inc.*,
   No. EDCV12391PSGSPX, 2013 WL 12132060 (C.D. Cal. Feb. 27, 2013)........45

*Grady v. F.D.I.C.*,
   No. CV-11-02060-PHX-JAT, 2014 WL 1364932 (D. Ariz. Mar. 26, 2014) .......44

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)............................................................................33

*Hamilton v. El Moussa*,
   No. CV 19-8182-CJC(AFMX), 2020 WL 2614625 (C.D. Cal. Feb. 10, 2020) ...40

*Harp v. Airblue Ltd.*,
   879 F. Supp. 2d 1069 (C.D. Cal. 2012) .............................................30

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122  (9th Cir. 2003)...........................................................18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)............................................................................23

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000).................................................................42

*Huynh v. Walmart, Inc.*,
   No. 22-CV-00142-JSC, 2022 WL 3109562 (N.D. Cal. Aug. 4, 2022) ...............43

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
   331 F. Supp. 2d 1176 (C.D. Cal. 2004) ...............................................36

*In re GlenFed, Inc. Secs. Litig.*,
   42 F.3d 1541 (9th Cir.1994)...............................................................20

*In re Managed Care Litig.*,
   298 F. Supp. 2d 1259 (S.D. Fla. 2003) ...............................................43

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) ...............................................42

*Ingram v. City of San Francisco*,
   No. C12-3038 JSC, 2012 WL 3257805 (N.D. Cal. Aug. 8, 2012) .....................49

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...............................................................18, 22, 25

*Jackson v. Ramos*,
   No. CV 19-2288-JFW(E), 2019 WL 9270452 (C.D. Cal. Apr. 9, 2019) .............39

*Jauss v. Lehman Bros.*, Inc.,
   No. 94 Civ. 2921, 1995 WL 4023 (S.D.N.Y. 1995) ...............................31

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
   412 F.3d 418 (2d Cir. 2005)...............................................................38

*King v. Am. Family Mut. Ins. Co.*,
   632 F.3d 570 (9th Cir. 2011)...............................................................23

*Kirch v. Liberty Media Corp.*,
   No. 04 CIV. 667 (NRB), 2006 WL 3247363 (S.D.N.Y. Nov. 8, 2006) ...............31

*Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir.1991)...............................................................41

*Lawson v. Klondex Mines Ltd.*,
   450 F. Supp. 3d 1057 (D. Nev. 2020) ...............................................48

*Leetsch v. Freedman*,
   260 F.3d 1100 (9th Cir. 2001)...............................................................18

*Lockman Found. v. Evangelical All. Mission*,
   930 F.2d 764 (9th Cir. 1991)...............................................18, 38, 48

*L'Oreal USA S/D, Inc.*,
   No. 19-CV-04021-HSG, 2020 WL 1307004 (N.D. Cal. Mar. 19, 2020) .............40

- 8 -

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) ............................................................. 18, 31, 33, 35

*Matter of Star & Crescent Boat Co., Inc.*,
549 F. Supp. 3d 1145 (S.D. Cal. 2021) ................................................................. 29

*Mavrix Photo v. Brand Tech., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........................................................................ 24, 25

*Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No.
CV183119DSFRAOX, 2018 WL 6443082 (C.D. Cal. Sept. 24, 2018) ............... 26

*Microsoft Corp. v. AT & T Corp.*,
550 U.S. 437 (2007) ............................................................................................ 21

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ...................................................................................... 21, 46

*Moyal v. Munsterland Gruppe GmbH & Co. KG*,
539 F. Supp. 3d 305 (S.D.N.Y. 2021) ................................................................. 38

*Mujica v. AirScan Inc.*,
771 F.3d 580 (9th Cir. 2014) ...................................................................... 19, 20, 38

*NCA Holding Corp.*,
No. 96 Civ. 9321, 1999 WL 39539 (S.D.N.Y. 1999) .......................................... 31

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir.1993) .................................................................................... 20

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................... 47

*Opert v. Schmid*,
535 F. Supp. 591 (S.D.N.Y.1982) ....................................................................... 31

*Papasan v. Allain*,
478 U.S. 265 (1986) ............................................................................................ 20

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ............................................................................. 25

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ............................................................................. 22

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ............................................................................................ 18

*Rosen v. Terapeak, Inc.*,
No. CV-15-00112-MWF (EX), 2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) . 26

*Russo v. APL Marine Servs., Ltd.*,
135 F. Supp. 3d 1089 (C.D. Cal. 2015) ............................................................... 47

*Rust v. Borders*,

- 9 -

No. ED CV 19-0050-PA(E), 2019 WL 12375434 (C.D. Cal. Mar. 17, 2019) .....39

*Sale v. Haitian Centers Council, Inc.*,
 509 U.S. 155 (1993) .............................................................................................21, 46

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ....................................................................22, 23, 27

*Semegen v. Weidner*,
 780 F.2d 727 (9th Cir. 1985) ..............................................................................21, 41

*Smith v. United States*,
 507 U.S. 197 (1993) ...................................................................................................21

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998) .................................................................................48

*STM Grp., Inc. v. Gilat Satellite Networks, Ltd.*,
 No. SACV 11-0093 DOC RZX, 2011 WL 2940992 (C.D. Cal. 2011) ...............31

*Stowe v. Fritzie Hotels*,
 44 Cal. 2d 416 (1955) ...............................................................................................45

*Tatung Co. v. Shu Tze Hsu*,
 43 F. Supp. 3d 1036 (C.D. Cal. 2014) ....................................................................21

*Tevra Brands LLC v. Bayer HealthCare LLC*,
 No. 19-CV-04312-BLF, 2020 WL 8513082 (N.D. Cal. Sept. 15, 2020) .............28

*Trudel v. Stoltz*,
 67 F.3d 309 (9th Cir. 1995) .....................................................................................41

*Turner Ent. Co. v. Degeto Film GmbH*,
 25 F.3d 1512 (11th Cir. 1994) .................................................................................38

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
 290 F. Supp. 2d 1057 (N.D. Cal. 2003) ..................................................................30

*Ungaro-Benages v. Dresdner Bank AG*,
 379 F.3d 1227 (11th Cir. 2004) ...............................................................................19

*Van Buren v. United States*,
 141 S. Ct. 1648 (2021) .............................................................................................44

*Vess v. Ciba–Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir.2003) ............................................................................20, 21

*Vivendi SA v. T-Mobile USA Inc.*,
 586 F.3d 689 (9th Cir. 2009) ...................................................................................35

*von Spee v. von Spee*
 514 F. Supp. 2d 302 (D. Conn. 2007) .....................................................................38

*Voronin v. Garland*,
 No. 220CV07019ODWAGRX, 2022 WL 3101534 (C.D. Cal. Aug. 4, 2022) ....44

*Werner v. Multiply Media, LLC,*
    No. CV 20-4240-RSWL-JEMX, 2021 WL 5751460 (C.D. Cal. Jan. 8, 2021) ....26

*World–Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980 ................................................................................................24

## Statutes

15 U.S.C. § 1125 ....................................................................................................46

15 U.S.C.A. § 1125 (West) ..........................................................................44, 45

17 U.S.C. §1201 ....................................................................................................46

18 U.S.C. § 1962 ...................................................................................................46

18 U.S.C.A. § 1030 (West) ..........................................................................43, 44

## Rules

Fed. R. Civ. P. 8 ..........................................................................................20, 39

Fed. R. Civ. P. 9 ...................................................................................................20

- 11 -

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio Gay Duchenko, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Classen, Remo Loffler, and Engineowning UG (hereinafter the "Foreign Defendants") hereby respectfully submit this memorandum of points and authorities in support of their motion to dismiss (the "Motion").

## I.   INTRODUCTION

Plaintiff Activision Publishing, Inc.'s ("Plaintiff") core accusations are that the Foreign Defendants created and distributed a so-called "Cheating Software" with respect to Plaintiff's Call of Duty video game franchise.  However, this case does not belong in the United States.  Plaintiff, the subsidiary of a multi-national corporation Activision Blizzard, Inc. with a market capitalization of over $50 billion dollars and offices across the world – including three offices in Germany – has sued the Foreign Defendants, 10 of which are German citizens living in Germany and all of which are amenable to process in Germany, in California for conduct occurring entirely abroad (and mostly in Germany) which allegedly damaged Plaintiff in the amount of a few hundred thousand dollars.  The appropriate forum for such a case is not the United States – but Germany.  Moreover, Plaintiff's own conduct admits as much.  **Plaintiff previously filed a lawsuit based on the same underlying unfair competition allegations in Germany against two of the Foreign Defendants in this case – Valentin Rick and EngineOwning UG (the "German Lawsuit") – more than two (2) years ago.  That case is still pending and could be resolved one way or another as soon as February 7, 2023.**

Interestingly, Plaintiff does not mention this German Lawsuit in either its Complaint or its First Amended Complaint (the "FAC").  Perhaps Plaintiff feared such disclosure would make the Court think this matter is better left resolved in the German court system.  After all, all of the Foreign Defendants making this Motion are foreigners with no connection to the United States.  Moreover, none of the

Foreign Defendants' conduct at issue was even alleged to have occurred in the United States. *See generally*, FAC.   Given the Foreign Defendants' lack of contact with the United States and the pending German lawsuit, the Central District is simply the wrong forum for this case.   Plaintiff chose to pursue remedies for the underlying conduct in this case in Germany, which is a highly regarded civil law system, and this Court should honor Plaintiff's original decision to do so and keep this controversy out of US courts.

