UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ENGINEOWNING UG, et al.,<br><br>　　　　　Defendants. | CASE NO. 2:22-cv-00051-MWF (JCx)<br><br>**ORDER GRANTING JOINT STIPULATION FOR ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION**<br><br>Complaint Filed: 1/4/2022<br>Amended Complaint Filed: 9/16/2022 |

Pursuant to the Parties' Stipulation dated February 13, 2023, the Court hereby orders that judgment is entered against Defendant Manuel Santiago ("Defendant").

IT IS HEREBY FOUND, ORDERED, AND ADJUDGED as follows:

1. Judgment shall be entered against Defendant in the amount of one million dollars ($1,000,000), due and payable solely pursuant to the terms set forth in the Parties' Confidential Settlement Agreement and Release.

2. Defendant, all persons acting under Defendant's direction or control (including but not limited to Defendant's agents, representatives, and employees), and those persons or companies in active concert or participation with Defendant who receive actual notice of this Order by personal service or otherwise, shall immediately and permanently cease and desist from any of the following:

   (a) taking any steps (directly or indirectly through third parties) to develop, program, code, create, distribute, update, support, advertise, market, resell or otherwise make available software designed to exploit or to enable members of the public to exploit, cheat, manipulate, gain unfair advantages, violate End-User License Agreements or Terms of Service, infringe intellectual property, or circumvent technological measures with respect to (i) any of the *Call of Duty* series of video games or (ii) any games owned, published, distributed or operated by Activision or its parents, subsidiaries, or affiliates (including Blizzard Entertainment, Inc.), including but not limited to *Overwatch 2, World of Warcraft,* and *Diablo* (collectively, the "Activision Blizzard Games").  The software referred to above is hereinafter referred to as the "Cheating Software."  The Cheating Software shall include, but is not limited to the following software programs: (i) "EngineOwning for Call of Duty: MW and Warzone Caldera (2019)," (ii) "EngineOwning for Call of Duty: MW2 and Warzone 2.0 (2022)," (iii) "EngineOwning for Call of Duty: Warzone Caldera Lite," (iv) "EngineOwning for Overwatch," (v) "EngineOwning for Call of Duty: Vanguard," (vi)

15167083.1

"EngineOwning for Call of Duty: Black Ops 3," (vii) "EngineOwning for Call of Duty: Black Ops 2," (viii) "EngineOwning for Call of Duty: Black Ops," (ix) "EngineOwning for Call of Duty: WW2," and (x) "EngineOwning for Call of Duty: Modern Warfare 3."

      (b)    taking any steps (directly or indirectly through third parties) to develop, program, code, create, distribute, update, support, advertise, market, resell or otherwise make available software designed to spoof hardware IDs or computer signatures for the purpose of avoiding, circumventing, or bypassing hardware bans in connection with the *Call of Duty* series of video games or any games owned, published, distributed or operated by Activision or its parents, subsidiaries, or affiliates (including Blizzard Entertainment, Inc.), including but not limited to *Overwatch 2, World of Warcraft,* and *Diablo* (the "Activision Blizzard Games"). The software referred to in this paragraph shall hereinafter be referred to as the "Spoofing Software," and shall include, but is not limited to the software program titled "EngineOwning Spoofer."

      (c)    promoting, advertising, encouraging or inducing others to purchase or use (including via any social media account, website, or video-sharing account) the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard Games;

      (d)    selling, reselling, or processing payments for the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard Games;

      (e)    assisting in any way with the development of the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard Games;

      (f)    sharing, copying, transferring, or distributing the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard Games;

15167083.1

      (g)    publishing or distributing any source code or instructional material for the creation of the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard Games;

      (h)    operating, assisting or linking to any website designed to provide information to assist others in accessing, developing or obtaining the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard Games;

      (i)    investing or holding any financial interest in any enterprise which Defendant knows or has reason to know is now, or intends in the future to be, engaged in any of the foregoing activities prohibited by this Judgment and Permanent Injunction, (including the development, sale, and distribution of any Cheating Software or Spoofing Software), including but not limited to the enterprise known as "EngineOwning."

      (j)    reverse engineering, decompiling, packet editing, or otherwise manipulating without authorization, any of the Activision Blizzard Games or providing assistance to any person or entity engaged in such activities.

3.    Defendant shall take all necessary steps to disable, remove, or otherwise shut down any social network accounts under his control dedicated to distribution or promotion of the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard Games, and shall take all necessary steps to remove any information on any non-dedicated (*e.g.*, personal) social network accounts under his control used to distribute or promote any of the foregoing.

4.    Defendant is ordered to provide and transfer to Activision all source code related to the Cheating Software, the Spoofing Software, or any other software designed to exploit or enable the exploitation of the Activision Blizzard

4

15167083.1

Games, and to destroy any copies of such source code in his possession, custody or control.

5. Any company or entity that Defendant controls in the future shall also comply with the provisions of this Judgment and Permanent Injunction.

6. The Parties irrevocably and fully waive notice of entry of this Judgment and Permanent Injunction and notice and service of the entered Judgment and Permanent Injunction and understand, confirm and agree that violation of the Judgment and Permanent Injunction will expose Defendant to all penalties provided by law, including contempt of Court.

7. The Parties irrevocably and fully waive any and all rights to appeal this Judgment and Permanent Injunction, to have it vacated or set aside, to seek or obtain a new trial thereon or otherwise to attack in any way, directly or collaterally, its validity or enforceability.

8. Nothing contained in this Judgment and Permanent Injunction shall limit the right of the Parties to seek relief including, without limitation, damages for any and all infringements of any Intellectual Property rights or for violation of the anti-circumvention provisions of the DMCA occurring after the date of this Judgment and Permanent Injunction.

9. The Court shall retain jurisdiction of this action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this Judgment and Permanent Injunction. The Parties consent to the personal jurisdiction of the United States District Court for the Central District of California for purposes of enforcing the Judgment and Permanent Injunction.

///

///

///

///

15167083.1

10. The Court finds there is no just reason for delay in entering this Judgment and Permanent Injunction and, pursuant to Federal Rule of Civil Procedure 54, the Court directs immediate entry of this Judgment and Permanent Injunction against Defendants.

Dated: February 15, 2023

_____
MICHAEL W. FITZGERALD
United States District Judge

15167083.1