Moreover, Plaintiff's pleading is fatally defective due to its intentional vagueness.   As an initial matter, Plaintiff paints its picture with an extremely broad brush.  Plaintiff has chosen to name more than twenty defendants in the case, as well as fifty Doe defendants.  However, whenever pleading any conduct – which is always of a general nature – Plaintiff pleads the actions of unspecified "Defendants" – plural – never differentiating between one defendant from another.  Does Plaintiff mean every Defendant literally conducted every described action?  Or does Plaintiff mean that every Defendant is simply just liable for the actions of every other Defendant? Or is it a mix? This extremely vague form of pleading makes it impossible to tell who did what where and when.   Instead, Plaintiff leaves it to each Defendant, and the Court, to guess.

In light of the foregoing, the Foreign Defendants hereby move to dismiss this action for lack of personal jurisdiction, *forum non conveniens*, international comity, for failure to state a claim to every cause of action given lack of any allegations against specific defendants, as well as other pleading defects for specific causes of action, and because of the presumption against the extraterritorial application of US laws, all more fully discussed within.

## II.    FACTUAL BACKGROUND

### A.    General Allegations

Plaintiff alleges it is the owner and publisher of a series of video games called *Call of Duty* ("COD").   Complaint at  ¶  1.  Plaintiff  alleges  that  Defendant

- 13 -

Engineowning is a German business entity engaged in "the development, sale, distribution, marketing, and exploitation of a portfolio of malicious cheats, and hacks for . . . the COD games." Complaint at ¶ 2. Plaintiff further alleges that Defendant Engineowning sells software via its website and other related websites. *Id*. This software "enable players to manipulate the COD games to their personal advantage . . . ." *Id*. Plaintiff alleges that Defendants sale and distribution of this software has caused Plaintiff to "suffer massive and irreparable damage to its goodwill and reputation and to lose substantial revenue." Complaint at ¶ 3.

Plaintiff does not allege the Foreign Defendants committed any acts in the United States. *See generally*, FAC. Instead, Plaintiff alleges that the Defendants (generally – all of them) do business in California and the United States through the EO Website and through various activities related to distributing the so-called Cheating Software. FAC a pp. 4-5. There is no allegation of any physical act pertaining to any Foreign Defendant occurring in the United States. *Id*.

Instead, Plaintiff purports to make the Foreign Defendants liable for the acts of other domestic Defendants in the United States through threadbare agency pleading. Plaintiff alleges "Activision is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things alleged in this complaint, was acting within the course and scope of such agency." FAC at p. 9. At no point in the FAC does Plaintiff allege that any particular Defendant committed any particular act as the agent for any particular Defendant. *See generally*, FAC.

**B.    Particular Allegations**

The particular allegations regarding each Defendant are likewise threadbare and solely go to an allegation of a purported role, not to any particular act. In fact, no Foreign Defendant is alleged to have committed any act whatsoever in the United States. (*See generally*, FAC).

//

- 14 -

### 1. *EngineOwning UG*

Specifically, Plaintiff alleges that Foreign Corporate Defendant EngineOwning UG is a "shell company[y] created to shield the activities of the individual defendants[.]" Complaint at ¶ 15. Plaintiff leaves it up to this Court and to the Defendants to ascertain what those "activities" are. Generally, Plaintiff does not make any allegations against Defendant EngineOwning UG specifically, but rather purports that EngineOwning merely provides an "alter ego" for "individual defendants." *Id*. Which individual defendants Plaintiff is referring to here is unclear. *See generally, id*.

### 2. *Valentin Rick*

Plaintiff alleges that Foreign Defendant Valentin Rick is the founder and creator of each Foreign Corporate Defendant. Complaint at ¶ 17. Plaintiff alleges that he is the "de facto leader of EO" and in that capacity has been responsible for the development and distribution of the Cheating Software. *Id*. Plaintiff further alleges that Mr. Rick has worked for many years "to ensure the continued operation and profitability of EO and the EO Website." Complaint at ¶ 21. Plaintiff continues to vaguely allege that Mr. Rick is the "mastermind[]" and the "driving force behind EO" and is responsible for "the overall operation of EO, the EO Website, EO's finances, and the development and maintenance of the Cheating Software and the online servers used to authenticate licenses for the Cheating Software." Complaint at ¶ 23. In total, Mr. Rick is only specifically mentioned by name in four paragraphs of the FAC. *See generally*, FAC.  This is the totality of allegations alleged against Mr. Rick individually.

### 3. *Leon Schlender*

Plaintiff likewise alleges that Foreign Defendant Leon Schlender is a creator and founder of EO and in that capacity has been responsible for the development of and distribution of the Cheating Software. Complaint at ¶ 18.  Plaintiff claims that Mr. Schlender is likewise a "mastermind[]" and the "driving force behind EO" and

is responsible for "the overall operation of EO, the EO Website, EO's finances, and the development and maintenance of the Cheating Software and the online servers used to authenticate licenses for the Cheating Software." Complaint at ¶ 23. In total, Mr. Schlender is only specifically mentioned by name in three paragraphs of the FAC. *See generally*, FAC. This is the totality of allegations alleged against Mr. Rick individually.

### 4.   *Bennet Huch*

Plaintiff accuses Foreign Defendant Bennet Huch of, "at one time purport[ing] to be the owner of the EO Website" and as acting as one of the "primary administrators of the EO Website." Complaint at ¶ 20. On that basis, Plaintiff alleges Mr. Huch is responsible for the development and distribution of the Cheating Software. *Id*. In total, Mr. Huch is only specifically mentioned by name in Paragraph 20 of the FAC. *See generally*, FAC.

### 5.   *Leonard Bugla*

Plaintiff claims that Foreign Defendant Leonard Bugla acted as an "operations administrator of the EO Website in 2019 and 2020." Complaint at ¶ 21. On that basis, Plaintiff alleges Mr. Bugla is responsible for the development and distribution of the Cheating Software. *Id*. Further Plaintiff claims that Mr. Bugla worked with Mr. Rick in order to ensure the continued "operation and profitability of EO and the EO Website." *Id*. In total, Mr. Bugla is only specifically mentioned by name in Paragraph 21 of the FAC. *See generally*, FAC.

### 6.   *Marc-Alexander Richts*

Plaintiff claims that Foreign Defendant Marc-Alexander Richts is "involved with distributing and selling the Cheating Software through EO and the EO Website" and that he has acted as a moderator on the "EO Website forums." Complaint at ¶ 22. Plaintiff do not state in what capacity Mr. Richts was involved with distributing and selling the Cheating Software. *See id*. In total, Mr. Richts is only specifically mentioned by name in Paragraph 22 of the FAC. *See generally*, FAC.

### 7.   *Ignacio Efimov Gayduchenko*

Plaintiff claims that Foreign Defendant Ignacio Efimov Gayduchenko acted as a "coder and developer of the Cheating Software" and has "provided technical support" for such software. Complaint at ¶ 24.  In total, Mr. Gayduchenko is only specifically mentioned by name in Paragraph 24 of the FAC. *See generally*, FAC.

### 8.   *Leon Frisch*

Plaintiff claims that Foreign Defendant Leon Frisch had acted as a "lead moderator on the EO Website forums." Complaint at ¶ 29. On that basis, Plaintiff alleges that Mr. Frisch has assisted with "sale of the Cheating Software."  In total, Mr. Frisch is only specifically mentioned by name in Paragraph 29 of the FAC. *See generally*, FAC.

### 9.   *Alexander Kleeman*

Plaintiff alleges that Foreign Defendant Alexander Kleeman has been involved in "distributing the Cheating Software[.]" Complaint at ¶ 30. Plaintiff does not specify in what capacity Mr. Kleeman has been involved with distribution of the Cheating Software. *See id*. Plaintiff further alleges that Mr. Kleeman acted as a "moderator on the EO website forums." *Id*.  In total, Mr. Kleeman is only specifically mentioned by name in Paragraph 30 of the FAC. *See generally*, FAC.

### 10.   *Remo Löffler*

Plaintiff alleges that Foreign Defendant Remo Löffler has been involved in "providing various administrative functions with regard to the EO Website, including by acting as a moderator on the EO Website forums." Complaint at ¶ 31. Plaintiff provides no other examples in which Mr. Löffler has provided administrative functions for the EO Website. *See id*. In total, Mr. Löffler is only specifically mentioned by name in Paragraph 31 of the FAC. *See generally*, FAC.

### 11.   *Pascal Claßen*

Plaintiff alleges that Foreign Defendant Pascal Claßen has "acted as a reseller for the EO Cheating Software." Complaint at ¶ 43. Plaintiff does not provide any

other facts to support its claims that Mr. Claβen has acted as a reseller of the alleged Cheating Software. *See generally, id*. Plaintiff does not specify how Mr. Claβen allegedly sold this software, where he sold it, when he sold it, or how much he sold it for. *See generally, id*. In total, Mr. Claβen is only specifically mentioned by name in Paragraph 43 of the FAC. *See generally*, FAC.

### C.   Foreign Status of EngineOwning

EngineOwning Software UG is a German-based company, with headquarters located in Pfaffenhofen, Germany.  (Rick Decl. at ¶ 22).  It does not own, rent, or lease property in the United States.  (*Id*. at ¶ 23).  It does not employ any United States citizens, nor United States residents. (*Id*. at ¶ 24).  It does not own any storefronts in California, nor in the United States. (*Id*. at ¶ 25).  It does not operate any subsidiaries or affiliate companies in California, nor in the United States. (*Id*. at ¶ 26).  It does not own any bank accounts or investment accounts in the United States. (*Id*. at ¶ 27).

Further, EngineOwning Software UG's books, records, and corporate documents are all kept in offices located in Germany. (*Id*. at ¶ 28). All of these records are in German. (*Id*. at ¶ 28).  It is registered to do business in Germany and pays taxes in Germany. (*Id*. at ¶ 29).  It is not registered to do business in any foreign jurisdictions – including any state or jurisdiction in the United States. (*Id*. at ¶ 29).

### D.   Foreign Status of Individual Foreign Defendants and Evidence

No Foreign Defendants are US citizens or regularly visit the United States. (*See generally*, declarations of Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio Gay Duchenko, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Classen, and Remo Loffler.)  Nor do they own any property, bank accounts, or investment accounts in the United States.  (*See generally*, *id*.)  Nor do they pay taxes in the US or have any significant connection to the US whatsoever. (*See generally*, *id*.)

//

### E.     Hardship of US Case on Foreign Defendants

English is not the first language for any of the Foreign Defendants. (*See generally*, declarations of Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio Gay Duchenko, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Classen, and Remo Loffler).   Having to defend themselves in the United States would require travel and lodging costing thousands of dollars for each Defendant.  (*Id*.).  In addition, three of the Foreign Defendants are students and going to trial in the United States could interfere with their studies. Frisch Decl. at ¶ 21; Richts Decl. at ¶ 21; Kleeman Decl. at ¶ 20.  One of the Foreign Defendants is a caretaker for a family member.  Richts Decl. at ¶ 19.

### F.     Resources of Plaintiff and Plaintiff's Presence in Germany

Plaintiff is a publicly traded company with a market capitalization in excess of $50 billion dollars. (RJN at ¶ 18).  Plaintiff has offices around the world, including a publishing office, studio, distribution and manufacturing center in Germany.   (RJN at ¶¶14-16).   Plaintiff protects its trademarks in Germany and throughout the European Union by registering its trademarks with applicable EU authorities.   (RJN at ¶¶1, 4-12).   Plaintiff has registered at least a dozen marks in the EU, including various Call of Duty marks related to the instant case.  (RJN at ¶¶4-10).   Plaintiff and Plaintiff's European affiliates have filed several lawsuits in Germany concerning unfair competition and intellectual property rights in the past, including one currently pending against two of the Foreign Defendants in this lawsuit.  ((Declaration of Jorge Fedtke ("Fedtke Decl.") at Ex. C (Expert Report) at pp. 2-3.).

### G.     German Lawsuit

Plaintiff initiated an unfair competition lawsuit against EngineOwning Software UG ("EngineOwning") and Valentin Rick on August 19, 2020. (Declaration of Markus Kompa ("Kompa Decl.") at ¶ 5.  The German Lawsuit was filed in the District Court in Ingolstadt and is assigned to Judge Pohle.  (*Id*. at ¶ 6).

The last document filed by Plaintiff Activision was Application for Rescheduling due to Plaintiff's counsel taking a vacation, on May 19, 2022. (*Id.* at ¶ 7). The last document filed by Defendants was a Summary of defendants' legal position, on December 21, 2022. (*Id.* at ¶ 8). There is currently a hearing in that matter scheduled for February 7, 2023. (*Id.* at ¶ 9). In that hearing, the Court could render a decision that decides the entirety of the case. (*Id.*).

### H. German Legal System

"The Federal Republic of Germany, a continental civilian legal jurisdiction that is also a Member State of the European Union (EU), has a well-functioning system of independent courts that allows plaintiffs to pursue legal claims at comparatively moderate cost**.**" (Declaration of Jorge Fedtke ("Fedtke Decl.") at Ex. C (Expert Report) at p. 1.) **"**The range of remedies, including damages and injunctive relief, is broadly comparable to that found in the United States. Differences exist mainly with respect to the level of damages (which tend to be lower), punitive damages (which are not recognized) and some aspects of civil procedure and rules of evidence such as the role of courts in choosing expert witnesses or the absence of pre-trial access to evidence by discovery." (Fedtke Decl. at Ex. C (Expert Report) at p. 2.).

"While sometimes characterized as an inquisitorial system, civil cases in particular are generally litigated in an adversarial fashion that is not so different from legal practice in common law jurisdictions. The official language in legal proceedings before German courts is German. The losing party generally bears the entire cost of litigation. Cost and fees will be shared proportionately if parties lose in part." (*Id.* at p. 2).

"The German legal system provides different avenues to pursue the seven counts listed in the [FAC]. Details depend on the nature of the claim in question. This analysis distinguishes between claims involving a) the protection of copyrighted works; b) false designation of origin; c) intentional interference with contractual

relations and competition law; and d) criminal offenses." (*Id*. at p. 2).

Plaintiff's affiliates have previously successfully pursued similar matters against similar defendants in Germany.   (*Id*. at pp. 2-3).

## III.  LEGAL STANDARD

### A.   No Personal Jurisdiction under FRCP 12(b)(2)

Plaintiff bears the burden of proving that minimum contacts exist between Defendants and California so as to justify an exercise of personal jurisdiction over Defendants. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).

An inquiry into personal jurisdiction centers on a defendants' contacts with the forum state and is dictated by due process concerns. As the United States Supreme Court has long held, the assertion of personal jurisdiction over a nonresident defendant will comport with constitutional due process only if the defendant has sufficient "minimum contacts" with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### B.   Forum Non Conveniens

Under the doctrine of *forum non conveniens*, a court may dismiss an action "where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp*., 236 F.3d 1137, 1142 (9th Cir. 2001). Courts are given wide latitude in exercising such discretion. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). In considering a motion for *forum non conveniens*, a court will first consider whether "an adequate alternative forum is available to the plaintiff." *Lueck*, 236 F.3d at 1143. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction . . . ." *Piper Aircraft*, 454 U.S. at 255. The Ninth Circuit has previously upheld district courts determination that Germany is an adequate alternative forum for the resolution of commercial disputes. *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001) ("The trial court correctly

determined that the German court offered an adequate alternative forum."). The last factor concerns the "balance of private and public interest factors*." Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769 (9th Cir. 1991).

### C.     International Comity

International comity is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Mujica v. AirScan Inc.*, 771 F.3d 580, 597 (9th Cir. 2014) (quotations omitted). It "is a doctrine of prudential abstention, one that 'counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *Id*. at 598 (quotations omitted). Principally at issue here is "adjudicatory comity", or comity among courts, which refers to "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *Id*. at 599 (quotations and citations omitted).

In evaluating adjudicative comity courts consider a non-exclusive set of factors including:  "[1] the strength of the United States' interest in using a foreign forum, [2] the strength of the foreign governments' interests, and [3] the adequacy of the alternative forum." *Mujica*, 771 F.3d at 603 (noting that it "is a useful starting point for analyzing comity claims") (*quoting Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004)).  A non-exclusive list of factors to be considered with respect to U.S. interests include: "(1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, [and] (5) any public policy interests." *Mujica*, 771 F.3d at 603.  The list of foreign interest factors "essentially mirrors the consideration of U.S. interests." *Id*. at 607.  With respect to the adequacy of the foreign forum, courts should consider: "(1) whether the judgment was rendered via

fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial [and] … repugnant to fundamental principles of what is decent and just." *Id*. at 607 (*quoting Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1306 (11th Cir. 2008)).

### D.    Failure to State a Claim

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Undifferentiated group pleading of defendants is impermissible. *See* Fed. R. Civ. P. 8(a)(2) (pleadings should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Aaron v. Aguirre*, No. 06-CV-1451-H POR, 2007 WL 959083, at *16 (S.D. Cal. Mar. 8, 2007) ("…Plaintiffs improperly group all Defendants together in their interference with contractual relations claim. Accordingly, Plaintiffs have failed to plead sufficiently the elements of a claim for interference with contractual relations against Defendants.").

With respect to allegations of fraud, the Central District has ruled that Rule 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). In addition, the allegation "must set forth what is false or misleading about a statement, and why

- 23 -

it is false." *Vess*, 317 F.3d at 1106 (*quoting In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id*. at 1103.This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1060 (C.D. Cal. 2014).

### E.    Extraterritoriality

"Foreign conduct is generally the domain of foreign law…" *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 439 (2007). It is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (*quoting Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)). This principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's power to legislate. *See Blackmer v. United States*, 284 U.S. 421, 437 (1932). It rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign, matters. *Smith v. United States*, 507 U.S. 197, 204, n. 5 (1993). Thus, "unless there is the affirmative intention of the Congress clearly expressed" to give a statute extraterritorial effect, "we must presume it is primarily concerned with domestic conditions." *EEOC*, 499 U.S. at 248 (internal quotation marks omitted). The canon or presumption applies regardless of whether there is a risk of conflict between the American statute and a foreign law. *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173–174 (1993). **When a statute gives no clear indication of an extraterritorial application, it has none.**    *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

IV.   **ARGUMENT**

    A.   **This Case Should be Dismissed for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2)**

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the "Plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014). Therefore, this Court's "inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211. "Due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (*citing Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)) (internal quotations omitted). There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant – general jurisdiction and specific jurisdiction. *Boschetto v. Hasting*, 539 F.3d. 1011, 1016 (9th Cir. 2008).

    1.   *There Is No General Jurisdiction*

"For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in 'continuous and systematic general business contacts.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). There is clearly no indicia of "continuous and systematic general business contacts" with respect to the Foreign Defendants.  There is no allegation that any of the Foreign Defendants have ever held lived in, held property in, or paid taxes in the United States.  (*See generally*, FAC.) Moreover, the Foreign Defendants have all submitted evidence that they in fact have no contacts with the United States, let alone California. (*See generally*, declarations of Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio Gay Duchenko, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Claβen, and Remo Löffler).

Plaintiff's attempts at establishing personal jurisdiction over Foreign Defendants consist of nothing more than boilerplate language and non-specific allegations and are insufficient to prove that Defendants maintain systematic contacts with California.   For a forum to establish personal jurisdiction over a foreign corporation, the defendant must have continuous and systematic contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-416 (1984).  These contacts must be so substantial and of such a nature as to "approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (*citing King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011)) (alterations in original). "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" *Id*. at 1074. The standard for general jurisdiction is an "exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.[1]

Plaintiff has not alleged any fact specifically against Engineowning UG, let alone the other Foreign Defendants, to support its contention that this Court has

---

[1] "Substantial" is "intended to be a fairly high standard." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (finding that in spite of Defendant's "occasional car sales in Utah to California residents," as well as car sales with the knowledge that the cars would occasionally be resold in California, this was not enough to establish general personal jurisdiction); *see also Helicopteros*, 466 U.S. at 416 (finding no jurisdiction over a foreign corporation whose officer was sent to the forum for a negotiation session, purchased equipment from the forum, and trained personnel in the forum.); *Cubbage v. Merchent*, 744 F.2d 665, 667–68 (9th Cir.1984) (finding no jurisdiction over doctors despite significant numbers of patients in the forum, use of the forum's state medical insurance, and telephone directory listing that reached the forum.).

personal jurisdiction over it, simply because no such fact exists. Engineowning UG "has no offices, real property, or staff in California; is not licensed to do business in California; has no agent for service of process in California; and pays no California taxes." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1072 (9th Cir. 2011). In fact, the only contacts Plaintiff alleges Defendants maintain with the forum are through their website. *See* Complaint at ¶ 8. Plaintiff generally claims that by selling the "Cheating Software" on the world wide web, Defendants have subjected themselves to this Court's jurisdiction. *See id.*

However, the Ninth Circuit has numerous times held that operating a website is not enough to support a finding of general jurisdiction. "If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would be the inevitable result." *CollegeSource, Inc.*, 653 F.3d at 1075-76 (*citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)). "If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012) (*citing be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir.2011)).[2]

In *Mavrix Photo*, the Ninth Circuit rejected the idea that an interactive website could subject a Defendant to general jurisdiction within a forum. In *Mavrix*, the Defendant maintained a highly interactive website which included features for "commenting, receiving email newsletters, voting in polls, [and] uploading user-generated content." *Mavrix Photo v. Brand Tech., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011). The Court found that these features were "standard attributes of many

---

[2] *See Mavrix Photo,* 647 F.3d at 1227. The Ninth Circuit Court states "[t]he level of interactivity of a nonresident defendant's website provides limited help in answering the distinct question whether the defendant's forum contacts are sufficiently substantial, continuous, and systematic to justify general jurisdiction."

websites" which "require a minimal amount of engineering expenses and effort" and do not signal "deep, persistent ties with forum residents." *Id*. In the case at bar, Plaintiffs allege that Defendants' provision of technical support and chat forums should subject them to this Court's jurisdiction, a proposition that is wholly "inconsistent with the constitutional requirement that the continuous corporate operating within a state be so substantial and of such a nature as to justify suit against [the nonresident defendant] on causes of action arising from dealing entirely distinct from those activities." *Id*. (*citing International Shoe*, 326 U.S. at 318) (internal quotations omitted) (alterations in original).

Plaintiff does not allege any facts to show that  the Foreign Defendants specifically targeted the State of California through their website. Complaint at ¶ 8; s*ee Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 n.1, 1158 (9th Cir. 2006) (finding that Defendant's maintenance of a passive website "not directed at California" did not subject them to general or specific personal jurisdiction of the forum.); *see also Mavrix Photo, Inc.,* 647 F.3d. at 1227 (declining to establish general personal  jurisdiction because, "[t]o permit the exercise of general jurisdiction based on the accessibility in the forum of a non-resident interactive website would expose most large media entities to nationwide general jurisdiction."). Further, Plaintiff does not allege any facts that show Engineowning specifically targeted video game "streamers" in California. Even if they had, "[m]arketing to forum residents, at least where such marketing does not result in substantial and continuous commerce with the forum, does not support general jurisdiction." *CollegeSource*, 653 F.3d at 1075.

The Ninth Circuit has numerous times held that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the [forum's] borders." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (finding that Defendant's license agreements with California TV networks and vendors "constitute doing business *with*

California, but do not constitute doing business *in* California.") (emphasis added);[3] *see also Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1243 (9th Cir. 1984) (finding "[i]t would not comport with fair play and substantial justice to assert jurisdiction over a West German corporation in the distant forum of California on a claim that arises out of activities in Europe, where the corporation had no contact with California other than a developing sales market.").

Finally, Plaintiff states that Foreign Defendants are subject to jurisdiction because they "maintain at least two servers in the United States, including one in Los Angeles, California and another in New Jersey." Complaint at ¶ 8(h). However, this Court has previously established that "the physical location of servers cannot confer the necessary contacts between a defendant and a forum for the exercise of personal jurisdiction."[4] *Dish Network, LLC v. Jadoo TV, Inc.*, No. CV 18-9768 FMO (KSX), 2020 WL 6536659, at *7 (C.D. Cal. Mar. 16, 2020). If there could be the possibility of jurisdiction here (and there is not), it would have to be specific jurisdiction.

## 2. *There is No Specific Personal Jurisdiction Over the Foreign Defendants*

To establish specific personal jurisdiction, the Ninth Circuit has established a three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some

---

[3] The Bancroft court found that Defendant was "not registered or licensed to do business in California," paid "no taxes in California, maintain[ed] no bank accounts in California, and target[ed] no print, television, or radio advertising toward California," and was therefore not subject to general jurisdiction in California. *Bancroft*, 223 F.3d at 1086. Although Defendant sold occasional tickets and merchandise to California residents, this was considered insufficient to create general jurisdiction. *Id.*

[4] *See also Browne v. McCain*, 612 F. Supp. 2d 1118, 1124 (C.D. Cal. 2009) (rejecting the argument that maintaining servers in California was sufficient to establish personal jurisdiction); *Werner v. Multiply Media, LLC*, No. CV 20-4240-RSWL-JEMX, 2021 WL 5751460, at *7-8 (C.D. Cal. Jan. 8, 2021) (the presence of servers was not enough to establish that "Defendant expressly aimed its intentional acts toward California."); *Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, No. CV183119DSFRAOX, 2018 WL 6443082, at *4 (C.D. Cal. Sept. 24, 2018) ("Plaintiff cites no cases, and the Court found none, where a defendant's contract with an entity that maintained a server in the forum state was itself sufficient to show a defendant expressly aimed its conduct at that forum state."); *Rosen v. Terapeak, Inc.*, No. CV-15-00112-MWF (EX), 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015) (stating "the Court finds direction from other cases that have rejected the notion that the mere location of a server may give rise to personal jurisdiction.").

act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  If the Plaintiff fails to satisfy either of the first two prongs, then personal jurisdiction cannot be established. *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable. *Id.* (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Here, Plaintiff's intentionally vague pleading makes it impossible to conduct a thoughtful analysis of specific jurisdiction.  The chief problem of the FAC, which will be seen over and over and over again throughout this Motion, is Plaintiff's strategic decision to allege all actions by unspecified plural Defendants throughout the FAC.  The FAC does not even attempt to generally define broad groups of similar defendants such as Coding Defendants, Marketing Defendants, Reseller Defendants, etc. – let alone particularize the identity of the defendant allegedly engaged in any specific conduct.  This is particularly difficult to parse, where – as is the case here – Plaintiff is attempting to make all Defendants liable for all actions of the other Defendants by vague and conclusory pleading regarding agency theory.  (FAC at ¶ 67) ("Activision is informed and believes, and on that basis alleges, that at all times mentioned in this Amended Complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things alleged in this complaint, was acting within the course and scope of such agency.").  By doing this, Plaintiff hopes to avoid having to plead any particular fact to any particular Defendant.  This is problematic with respect liability for all causes of action – as will be discussed later in this Motion

– but it is especially problematic when using such a broad theory to assert jurisdiction of foreign defendants.

Plaintiff has named more than twenty Defendants as well as fifty Doe Defendants.  (FAC at p. 1.) It bears repeating that Plaintiff alleges no specific allegations that any particular Foreign Defendant directed any activities towards the forum – let alone actually engaged in conduct in the forum, or in the United States. (*See generally*, FAC.)   Neither is any allegation made as to which a specific Defendant committed what act and where.  The Court and the Foreign Defendants are left to guess who did what where and when.  This method of pleading does not comport to fair play and substantial justice. *See Daimler AG v. Bauman*, 571 U.S. 117, 142 (2014) ("Considerations of international rapport thus reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would not accord with the "fair play and substantial justice" due process demands.").

It is simply not reasonable to exercise jurisdiction over foreign defendants on these vaguely pled allegations under these circumstances.  *Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV-04312-BLF, 2020 WL 8513082, at *2 (N.D. Cal. Sept. 15, 2020) (finding no specific personal jurisdiction over German defendants because Plaintiff failed to plead a proper nexus "between the cause of action and the defendant[s'] activities in the forum.").  The Court in *Tevra Brands* stated that the Plaintiff failed to "particularize" which defendant engaged in the "anticompetitive acts it describe[d]" – "piggybacking the conduct of German Defendants onto the conduct of [the] U.S. based" defendant).  *Id.*   In this case, Plaintiff does the same thing – attempting to hook the Foreign Defendants into US jurisdiction based on the acts of domestic defendants – but here the failure to particularize is even more extreme as the FAC is silent about which particular domestic defendants they are attempting to "piggyback" on – it just alleges actions of undifferentiated "Defendants" in general.

Regardless however, the Foreign Defendants have introduced evidence that they are foreign citizens living abroad, have not traveled to the United States on business, and do not own assets in the United States.  Rick Decl. at ¶¶ 7, 10, 17-19; Kleeman Decl. at ¶¶ 3, 6, 12-14; Huch Decl. at ¶¶ 3, 7, 13-15; Gayduchenko Decl. at ¶¶ 3, 7, 12-14; Frisch Decl. at ¶¶ 3, 6, 12-15; Schlender Decl. at ¶¶ 3, 7, 13-15; Bugla Decl. at ¶¶ 3, 7, 13-16; Richts Decl. at ¶¶ 3, 6, 12-14; Claβen Decl. at ¶¶ 3, 7, 13-15; Löffler Decl. at ¶¶ 3, 7, 13-15; *Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1154 (S.D. Cal. 2021) ("…'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden. Further, although a complaint may plead personal jurisdiction over a defendant, to the extent the defendant moves to dismiss by filing affidavits or declarations refuting the jurisdictional allegations in a complaint, the plaintiff may not rest on those allegations and must support them with the plaintiff's own affidavits or evidence.").

**B.      This Case Should be Dismissed Under *Forum Non Conveniens***

Another noteworthy aspect of this case, besides the intentionally vague pleading with respect to the identities of the particular Defendants engaged in the alleged conduct, is **the giant glaring omission at the center of the case – namely that Plaintiff has already sued Defendants EngineOwning and Valentin Rick in Germany regarding the same alleged conduct that is at issue here.  Plaintiff initiated that lawsuit in Germany approximately two (2) years prior to initiating the current suit in the United States.  By its own prior actions, Plaintiff has already shown which forum is naturally the most convenient for this case – Germany.**  Regardless, given the foreign citizen status of the Foreign Defendants who the Plaintiff has identified as the main targets of this case through the original pleading, the Central District has little interest in this case.   Under these circumstances, Germany, where each of the Foreign Defendants are amenable to service, is the more appropriate forum.

### 1.     *Germany is an Adequate Alternative Forum*

In the Ninth Circuit, for purposes of *forum non conveniens*, an adequate alternative forum exists where: "(1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1072 (C.D. Cal. 2012). Ordinarily, the first factor alone is dispositive. *U.S. Vestor, LLC v. Biodata Info. Tech.* AG, 290 F. Supp. 2d 1057, 1068 (N.D. Cal. 2003) ("The requirement of an adequate alternative forum is generally satisfied if the defendant is amenable to service in the alternative forum."). In this case, it is uncontroverted that all Foreign Defendants are amenable to service in Germany. Rick Decl. at ¶ 35; Kleeman Decl. at ¶ 23; Huch Decl. at ¶ 23; Gayduchenko Decl. at ¶ 21; Frisch Decl. at ¶ 24; Schlender Decl. at ¶ 22; Bugla Decl. at ¶ 24; Richts Decl. at ¶ 23; Claßen Decl. at ¶ 24; Löffler Decl. at ¶ 23.

In the current circumstances, it cannot be seriously disputed that potential German causes of action or remedies are inadequate. Indeed, Plaintiff has already voluntarily pursued its remedies in Germany prior to the initiation of this US lawsuit. Rick Decl. at ¶ 4; Kompa Decl. at ¶ 5. Moreover, the Foreign Defendants have proffered evidence of the German legal system and remedies available therein in the form of Dr. Jorg Fedtke's testimony. (Generally, Fedtke Decl. at Ex. C (Expert Report)). First, Plaintiff has several potential causes of action based on the allegations in this complaint, including but not limited to causes of action related to unfair competition and copyright law. (*Id.* at Ex. C (Expert Report) at pp. 2-11.) If successful, injunctive relief and damages are potentially available to Plaintiff. (Id. at Ex. C (Expert Report) at pp. 7-9.)

Not surprisingly, numerous courts around the country considering the issue have agreed with the Ninth Circuit and have determined that Germany is an adequate alternative forum. *Bintu v. Delta Air Lines, Inc.*, 860 F. App'x 700, 701 (11th Cir. 2021); *Biotronik, Inc. v. Zurich Ins. Plc Niederlassung fur Deutschland*, No. 3:18-CV-01631-SB, 2019 WL 5858189, at *8 (D. Or. 2019); *Chirag v. MT Marida*

*Marguerite Schiffahrts*, 983 F.Supp.2d 188, 197 (D. Conn. 2013), aff'd (2d Cir. 2015) 604 Fed.Appx. 16; Fagan,438 F.Supp.2d 376, 382 (S.D.N.Y. 2006); *Kirch v. Liberty Media Corp.*, No. 04 CIV. 667 (NRB), 2006 WL 3247363, at *7 (S.D.N.Y. Nov. 8, 2006); *NCA Holding Corp.*, No. 96 Civ. 9321, 1999 WL 39539 (S.D.N.Y. 1999); *Jauss v. Lehman Bros.*, Inc., No. 94 Civ. 2921, 1995 WL 4023 (S.D.N.Y. 1995) (same); *Opert v. Schmid*, 535 F. Supp. 591 (S.D.N.Y.1982).

## 2. *The Private and Public Interest Favor Dismissal*

Because none of the Foreign Defendants are citizens of the United States, both the private and public interest factors weigh in favor of dismissal. Practically, there would be numerous evidentiary problems in litigating this action in California – namely the required attendance of the eleven Foreign Defendants at trial.

### a. **The Private Interest**

The private factors to be weighed include:

(1) The residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck*, 236 F.3d at 1145 (9th Cir. 2001) (internal quotations omitted). In examining these factors, the court should focus on "the residence of all the parties." *STM Grp., Inc. v. Gilat Satellite Networks, Ltd.*, No. SACV 11-0093 DOC RZX, 2011 WL 2940992, at *6 (C.D. Cal. 2011).

### i) *The Residence of the Parties and Witnesses*

The Foreign Defendants are all citizens and residents of Europe – and all but one are citizens and residents in Germany. There are some US based defendants, but these appear to be "make weight" in order to attempt to give the FAC a nexus to US courts. Tellingly, the original Complaint featured solely foreign defendants. Complaint Dkt. No. 1. It was only after the initial approach of counsel for the Foreign Defendant to Plaintiff, that Plaintiff then amended the Complaint. (Gipson Decl. at

- 34 -

¶¶ 3-5). Moreover, arguably Plaintiff itself is a resident of Germany. Although Plaintiff is a US Delaware corporation, it has three (3) offices in Germany. (RJN at ¶¶ 14-16). The fact that it has three (3) offices in Germany should weight heavily in the court's calculus here, especially as it is uncontroverted that the Foreign Defendants have no offices or other significant contacts with the United States – let alone California.

ii)   *The Forum's Convenience*

Germany is a more convenient forum than the United States. The logistics and costs of travel to the United States is burdensome for the Foreign Defendants. Rick Decl. at ¶¶ 30-32; Kleeman Decl. at ¶¶ 18-20; Huch Decl. at ¶¶ 19-20; Gayduchenko Decl. at ¶¶ 18-19; Frisch Decl. at ¶¶ 19-21; Schlender Decl. at ¶¶ 18-19; Bugla Decl. at ¶¶ 20-21; Richts Decl. at ¶¶ 18-21; Claβen Decl. at ¶¶ 19-21; Löffler Decl. at ¶¶ 19-20. Defendants Alexander Kleeman, Leon Frisch, and Marc-Alexander Richts are students. Kleeman Decl. at ¶ 20; Frisch Decl. at ¶ 21; Richts Decl. at ¶ 21. Defendant Marc-Alexander Richts is a solo caretaker for a family member. Richts Decl. at ¶ 19. Defendant Pascal Claβen has a debilitating medical condition which creates greater risk to his health at high altitudes. Claβen Decl. at ¶ 19. Moreover, Germany is a convenient forum for Plaintiff, as evidenced by its offices and the fact that it has litigated several lawsuits there – including the pending lawsuit related to the instant case.

iii)   *Access to Evidence*

Most of the items Plaintiff is likely to ask for in discovery, such as documents and information on electronic devices are located in Germany including all of EngineOwnings corporate documents. Rick Decl. at ¶¶ 12, 28, 34; Kleeman Decl. at ¶¶ 7, 22; Huch Decl. at ¶¶ 8, 22; Frisch Decl. at ¶¶ 7, 23; Schlender Decl. at ¶¶ 8, 21; Bugla Decl. at ¶¶ 8, 23; Richts Decl. at ¶¶ 7, 22; Claβen Decl. at ¶¶ 8, 23; Löffler Decl. at ¶¶ 8, 22.

//

- 35 -

iv)   *Whether Unwilling Witnesses Can Be Compelled to Testify*

It is unclear what witnesses the Plaintiff intends to bring.  However, given its focus on the Foreign Defendants, the heart of this litigation is the alleged conduct of the Foreign Defendants in Germany.  Therefore, it stands to reason the major witnesses, both party and non-party, would reside in Germany.  It would be very difficult, if not practically impossible, to compel foreign non-party witnesses to testify here in United States.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) (stating "because the district court cannot compel production of much of the New Zealand evidence, whereas the parties control, and therefore can bring, all the United States evidence to New Zealand, the private interest factors weigh in favor of dismissal" and finding that the district court did not abuse its discretion in granting the motion to dismiss on the basis of *forum non conveniens*.); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947) ("To fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.). A German court is much better situated to compel testimony from non-party German witnesses if necessary.  (Fedtke Decl. at Ex. C (Expert Report) at p. 12).

v)   *The Costs of Bringing Witnesses to Trial*

It will be very expensive for the Foreign Defendants to travel to the United States for trial.  At about $3,500 in estimated travel, food and lodging expenses per Foreign Defendant, it would likely cost in excess of $35,000 total solely for the Foreign Defendants to travel to the United States for trial.  Rick Decl. at ¶ 31; Kleeman Decl. at ¶ 19; Huch Decl. at ¶ 20; Gayduchenko Decl. at ¶ 19; Frisch Decl. at ¶ 20; Schlender Decl. at ¶ 19; Bugla Decl. at ¶ 21; Richts Decl. at ¶¶ 19-20; Claßen Decl. at ¶ 21; Löffler Decl. at ¶ 20.The longer such trial lasts, the more expensive it would be.  On the other hand, it would not be difficult for Plaintiff – which has offices in Germany – to use its German employees to oversee the German Lawsuit –

1   eliminating much of the need for travel from the United States.   Indeed, presumably

2   Plaintiff has already undertaken any necessary travel to Germany in light of the

3   advanced state of the German Lawsuit.  Kompa Decl. at ¶ 9.

4                    vi)   *The Enforceability of Judgement*

5           First of all, the Foreign Defendants have no assets in the United States so

6   enforcement of a US judgment against them in the US is essentially meaningless

7   from a damages perspective.  Rick Decl. at ¶¶ 17-18; Kleeman Decl. at ¶¶ 12-13;

8   Huch Decl. at ¶¶ 13, 15; Gayduchenko Decl. at ¶¶ 13-14; Frisch Decl. at ¶¶ 14-15;

9   Schlender Decl. at ¶¶ 13-14; Bugla Decl. at ¶¶ 13-14; Richts Decl. at ¶¶ 13-14;

10  Claβen Decl. at ¶¶ 13-14; Löffler Decl. at ¶¶ 13-14.   Although the results of US

11  litigation may be enforced in Germany and vice versa in certain circumstances,  there

12  is no doubt it would be easier for Plaintiff to enforce a German judgment (as opposed

13  to a US judgment) against the Foreign Defendants in Germany, where 10 of 11 of

14  them are citizens, than it would be in the United States. (Fedtke Decl. at Ex. C (Expert

15  Report) at pp. 13-14).

16                   vii)   *Other Practical Problems Making the Case Easy,*

17                          *Expeditious and Inexpensive*

18          It will be more expensive for all parties to try this case in the United States

19  than it would be to try it in Germany.  First, of all, trying it in the United States un-

20  necessarily duplicates and multiples an action that has already been initiated in

21  Germany. Whereas the German lawsuit may be close to conclusion, this lawsuit has

22  just begun.   Second of all, German attorneys are no doubt less expensive than US

23  attorneys given the fact the German attorney rates are generally set by the amount in

24  controversy.   "The expected legal costs for handling litigation and appearance in

25  court in a case with a total claims value of €500,000 is approximately $10,000 plus

26  tax. To this amount will be added a percentage of the costs generated by any pre-trial

27  activity of the defendant's legal counsel (e.g. general consultation of the client).

28  These fees are also determined by statute."  (Fedtke Decl. at Ex. C (Expert Report)

- 37 -

at p. 12.)  There is no good reason to multiply the costs of this dispute by adding US Courts.

### b.    The Public Interest

The public interest factors include: "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d 1137, 1147 (9th Cir. 2001).

### i)    The Local Interest

With respect to local interest, all eleven Foreign Defendants are foreign citizens and Plaintiff has already initiated an action in Germany.  Moreover, the Foreign Defendants are not even personally accused of committing any acts within the United States. (*See generally*, FAC) None of the Foreign Defendants are US citizens or residents. Rick Decl. at ¶¶ 15-16; Kleeman Decl. at ¶¶ 10-11; Huch Decl. at ¶¶ 11-12; Gayduchenko Decl. at ¶¶ 10-11; Frisch Decl. at ¶¶ 10-11; Schlender Decl. at ¶¶ 11-12; Bugla Decl. at ¶¶ 11-12; Richts Decl. at ¶¶ 10-11; Claβen Decl. at ¶¶ 11-12; Löffler Decl. at ¶¶ 11-12.  It strains credulity to believe that California has a strong interest in allowing an international video game company, who has already initiated a lawsuit in Germany, to sue eleven foreign defendants (including ten Germans) in its over-burdened court system.

### ii)    Familiarity With Governing Law

With respect to the familiarity with governing law, the District Court is well versed in the types of torts Plaintiff has alleged here.  Of course, the courts in Germany are just as equipped to handle the German equivalent of such claims.

### iii)    Burden on Local Courts and Juries

With respect to the burden on local courts and juries, because of the lack of local interest, "[t]he burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009).

*iv)*     *Court Congestion*

With respect to court congestion, Central District of California is very congested. *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1202 (C.D. Cal. 2004) ("The Central District of California…is one of the busiest districts in the country.").

*v)*     *The Costs of Resolving a Dispute Unrelated to this Forum*

The travel and legal costs alone make resolution of this dispute in the Central District an expensive proposition.  *See generally*, cost discussion *infra* at p. 27-29. It is indisputably more expensive for the US court to try the case than the German court.  (Fedtke Decl. at Ex. C (Expert Report) at pp. 12-13).

**C.     This Case Should be Dismissed Under International Comity**

In addition to lack of personal jurisdiction and *forum non conveniens*, **this case should be dismissed in favor of the German Lawsuit that Plaintiff voluntarily initiated approximately three (3) years ago.**  Because the events underlying Plaintiff's claims occurred in Germany and were alleged to have been conducted by a German company and primarily by German citizens, and because Germany is an adequate alternative forum, the Court should dismiss this action on international comity grounds.

**1.     *The United States Has Little Interest in This Dispute***

The United States, and California, have little interest in this dispute.  First, all of the conduct relevant to this litigation as it pertains to the Foreign Defendants occurred in Germany: (1) the purported coding of the Cheating Software and Spoofer; (2) the purported maintenance of the Cheating Software and user forums; and (3) Plaintiff's initiation of the prior lawsuit against Valentin Rick and EngineOwning in Germany.  Given the location of the chief defendants in the action, and the ongoing German Lawsuit that Plaintiff voluntarily filed in Germany, the German government has a strong interest in adjudicating this dispute.

Second, with respect to the nationalities of the parties in this litigation, most ten of the eleven Foreign Defendants are German, whereas Plaintiff is a subsidiary of a multi-billionaire dollar company with offices in Germany.  (RJN at ¶¶ 14-16, 21).  The core allegations of the Complaint deal with the creation and distribution of an alleged Cheating Software by a German company.  (FAC at ¶¶ 2-4).

### 2.    *The Interests of the Germany Are Great*

The interests of the German government in addressing the purported wrongs committed by its own citizens in its own territory are great. This is especially the case here, where a multinational corporation like Plaintiff has already previously initiated the litigation.  Here, Plaintiff effectively asks this Court to allow it to multiply the litigation by giving Plaintiff a second and third bite at the apple while the German Lawsuit is still proceeding.  This is a direct affront to Germany's enforcement of its own laws with respect to conduct within its own borders.

### 3.    *German Courts Are an Adequate Alternative Forum*

The best proof that German courts are an adequate alternative forum is Plaintiff's own conduct in initiating the German Lawsuit against EngineOwning and Valentin Rick.  Moreover, this is not the only time Plaintiff has found recourse in the German legal system.   Indeed, Plaintiff and/or is corporate affiliates have filed lawsuits in Germany on at least two other occasions.  (Fedtke Decl. at Ex. C (Expert Report) at p. 3).  Moreover, Plaintiff routinely utilizes the German legal system to protect its interests, having filed for trademark protection in the EU on numerous occasions.  (RJN at ¶¶ 4-12).

Given its own history with utilizing the German legal system for its own benefit, Plaintiff cannot plausibly allege that German courts are not competent to hear these disputes or that they are not acting within the bounds of "civilized jurisprudence."  It is not enough for Plaintiff to show that American courts follow different procedural rules or are slower at resolving claims as American courts. *See Mujica*, 771 F.3d at 608 (regarding the adequacy of foreign forums noting that most

courts require showing that judgment in foreign court is "significantly inadequate");

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424

(2d Cir. 2005) (deferring to Mexican bankruptcy proceedings even though there may

be a 6-year delay in resolving the litigation).  Lack pre-trial discovery or jury trial are

similarly unavailing reasons.  *Lockman Found. v. Evangelical All. Mission*, 930 F.2d

764, 768 (9th Cir. 1991) (lack of pre-trial discovery and jury trial does not render a

forum inadequate).  Instead, "once a defendant shows that a foreign forum would

have jurisdiction and would provide a remedy for a meritorious claim, the party

'asserting inadequacy or delay must make a powerful showing." *Mujica*, 771 F.3d

at 612.  Here, Foreign Defendants are subject to the jurisdiction of German courts,

and indeed, have two of them have already appeared to defend Plaintiff's allegations

in Germany.  Moreover, Plaintiff's status as a U.S. corporation did not prevent it from

appearing in German court and presenting its cases. Indeed – Plaintiff itself has

continuous and systematic contacts with Germany through its business and legal

dealings there.  In short, Plaintiff's apparent dissatisfaction with how its German

Lawsuit is going is not a sufficient reason to find that German courts are not an

adequate alternative forum and Plaintiff's claims should be dismissed on

international comity grounds.

 With respect to deference to prior German lawsuits in particular, several

district and circuit courts have dismissed cases on the grounds of judicial comity

when there have already been similar claims litigated in Germany. *E.g.*, *von Spee v.*

*von Spee*, 514 F. Supp. 2d 302, 318 (D. Conn. 2007) ("Plaintiffs have been litigating

in Germany for at least the past three years and have familiarity with and ties to the

country which exceed the burden upon defendants to now litigate issues in

Connecticut that they have been litigating in Germany.").  *Moyal v. Munsterland*

*Gruppe GmbH & Co. KG*, 539 F. Supp. 3d 305, 309 (S.D.N.Y. 2021) (dismissing US

based bankruptcy case in favor of German courts); *Turner Ent. Co. v. Degeto Film*

*GmbH*, 25 F.3d 1512, 1523 (11th Cir. 1994) (dismissing US action in deference to

- 41 -

German where case was already rendered on the merits).

### D. Rule 12(b)(6) Failure to State a Claim

#### 1. *All Counts Should Be Dismissed Due to Failure to State a Claim Given the Complete Lack of Differentiation Between Defendants for any Alleged Conduct Giving Rise to Liability Under Any Alleged Cause of Action*

A12(b)(6) motion is proper where the facts as alleged in the pleading fail to state a claim. Fed. R. Civ. P. 12(b)(6). Rule 8 requires a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *818 Media Prods., LLC v. Wells Fargo Bank, N.A.*, No. CV16-9427 PSG (PLAX), 2017 WL 3049565, at *4 (C.D. Cal. Feb. 9, 2017) ("By grouping Wells Fargo Bank and Wells Fargo Advisors together, the Complaint violates the threshold pleading requirements of Rule 8 because Defendants lack notice as to the factual and legal basis for the claims against them."). One of the most striking aspects of the FAC is its violation of this Rule by its complete and total lack of differentiation between Defendants when it comes to Plaintiff's allegations of the conduct of the Defendants. *Beluca Ventures LLC v. Aktiebolag*, No. 21-CV-06992-WHO, 2022 WL 3579879, at *6 (N.D. Cal. Aug. 19, 2022) ("As an initial matter, Beluca has painted its allegations with a broad brush. Almost all of the allegations in the Complaint are made against "Einride," which is defined to include Einride AB, Einride US, and Does 1–10. As a result, the Complaint improperly engages in undifferentiated pleading that fails to make clear what allegations are being made against Einride AB versus Einride US."); *Jackson v. Ramos*, No. CV 19-2288-JFW(E), 2019 WL 9270452, at *3 (C.D. Cal. Apr. 9, 2019); *Rust v. Borders*, No. ED CV 19-0050-PA(E), 2019 WL 12375434, at *5 (C.D. Cal. Mar. 17, 2019) ("Plaintiff's use of the terms "Defendant" or "Defendants" without identifying the specific Defendant or Defendants involved in the alleged wrongdoing is improper."). A review of the 48-page FAC shows that the Plaintiff fails to aver any particular conduct to any particular

- 42 -

defendant whatsoever. (*See generally*, FAC.)  Instead, the FAC summarily describes a general hypothesized role for each named Defendant in paragraphs 17 and 45, but when it comes to any particular act, the Plaintiff only ever refers to "Defendants" plural – despite the fact Plaintiff has named more than 20 Defendants and left space for 50 more Doe Defendants. (*See generally*, *id*.)

Many district courts within the Ninth Circuit have ruled that plaintiffs may not simply lump defendants together without specifying who is alleged to have committed the specific wrongful activity, notwithstanding plaintiff's attempts to lump all defendants together with a catchall agency theory.   In dismissing interference with contractual relations, a Southern District court ruled that such "group" pleading is impermissible. *Aaron v. Aguirre*, No. 06-CV-1451-H POR, 2007 WL 959083, at *16 (S.D. Cal. Mar. 8, 2007) ("…Plaintiffs improperly group all Defendants together in their interference with contractual relations claim. Accordingly, Plaintiffs have failed to plead sufficiently the elements of a claim for interference with contractual relations against Defendants.").   In dismissing Telephone Consumer Protection Act ("TCPA") claims, a Central District court ruled: "Because of Plaintiff's failure to distinguish between the four Defendants (two of whom are completely unrelated to the IBD Defendants), it is impossible to tell which Defendant did what allegedly wrongful conduct underlying Plaintiff's TCPA claim." *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV182134MWFJPRX, 2018 WL 6787049, at *10 (C.D. Cal. Dec. 21, 2018);  s*ee also Hamilton v. El Moussa*, No. CV 19-8182-CJC(AFMX), 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) ("When a plaintiff asserts a TCPA claim against multiple defendants, he must differentiate which allegations apply to which defendant—it is not enough to say that a group of defendants violated the statute.").   In a strict liability case, a Northern District Court made a similar ruling. *Kuhn v. L'Oreal USA S/D, Inc.*, No. 19-CV-04021-HSG, 2020 WL 1307004, at *3 (N.D. Cal. Mar. 19, 2020) "As an initial matter, the SAC is insufficient because Plaintiff fails to distinguish among the Defendants . . .

- 43 -

Defendants, and the Court, should not be required to guess which allegations pertain to which Defendant." *Id*. Here, the same logic applies. The Plaintiff's intentionally vague pleading violates Rule 8 and therefore all claims should be dismissed.

**2.** ***Counts II, III, VI and VII Should be Dismissed Due to Plaintiff's Failure to State Claim***

The Plaintiff also fails to state a claim on the specified counts below to defects particular to those causes of action.

**a.** **The RICO Counts VI and VII Fail to State a Claim**

Plaintiff's threadbare pleading does not satisfy the heightened requirements for pleading RICO actions on the basis of fraud. The Ninth Circuit has long held that plaintiffs must state with particularity the time, place and manner of each act of fraud, as well as the role of each defendant in such acts. *Trudel v. Stoltz*, 67 F.3d 309 (9th Cir. 1995). In dismissing a RICO cause of action, the Ninth Circuit held:

> This court has interpreted Rule 9(b) to require that a plaintiff "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods. Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir.1988) (quoting *Schreiber*, 806 F.2d at 1401), cert. denied, 493 U.S. 858 (1989); *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). The same pleading requirements apply to RICO claims based on predicate acts of mail fraud. *See Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991) (plaintiff must state, time, place and manner of each act of fraud, plus the role of each defendant in each scheme), cert. denied, 502 U.S. 1094 (1992). Moreover, in mail fraud cases, the plaintiff must plead with specificity both the use of the mails and the fraudulent conduct. *Id*.

*Trudel v. Stoltz*, 67 F.3d 309 (9th Cir. 1995). Plaintiff's pleading does not meet this standard. There is no allegation pleading the time, time, place and manner of each act of fraud – let alone the role of each defendant. *Id*. at 309; (generally FAC at ¶¶157-174).

First, the FAC does not distinguish between any of the Defendants with respect to their alleged acts. (*See generally*, FAC ¶¶ 142-183.) Indeed, the FAC does not

- 44 -

plead any specific act to any specific Defendant whatsoever. (*Id*.). This is not permissible. *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ("Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant."). Instead, Plaintiff has named more than 20 defendants and simply alleges all "Defendants" engaged in a pattern of racketeering activity. Nowhere in the more than 40 paragraphs that Plaintiff dedicates to its RICO claims does it specify any particular act performed by any particular defendant. Instead, it summarily alleges all acts were performed by all Defendants even as it apparently distinguishes between "seller" and "reseller" Defendants without alleging which Defendants are which. (FAC at ¶ 154 ("Defendants work together to continuously sell Cheating Software licenses directly, as well as recruit reseller Defendants. A network of seller and reseller Defendants have perpetuated the same steps…").

Second, there are no specific dates pled. (FAC at ¶¶157-174.) Indeed, in the entirety of the pleading regarding alleged RICO activity there is not a single specific date pled for any act whatsoever. *Id*.

Third, reliance is an essential element of fraud and Plaintiff has failed to plead that Plaintiff relied upon the Foreign Defendants alleged misrepresentations. If reliance is not pled, the RICO count fails and must be dismissed. *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1038 (C.D. Cal. 2011) ("Having failed to allege reliance in any form, these RICO claims are insufficiently pleaded.").

Fourth, Plaintiff's RICO civil conspiracy cause of action necessarily fails if the underlying RICO cause of action fails. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("In particular, the district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree."); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1285 (S.D. Fla. 2003) ("It is well established that if a plaintiff fails to state a claim of a primary RICO

violation, then the plaintiff's civil conspiracy claims necessarily fails."); *Huynh v. Walmart, Inc.*, No. 22-CV-00142-JSC, 2022 WL 3109562, at *11 (N.D. Cal. Aug. 4, 2022) ("Because the underlying RICO claim fails, the RICO conspiracy claim also fails."). This is because RICO civil conspiracy is not a separate cause of action, but a liability spreading tool. *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1285 (S.D. Fla. 2003).

>          **b.**       **The Computer Fraud and Abuse (Count III) Fails to State a Claim**

Here the cause of action against the Foreign Defendants is for "aiding and abetting" others who are accessing Plaintiff's game servers. (FAC at ¶ 123 ("…Defendants have knowingly *aided and abetted*, conspired with, or otherwise caused players of the COD Games to intentionally access the Game Servers without Activision's authorization."). However, the CFAA does not specifically provide for liability for such "encouragement" of others, only for direct violations. *See generally*, CFAA. Interestingly, although the CFAA does allow for a cause of action against people who conspire to violate the CFAA – no where does it mention secondary liability for "aiding and abetting" a violation. 18 U.S.C.A. § 1030 (West) ("(b) Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section."). As one district court explained:

> As the Supreme Court explained in *Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, if Congress intended to impose secondary liability by targeting aiding and abetting action, it certainly knows how to do it. 511 U.S. 164, 177 (1994) ("If, as respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text."). *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir.2006).
>
> Consequently, courts may not read a cause of action for secondary liability into the language of a federal statute that is silent on the issue because doing so would "extend liability beyond the scope of conduct prohibited by the statutory text." *Central Bank of Denver*, 511 U.S. at

177; see Freeman, 457 F.3d at 1006 ("When a statute is precise about who ... can be liable courts should not implicitly read secondary liability into the statute.") (internal quotation omitted). Because …[the]… statutory text does not provide for secondary liability, claims for aiding and abetting cannot stand.

*Grady v. F.D.I.C.*, No. CV-11-02060-PHX-JAT, 2014 WL 1364932, at *7 (D. Ariz. Mar. 26, 2014). In this instance, the statute allows for the direct violator to be sued, and possibly even for someone conspiring to violate the CFAA to be sued, but is silent as to someone who allegedly "aids and abets."[5] 18 U.S.C.A. § 1030 (West).

In other contexts, the Supreme Court has limited an expansive reading of liability for CFAA. See e.g., *Van Buren v. United States*, 210 L. Ed. 2d 26, 141 S. Ct. 1648, 1661 (2021) (refusing to expand CFAA liability to include people who simply violate terms of use). There is no indication that the Supreme Court would be open to expanding liability here to encompass aiding and abetting when the statute itself was silent.

### c.   The False Designation of Origin (Count II) Fails to State Claim

Although Plaintiff adequately pleads the general elements of the cause of action for false designation of origin on its face in isolation in Count II, in context of the FAC such pleading fails because it is contradicted on its face by the specific facts it pleads in its general allegations regarding the Defendants purported widespread promotion of "Cheating Software" and "EO Spoofer" on the Internet and social media (FAC at ¶¶ 86-90). Consumer confusion is an essential element of any False Designation of Origin claim. 15 U.S.C.A. § 1125(a)(1)(A) (West). The specific

---

[5] Moreover, aiding and abetting is different than conspiring and Congress knows how to expand such liability when it wants to. *See Voronin v. Garland*, No. 220CV07019ODWAGRX, 2022 WL 3101534, at *5 (C.D. Cal. Aug. 4, 2022) ("Applying this principle, the Court first observes that listing aiding, abetting, and assisting as three separate bases for inadmissibility indicates that Congress intended that the statute cover conduct broader than that which criminal law recognizes as "aiding and abetting." … That Congress also included "colluder" along with "conspirator" mirrors and confirms this analysis: to "collude" has a different meaning than to "conspire," and by employing both words in the statute, Congress expressed its intent to cover a wider range of conduct than "conspiracy" as that term is defined by criminal law.").

allegations Plaintiff does make contradict and negate its conclusory allegations regarding the same subject. *Goulatte v. CitiMortgage, Inc.*, No. EDCV12391PSGSPX, 2013 WL 12132060, at *3 (C.D. Cal. Feb. 27, 2013) ("In general, specific allegations control general allegations."); *Stowe v. Fritzie Hotels*, 44 Cal. 2d 416, 422 (1955) ("Where there is any inconsistency between the specific allegations upon which a conclusion must be based and the conclusion, the specific allegations control.").

Here, there are no allegations that such promotion tried to trick consumers into thinking the cheating software came from Plaintiff – only a generalized allegation of consumer confusion.  (FAC at ¶116)  However, the specific allegations Plaintiff makes are very nearly the opposite – ***that the Defendants are offering a product that tricks Plaintiff – not one that tricks consumers***.  (FAC at ¶ 88 (describing a Spoofer that hides the player from "anti-cheat" measures taken by Plaintiff).  It beggars belief that any consumer allegedly purchasing a "Cheating Software" or "EO Spoofer" for a video game is confused into thinking that such "Cheating Software" or "Spoofer" is authorized by the video game company it is purportedly cheating or hiding from. There can be no "consumer confusion" as to the source or origin of such goods in this circumstance.  Although, there are potentially other related causes of action for such alleged conduct if pled properly – tarnishment comes to mind – Plaintiff did not plead those here.  *See* 15 U.S.C.A. § 1125 (c) (West) ("Subject to the principles of equity, the owner of a famous mark … shall be entitled to an injunction against another person who… is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.")

**E.    All Counts Should Be Dismissed Due to the Extraterritoriality Principle**

US laws are presumptively meant to solely apply within the confines of the United States. *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (It is

- 48 -

a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'") (*quoting Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949). Absent explicit Congressional intent, federal law ends at the border. *EEOC*, 499 U.S. at 248 ("[U]nless there is the affirmative intention of the Congress clearly expressed" to give a statute extraterritorial effect, "we must presume it is primarily concerned with domestic conditions.") (internal quotation marks omitted).  Moreover, "[t]he canon or presumption applies regardless of whether there is a risk of conflict between the American statute and a foreign law, *see Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173–174 (1993). When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).   None of the federal statues upon which Plaintiff intends to hold the Foreign Defendants liable has any clear indication that they were meant to apply to a foreign defendant's extraterritorial conduct in private rights of action.  *See generally*, DMCA (17 U.S.C. §1201(a)(2)), False Designation of Origin (15 U.S.C. § 1125(a)), Computer Fraud and Abuse Act (18 U.S.C. § 1030); Civil Rico (18 U.S.C. § 1962(C)); Civil Rico Conspiracy (18 U.S.C. § 1962(D)).

    With respect to the federal causes of action here, the application of this canon of construction requires dismissal of Plaintiff's federal causes of action against the Foreign Defendants for their foreign conduct. Here the Foreign Defendants are not accused of any conduct within the United States – instead their conduct is presumptively outside of the United States.  (*See generally*, FAC) Indeed, the only times the FAC mentions the location of the Foreign Defendants is when it describes their alleged general roles and locations.  At no time does the Plaintiff allege that any of the Foreign Defendants were in the United States – let alone California.  (*See generally*, FAC.)  Although Plaintiff claims that it suffered injury in the United States, that allegation is belied by the fact that it has offices in Germany.  Germany is the true location of its injury. Indeed, presumptively that is why Plaintiff instituted

the German Lawsuit against EngineOwning and Valentin Rick there in the first place.

Likewise, this same canon of construction applies to California law.

Under California law, a presumption exists against the extraterritorial application state law. In *Sullivan v. Oracle Corp*., 51 Cal.4th 1191, 127 Cal.Rptr.3d 185, 254 P.3d 237 (2011), the California Supreme Court stated: However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be "operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." (*quoting Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059, 80 Cal. Rptr. 2d 828, 968 P.2d 539 (1999)).

*O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014).  When analyzing the extraterritoriality issue as applied specifically to California actions for unfair competition, courts have dismissed such claims.  As *O'Connor v. Uber Techs., Inc.* explained, "[t]he Court reaches a similar result with regards to Plaintiffs' UCL claim . . . . '[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force.'" *Id*. At 1007.

Moreover, even common law causes of action – such as intentional interference with contractual relations - are subject to similar limiting principles. "Under California law, the relevant inquiry for whether state law should be applied extraterritorially is not the location of employment or where the contract was formed, but rather whether "the conduct which gives rise to liability ... occurs in California." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal.4th 1036, 1059, 80 Cal. Rptr. 2d 828, 968 P.2d 539 (1999) (emphasis added).  *Russo v. APL Marine Servs.*, Ltd., 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017).   The conduct of the Foreign Defendants in this case occurred entirely overseas. (*See generally*, Declarations of Leonard Bugla, Leon Frisch, Ignacio Gay Duchenko, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet

Huch, Pascal Claβen, and Remo Löffler) Moreover, the true site of Plaintiff's injury is Germany, where it maintains a studio, manufacturing and distribution centers – and where it initiated its first lawsuit regarding the underlying conduct at issue here - not California.   Given this, the Court should decline to extend the territorial application of California law to Foreign Defendants whose alleged conduct occurred entirely abroad.

**F.     Plaintiff's FAC Should be Dismissed with Prejudice without Leave to Amend**

Notwithstanding the general practice of allowing liberal amendment to deficient pleadings, in this case the Court should dismiss the FAC without leave to amend.  First, to the extent the court dismisses the FAC upon the grounds of *forum non conveniens* and/or international comity, such grounds are not subject to cure through further pleadings. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (A court need not grant leave to amend a complaint if amendment would be futile); *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 766 (9th Cir. 1991) (granting leave to amend would have been futile where case dismissed in favor of Japan on *forum non conveniens* grounds); *Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1084 (D. Nev. 2020) ("The court declines to grant Lawson leave to amend because the court's abstention and waiver findings cannot be cured; therefore, such amendment would be futile.").

Second, to the extent that it is conceivable for Plaintiff to cure the FAC, particularly in light of the ongoing German Lawsuit in which it initiated, allowing the Plaintiff yet another bite at the apple is unwarranted.  Plaintiff already used its one free shot to amend the complaint in the US.  *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.); *Ingram v. City of San Francisco*, No. C12-3038 JSC, 2012 WL 3257805, at *3 (N.D. Cal. Aug. 8, 2012) ("further amendment can be denied as futile,

particularly when a plaintiff has already amended the complaint once.") (citation omitted).

Moreover, between the German lawsuit, the original Complaint and the FAC, Plaintiff has already had three (3) bites at the apple. Under the circumstances, it is not entitled to yet another "do-over." *See, e.g., Cooper v. City of Hesperia*, No. EDCV-15-1665-MWF-SP, 2016 WL 11741134, at *2 (C.D. Cal. July 29, 2016) ("Given Plaintiff's undue delay, the Court's warning, and multiple prior amendments, Plaintiff's request to file a Third Amended Complaint is improper even under the liberal standards of Rule 15.")

## V.   CONCLUSION

For the reasons stated above, Foreign Defendants hereby respectfully request that the Motion be granted and that Plaintiff's FAC be dismissed without leave to amend.

DATED:  January 13, 2023              Respectfully submitted,

                                     ELLIOT GIPSON PC
                                     Elliot B. Gipson
                                     Brianna N. Logan

                                     By_____/s/ Elliot B. Gipson_____
                                            Elliot B. Gipson

                                     Attorneys for Defendants EngineOwning UG, Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio Gay Duchenko, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Classen, and Remo Loffler

- 52 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned, counsel of record for the Foreign Defendants, certify that this Memorandum of Points and Authorities contains 13,949 words, which complies with the word limit established by stipulated court order for this Motion.

DATED:  January 13, 2023          ELLIOT GIPSON PC
                                  Elliot B. Gipson
                                  Brianna N. Logan

                                  By_____/s/ Elliot B. Gipson_____
                                          Elliot B. Gipson

                                  Attorneys for Defendants EngineOwning UG, Valentin Rick, Leonard Bugla, Leon Frisch, Ignacio Gay Duchenko, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Classen, and Remo Loffler