1   ELLIOT GIPSON PC
    ELLIOT B. GIPSON (State Bar. No. 234020)
2   egipson@elliotgipson.com
    BRIANNA LOGAN (State Bar No. 347947)
3   blogan@elliotgipson.com
    15260 Ventura Blvd., Ste. 835
4   Los Angeles, California 91403
    Telephone: 310.817.1268
5
    Attorneys for Defendants EngineOwning UG,
6   Valentin Rick, Leonard Bugla, Leon Frisch,
    Marc-Alexander Richts, Alexander Kleeman,
7   Leon Schlender, Bennet Huch, Pascal Classen,
    and Remo Loffler
8

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13   ACTIVISION PUBLISHING, INC., a          CASE NO. 2:22-CV-00051-MWF
     Delaware corporation,
14
                    Plaintiffs,
15                                           **REPLY BRIEF IN SUPPORT OF**
         vs.                                 **FOREIGN DEFENDANTS'**
16                                           **MOTION TO DISMISS**
     ENGINEOWNING UG, a German
17   corporation, CMM HOLDINGS S.A., a       Judge:  Hon. Michael W. Fitzgerald
     German corporation, GARNATZ            Dept.: 5A
18   ENTERPRISE LTD., a Belize
     corporation, VALENTIN RICK, an
19   individual, LEONA RD BUGLA, an          Complaint Filed: January 4, 2022
     individual, LEON FRISCH, an            FAC Filed:  September 16, 2022
20   individual, IGNACIO
     GAYDUCHENKO, an individual,
21   MARC-ALEXANDER RICHTS, an              Hearing Date:  March 27, 2023
     individual, ALEXANDER KLEEMAN,        Hearing Time: 10:00 AM
22   an individual, LEON SCHLENDER, an
     individual, ERICK PFEIFER, an
23   individual, BENNET HUCH, an
     individual, ZAIN JONDAH, an
24   individual, RICKY SZAMEITAT, an
     individual, MARCEL BINDEMANN,
25   an individual, REMO LOFFLER, an
     individual, MARVIN BAOTIC
26   NEUMEYER, an individual,
     HENDRIK SMAAL, an individual,
27   CHARLIE WIEST, an individual,
     DENNIS REISSLEICH, an individual,
28   TYLER BYRD, an individual, SIMON

1  MASIAS, an individual, NICHOLAS
   JAMES BALDWIN, an individual,
2  ANTONIO MEDIAN, an individual,
   REMY CARTIGNY, an individual,
3  PASCAL CLASSEN, an individual,
   MANUEL T. SANTIAGO, an
4  individual, and KATERINA DISDLE,
   an individual, and DOES 1-50,
5  inclusive,

6
                    Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF ISO FOREIGN DEFENDANTS' MOTION TO DISMISS

<u>**Table of Contents**</u>

I.   **INTRODUCTION** ...................................................................................1

II.  **FACTS** ...................................................................................................2

   A.  **Plaintiff's Evidence**.............................................................................2

      1.   *Terzian Declaration* ...................................................................2

      2.   *Krueger Declaration* ..................................................................3

      3.   *Santiago Declaration* .................................................................4

      4.   *Gayduchenko Declaration* ..........................................................4

      5.   *Mayer Declaration* ....................................................................5

   B.  **Plaintiff's Purported Evidence Does Not Contradict Any of the Foreign Defendants' Declarations**...........................................................................6

   C.  **Plaintiff's Purported Evidence Does Not Contradict the Resources of Plaintiff or Its IP Protection in Germany** ..............................................7

   D.  **German Lawsuit** ....................................................................................8

   E.  **German Legal System** ..........................................................................8

III. **ARGUMENT** ..........................................................................................8

   A.  **There is No Jurisdiction Over the Foreign Defendants**.........................8

      1.   *There Is No General Jurisdiction* ................................................8

      2.   *There is No Specific Personal Jurisdiction Over the Foreign Defendants* 9

         i.   *Plaintiff Fails to Adequately Plead that Each Foreign Defendant Purposefully Directed His Activity at the Forum*............................12

         ii.  *Plaintiff Fails to Adequately Plead that Each Foreign Defendant Engaged in Intentional Acts* ......................................................13

         iii. *Plaintiff Fails to Adequately Plead that the Foreign Defendants Individually Targeted Plaintiff* ...................................................17

         iv.  *The Exercise of Jurisdiction Would Be Unreasonable*...............19

   B.  **This Case Should be Dismissed Under *Forum Non Conveniens***.............19

      1.   *Germany is an Adequate Alternative Forum* ...............................20

      2.   *The Private and Public Interest Favor Dismissal* .......................20

         i.   *The Private Interest* ..............................................................21

            a.   *The Residence of the Parties and Witnesses*......................21

            b.   *The Forum's Convenience* ..............................................22

            c.   *Access to Evidence*.........................................................22

     d.     *Whether Unwilling Witnesses Can Be Compelled to Testify* .....22

     e.     *The Costs of Bringing Witnesses to Trial* .................................22

     f.     *The Enforceability of Judgement* ..............................................23

     g.     *Other Practical Problems Making the Case Easy, Expeditious and Inexpensive* ...........................................................................23

     ii.     *The Public Interest* .....................................................................23

     a.     *The Local Interest* .......................................................................23

     b.     *Familiarity With Governing Law* ...............................................24

     c.     *Burden on Local Courts and Juries* ...........................................24

     d.     *Court Congestion* ........................................................................24

     e.     *The Costs of Resolving a Dispute Unrelated to this Forum* ......24

**C.**  **This Case Should be Dismissed Under International Comity** .................24

**D.**  **Plaintiff's Claims Should be Dismissed for Failure to State a Particularized Claim** ..............................................................................28

    **1.**  ***Activision makes pure legal conclusions as to any individual defendant.*** 28

**E.**  **The RICO Counts VI and VII Fail to State a Claim** ................................33

**F.**  **The False Designation of Origin (Count II) Fails to State a Claim** .........36

**G.**  **Failure to State a Claim under the CFAA** ..............................................37

**H.**  **The Computer Fraud and Abuse Act Does Not Apply Extraterritorially** 37

**I.**  **Plaintiff Does Not Allege Why the Lanham Act Should Apply Extraterritorially in this Case** ..............................................................38

**J.**  **Plaintiff Does Not Allege Why the RICO Claims Should Apply Extraterritorially** ..............................................................................39

**K.**  **Plaintiff's Copyright Claims Should Not Apply Extraterritorially** .......40

**L.** **Plaintiff's California Common Law Claims do not have Extraterritorial Application** ..............................................................................41

**M.** **Plaintiff is Not Entitled to Jurisdictional Discovery** ..............................42

**IV. CONCLUSION** ..............................................................................44

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Alan Neuman Prods., Inc. v. Albright*
  862 F.2d 1388 (9th Cir. 1988)..................................................................33

*Allstar Mktg. Grp., LLC v. Your Store Online*
  666 F. Supp. 2d 1109 (C.D. Cal. 2009) ..............................................13, 14

*Am. Nat'l Ins. Co. v. Akopyan*
  No. 2:20-CV-08502-RGK-E, 2021 WL 2792313 (C.D. Cal. Apr. 8, 2021) ........10

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ..............................................................................28

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ..............................................................................28

*Blizzard Ent., Inc. v. Bossland GmbH*
  No. SACV161236DOCKESX, 2017 WL 412262 (C.D. Cal. Jan. 25, 2017).......18

*Burri Law PA v. Skurla*
  35 F.4th 1207 (9th Cir. 2022)..............................................1, 12, 13, 16, 18

*Butcher's Union Local No. 498 v. SDC Inv.*, Inc.
  788 F.2d 535 (9th Cir. 1986)..................................................................42

*Calder v. Jones*
  465 U.S. 783 (1984) ..............................................................................13

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*
  No. 15-CV-02177-SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) .................41

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*
  No. 19-CV-05784-JST, 2021 WL 9763371 (N.D. Cal. Feb. 8, 2021)............30, 32

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*
  793 F. Supp. 2d 1138 (C.D. Cal. 2011) ....................................................31

*Charisma Brands, LLC v. AMDL Collections, Inc.*
  2019 WL 6331399 (C.D. Cal. Sept. 3, 2019)..........................................36, 37

*ConsumerDirect, Inc. v. Pentius, LLC*
  2022 WL 1585702 (C.D. Cal. Apr. 4, 2022) ........................................30, 31, 32

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*
  No. CV 20-4822-PLA, 2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) .................10

*Doe v. Geller*
  533 F. Supp. 2d 996 (N.D. Cal. 2008) ......................................................40

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*
  751 F.3d 990 (9th Cir. 2014)..................................................................28

*EEOC v. Arabian American Oil Co.*
   499 U.S. 244 (1991) .......................................................................................38

*Foley Bros., Inc. v. Filardo*
   336 U.S. 281 (1949) .......................................................................................38

*Healthcare Ally Mgmt. of California, LLC v. Med. Mut. of Ohio*
   2015 WL 12746216 (C.D. Cal. Jan. 26, 2015) ..............................................42

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*
   238 F. Supp. 2d 174 (D.D.C. 2002) ...................................................10, 26, 27, 36

*Imageline, Inc. v. Mintskovsky*
   2009 WL 10672787 (C.D. Cal. 2009) ........................................................13, 14

*In Re Amwest Ins. Grp., Inc.*
   285 B.R. 447 (Bankr, C.D. Cal 2002) ............................................................20

*In re Apple Inc. Device Performance Litig.*
   347 F. Supp. 3d 434 (N.D. Cal. 2018) ......................................................37, 38

*In re Packaged Seafood Prod. Antitrust Litig.*
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) ...........................................................30

*In re Sagent Tech., Inc., Derivative Litig.*
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...........................................................30

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.,*
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) ...........................................................35

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*
   940 F.2d 397 (9th Cir. 1991)...........................................................................34

*Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*
   896 F.3d 174 (2d Cir. 2018)............................................................................25

*Love v. Associated Newspapers, Ltd.*
   611 F.3d 601 (9th Cir. 2010)...........................................................................39

*Matrix Inc. v. Midthrust Imports Inc.*
   No. CV1301278GAFSPX, 2013 WL 12132031 (C.D. Cal. May 2, 2013) ..........43

*Mohebbi v. Khazen*
   50 F. Supp. 3d 1234 (N.D. Cal. 2014) .............................................................35

*Moore v. Kayport Package Exp., Inc.*
   885 F.2d 531 (9th Cir. 1989)......................................................................33, 34

*Morrison v. Nat'l Austrl. Bank Ltd.*
   561 U.S. 247 (2010) .......................................................................................41

*Mujica v. Airscan Inc.*
   771 F.3d 580 (9th Cir. 2014)...........................................................................26

*Norwest Mortg., Inc. v. Super. Ct.*
  72 Cal. App. 4th 214 (1999)...................................................................42

*Parity Networks, LLC v. Moxa Inc.*
  2020 WL 6064636 (C.D. Cal. Sept. 11, 2020)......................................29

*Pepper, N.A. v. Expandi, Inc.*
  2016 WL 1611039 (N.D. Cal. Apr. 22, 2016) ......................................15

*PLS-Pac. Laser Sys. v. TLZ Inc.*
  No. C-06-04585 RMW, 2007 WL 2022020 (N.D. Cal. July 9, 2007) ................32

*RJR Nabisco, Inc. v. Eur. Cmty.*
  579 U.S. 325 (2016)...................................................................39, 40

*Salcedo v. Nissan N. Am., Inc.*
  No. CV 22-4152-GW-MARX, 2023 WL 332761 (C.D. Cal. Jan. 18, 2023).......10

*Schwarzenegger v. Fred Martin Motor Co.*
  374 F.3d 797 (9th Cir. 2004)........................................................9, 12

*See Laub v. U.S. Dep't of Interior*
  342 F.3d 1080 (9th Cir. 2003)...........................................................43

*Sher v. Johnson*
  911 F.2d 1357 (9th Cir. 1990)......................................................15, 16

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*
  421 F. Supp. 2d 741 (S.D.N.Y. 2006).................................................19

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*
  24 F.3d 1088 (9th Cir. 1994).............................................................40

*Sullivan v. Oracle Corp.*
  51 Cal. 4th 1191 (2011)....................................................................41

*Tevra Brands LLC v. Bayer HealthCare LLC*
  No. 19-CV-04312-BLF, 2020 WL 8513082 (N.D. Cal. Sept. 15, 2020) .11, 12, 19

*Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*
  549 F.2d 597 (9th Cir. 1976)..............................................................38

*Trader Joe's Co. v. Hallatt*
  835 F.3d 960 (9th Cir. 2016)........................................................38, 39

*United States v. Bondarenko*
  No. 217CR306JCMVCF, 2019 WL 2450923 (D. Nev. June 12, 2019)..............40

*Vaughn v. Wells Fargo Bank, N.A.*
  No. CV1205453DMGJEMX, 2013 WL 12138850 (C.D. Cal. May 15, 2013)....35

*Ward v. Crow Vote LLC*
  No. SACV211110FWSDFMX, 2022 WL 17887530 (C.D. Cal. Oct. 7, 2022) ...35

- vii -

*Whitaker v. Tesla Motors, Inc.*
  985 F.3d 1173 (9th Cir. 2021)...................................................................28

*World Designs, Inc. v. DHR Co.*
  322 F. Supp.2d 1065 (C.D. Cal. 2004) ...............................................13, 14

*Yu v. Design Learned, Inc.*
  No. 15-CV-05345-LB, 2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ...............32

**Statutes**

15 U.S.C. § 1127...........................................................................................38

18 U.S.C. § 1029...........................................................................................40

18 U.S.C. § 1030...........................................................................................37

18 U.S.C. § 1343...........................................................................................40

**Rules**

Fed. R. Civ. P. 12.........................................................................................28

Fed. R. Civ. P. 8...........................................................................................28

REPLY BRIEF ISO FOREIGN DEFENDANTS' MOTION TO DISMISS

<u>**REPLY BRIEF**</u>

**I.    INTRODUCTION**

Plaintiff Activision Publishing, Inc. ("Plaintiff") drafted a poorly constructed complaint with several fatal defects. It makes conclusory and defective allegations and then lumps all of the Defendants together.  When the manifest defects of the FAC were put before it, Plaintiff responded with hundreds of pages of declarations consisting mostly of anonymous and unverified Internet postings on chat boards and salacious text messages.

In determining the propriety of jurisdiction, as well as *forum non conveniens*, comity and various 12(b)(6) bases for dismissal, the Court must look at Plaintiff's actual allegations against the specific Foreign Defendants *as individuals*.  Lumping them together as "bad guys" and then attributing the actions of un-named Defendants to each particular Foreign Defendant should not be countenanced.  As Plaintiff's own recent Ninth Circuit caselaw so helpfully points out, "*The jurisdictional inquiry must decouple defendants*, considering whether each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction over that defendant."  *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022) (emphasis added).

Here are the uncontroverted facts:

- The FAC makes general allegations against all Defendants.
- Even so, the FAC does not make any allegations that the Foreign Defendants alleged conduct occurred in the United States – indeed Plaintiff admits that all of the remaining Foreign Defendants reside in Germany.
- All of the Foreign Defendants' fact witnesses and evidence are located in Germany.
- The Foreign Defendants have no general ties to the United States and this Court has no general jurisdiction over the Foreign Defendants as

Plaintiff admits.

- Plaintiff's affiliate already initiated a lawsuit against Engineowning and Valentin Rick in Germany approximately two (2) years ago regarding the same alleged conduct at issue in this lawsuit.

- The German lawsuit is ongoing.

There is no competent evidence contradicting the above facts. Instead of contending with the above facts, Plaintiff instead tries to distract the Court with irrelevant evidence of bad conduct that is entirely irrelevant to the factual allegations made in the FAC as they relate to the Motion. Plaintiff is a multi-billion dollar company with the resources to litigate this case in any jurisdiction in the world – it chose to initiate litigation of the underlying claims through an affiliate in Germany. This Court should not countenance Plaintiff's forum shopping behavior – Plaintiff made its bed, now it should have to lie in it.

## II.   FACTS

### A.   Plaintiff's Evidence

Plaintiff introduces five declarations to support its opposition to the Motion (the "Opposition") (Dckt. No. 91).

#### 1.   *Terzian Declaration*

Phil Terzian is a Senior Director, Legal and Assistant Secretary for Activision Blizzard, Inc. the parent of Plaintiff. (Terzian Decl. at ¶ 1 (Dckt. No. 91-4)). This declaration generally shows that Plaintiff is computer game developer headquartered in Santa Monica. (*See generally*, *id*.) He goes on to say that its witnesses are in the LA area and concludes it would be a burden to litigate in Germany without attempting to quantify the dollar amount of such burden. (*See generally, id*.) Mr. Terzian does not dispute that Plaintiff owns and controls Activision Blizzard International B.V. ("Activision Europe") and does not dispute that Plaintiff is a multi-billion dollar company that can easily afford to litigate its claims in Germany.

REPLY BRIEF ISO FOREIGN DEFENDANTS' MOTION TO DISMISS

1

## 2.   *Krueger Declaration*

2     Mr. Krueger is German outside counsel to Activision Europe in its litigation

3  against Mr. Rick and EngineOwning UG in Germany.  (Krueger Decl. at ¶ 2 (Dckt.

4  No. 91-6)).  Mr. Krueger admits that Activision Europe manufactures and distributes

5  the COD games in Europe.  (*Id*. at ¶ 5.) He says that Activision Europe initiated

6  litigation against Mr. Rick and EngineOwning UG on September 23, 2020 for claims

7  of unfair competition and inducing breach of contract (the "German Litigation").  (*Id*.

8  at ¶ 6.) He states that such action does not include copyright or anti-circumvention

9  claims.  (*Id*.).  He also states that the other Foreign Defendants are not named in such

10  lawsuit.  (*Id*.).  He says that Plaintiff never filed a lawsuit against Mr. Rick or

11  EngineOwning UG; instead Plaintiff simply sent Mr. Rick and EngingOwning UG a

12  draft complaint and the Plaintiff was switched to Activision Europe prior to filing the

13  complaint.  (*Id*. at ¶ 8).

14     Mr. Krueger's declaration goes on to say that the issues of law are different

15  since the German Litigation does not directly involve Plaintiff as a named party and

16  only deals with issues of German law – not of U.S. law.  (*Id*. at ¶¶ 12-13).  However,

17  Mr. Krueger's declaration admits that in fact, German courts can decide issues of

18  U.S. law – it would simply cost more money.  (*Id*. at ¶ 14).

19     On its face, Mr. Krueger's declaration has no stated foundation for his

20  statements concerning German jurisdiction as he cites no German law for his

21  conclusions regarding the power of German courts to exercise jurisdiction.  (*Id*. at ¶¶

22  15, 17-18).  Likewise, Mr. Krueger's declaration has no stated foundation for his

23  statements concerning the potential cost of litigating US claims in Germany. (*Id*. at ¶

24  20).

25     Mr. Krueger's declaration does not deny that Plaintiff has control over

26  Activision Europe or that Plaintiff can easily afford to litigate its case in Germany.

27  (*See generally*, *id*.).

28

### 3.    *Santiago Declaration*

Mr. Santiago's declaration generally tells his of his experience as a purported reseller of "cheat codes" in 2020 and 2021.  (*See generally*, Santiago Decl. (Dckt No. 91-7)).   Mr. Santiago's declaration is silent as to his location when acting as a purported reseller. (*See generally*, *id*.). Interestingly, Mr. Santiago signed his declaration in the United Kingdom. (Santiago Decl. at p. 6)  Mr. Santiago purports to implicate Foreign Defendants Bugla and Huch as working for EngineOwning UG – however, such purported testimony shows a lack of personal knowledge on its face as all of his statements are based *on information and belief*. (*See generally*, *id*. at ¶¶ 7-13).  His declaration does not state the basis of such information and belief as to the identity of his contacts.  (*See generally*, *id*.).  For other matters, at times the basis for his information and belief is hearsay and at other times it is simply unstated.  (*See generally*, *id*.).  Mr. Santiago's declaration evidences no personal knowledge of sales of cheat codes into the United States – though he bases his allegation that "sales to US users were a big part of EO's business" because EO began to accept payments via Apple Pay and that his "understanding was that this method of payment was only available to U.S. users."  (*Id*. at ¶ 9). Mr. Santiago does not state the basis of his understanding. (*Id*.). A screenshot of Apple's website shows that Apple Pay is accepted in countries on six continents including Germany and more than 40 countries in Europe.  (Suppl. RJN at ¶ 2, at Ex. T).  A screenshot of Wikipedia shows that Apple Pay was available in Germany and the EU as of June 2019. (*Id*. at ¶ 3, at Ex. U).

### 4.    *Gayduchenko Declaration*[1]

Mr. Gayduchenko's declaration is used solely to introduce evidence in the form of copies of screenshots of Telegram text message conversations.  (*See*

---

[1] Mr. Gayduchenko is no longer a party to this litigation and was represented by separate counsel in connection with his settlement with Plaintiff.   Should this litigation proceed and should it be necessary to cross exam Mr. Gayduchenko at deposition and/or trial, at this point in time Foreign Defendants plan on utilizing separate counsel to do so.

*generally*, Gayduchenko Decl.).   Mr. Gayduchenko admits, on the face of his declaration, to a lack of personal knowledge regarding the identity of the people he messaged with.   (See *generally*, *id.* ("Due to the nature of Telegram messaging, I cannot know with certain (sic) who sent me messages from the other account.")).   Mr. Gayduchenko's declaration does not appear to contain information concerning the alleged conduct in the FAC as to issues pertaining to the Foreign Defendants' Motion regarding jurisdiction, *forum non conveniens*, comity, or the various 12(b)(6) defects with the Plaintiff's stated causes of action. (*See generally*, *id.*). Instead, it appears to simply combine salacious details apparently intending to show that the owners of the screen names indicated are bad guys.

### 5.   *Mayer Declaration*

Mr. Mayer's declaration is used to introduce a lot of hearsay.   (*See generally*, Mayer Decl.).   Paragraphs 2-6 are a mix of Mr. Mayer's personal experiences, general observations about EngineOwning UG, and cheat selling ventures in general. (Mayer Decl. at ¶¶ 2-6). Mr. Mayer goes on to describe his hearsay observations of: the website located at www.engineowning.com, (Mayer Decl. at ¶¶ 8-21), the tweets attributed to the Twitter accounts known as @EngineOwningCOM and @EngineOwningto, (*id.* at ¶¶ 22-28), Discord Servers purporting to be run by EngineOwning, (*id.* at ¶¶ 29-21), and private chat rooms run on Telegram, (*id.* at ¶¶ 32-33).   He then summarizes documents, some received by third-parties pursuant to subpoena and presumably gathered by his investigators, showing various internet posts and messages purportedly made by the Foreign Defendants.   (*See generally*, *id.* at ¶¶ 34-94).   He also discusses messages he received by anonymous individuals during the course of this lawsuit, (*id.* at ¶¶ 95-100), and the scope of jurisdictional discovery he would like to take, (*id.* at ¶¶ 102- 103).   Finally, he attaches exhibits purporting to show someone who credited "EngineOwning" for being a sponsor, (*id.* at ¶ 105), and Defendants engaging "directly with customers in the U.S." through answering questions on an Internet chatroom. (*Id.* at ¶ 106, at Exs. 81-84).   It should

be noted the chats do not purport to show a location of either participant in the chat, let alone an identity other than a screen name.  (*Id*.).  Finally, Mr. Mayer attaches an article which states that the COD franchise has sold more than 400 million copies worldwide.  (*Id*. at ¶ 107, at Ex. 85). On its face, the vast majority of Mr. Mayer's declaration lacks personal knowledge and is based upon hearsay and double hearsay. (*See generally*, Mayer Decl.).

**B.** **Plaintiff's Purported Evidence Does Not Contradict Any of the Foreign Defendants' Declarations**

The uncontroverted evidence shows that:

- EngineOwning Software UG is a German-based company, with headquarters located in Pfaffenhofen, Germany.  (Rick Decl. at ¶ 22).

- It does not own, rent, or lease property in the United States.  (*Id*. at ¶ 23).

- It does not employ any United States citizens, nor United States residents. (*Id*. at ¶ 24).

- It does not own any storefronts in California, nor in the United States. (*Id*. at ¶ 25).

- It does not operate any subsidiaries or affiliate companies in California, nor in the United States. (*Id*. at ¶ 26).

- It does not own any bank accounts or investment accounts in the United States. (*Id*. at ¶ 27).

- EngineOwning Software UG's books, records, and corporate documents are all kept in offices located in Germany. (*Id*. at ¶ 28).

- All of these records are in German. (*Id*. at ¶ 28).

- It is registered to do business in Germany and pays taxes in Germany. (*Id*. at ¶ 29).

- It is not registered to do business in any foreign jurisdictions – including any state or jurisdiction in the United States. (*Id*. at ¶ 29).

- No Foreign Defendants are U.S. citizens or regularly visit the United States. (*See generally*, Declarations of Valentin Rick, Leonard Bugla, Leon Frisch, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Claβen, and Remo Löffler).
- Nor do they own any property, bank accounts, or investment accounts in the United States. (*See generally*, *id*.).
- Nor do they pay taxes in the US or have any significant connection to the US whatsoever. (*See generally*, *id*.).
- English is not the first language of any of the Foreign Defendants. (*See generally*, *id*.).
- Having to defend themselves in the United States would require travel and lodging costing thousands of dollars for each Defendant. (*Id*.).
- In addition, three of the Foreign Defendants are students and going to trial in the United States could interfere with their studies. (Frisch Decl. at ¶ 21; Richts Decl. at ¶ 21; Kleeman Decl. at ¶ 20).
- One of the Foreign Defendants is a caretaker for a family member. (Richts Decl. at ¶ 19).

**C.    Plaintiff's Purported Evidence Does Not Contradict the Resources of Plaintiff or Its IP Protection in Germany**

The uncontroverted evidence shows that:

- Plaintiff is a publicly traded company with a market capitalization in excess of $50 billion dollars. (RJN at ¶ 18).
- Plaintiff protects its trademarks in Germany and throughout the European Union by registering its trademarks with applicable EU authorities. (RJN at ¶¶1, 4-12).
- Plaintiff has registered at least a dozen marks in the EU, including various Call of Duty marks related to the instant case. (RJN at ¶¶4-10).
- Plaintiff's European affiliates have filed several lawsuits in Germany

concerning unfair competition and intellectual property rights in the past, including one currently pending against two of the Foreign Defendants in this lawsuit.   (Declaration of Jorge Fedtke ("Fedtke Decl.") at Ex. C (Expert Report) at pp. 2-3).

**D.     German Lawsuit**

The uncontroverted evidence shows:

- Plaintiff's affiliate Activision Europe initiated an unfair competition lawsuit against EngineOwning Software UG ("EngineOwning") and Valentin Rick on August 19, 2020. (Kruger Decl. at  ¶¶2, 5); (Supp. Declaration of Markus Kompa ("Supp. Kompa Decl.") at ¶¶ 3-5).

- The German Lawsuit is still pending. (Supp. Kompa Decl. at ¶¶ 6-7).

**E.      German Legal System**

Finally, the uncontroverted evidence shows that:

- Germany "has a well-functioning system of independent courts**."** (Declaration of Jorge Fedtke ("Fedtke Decl.") at Ex. C (Expert Report) at p. 1).

- **"**The range of remedies, including damages and injunctive relief, is broadly comparable to that found in the United States."  (Fedtke Decl. at Ex. C (Expert Report) at p. 2).

- Plaintiff's affiliates have previously successfully pursued similar matters against similar defendants in Germany.   (*Id*. at pp. 2-3).

**III.   ARGUMENT**

**A.     There is No Jurisdiction Over the Foreign Defendants**

**1.     *There Is No General Jurisdiction***

Plaintiff admits the Court has no general jurisdiction over any of the Foreign Defendants in this matter.  (Opposition at p. 16).  Although Plaintiff now says it never claimed the Court had general jurisdiction over the Foreign Defendants, the FAC seems to support the contrary conclusion as it alleges that Defendants "have

1    established a continued presence in California."  (FAC at ¶ 8).

2         **2.    *There is No Specific Personal Jurisdiction Over the Foreign***

3              ***Defendants***

4         Likewise, the Foreign Defendants are also not subject to specific jurisdiction.

5    Plaintiff agrees with Foreign Defendants that *Schwarzenegger v. Fred Martin Motor*

6    *Co.*, 374 F.3d 797, 802 (9th Cir. 2004) is the controlling case.  That is where the

7    agreement ends.  Plaintiff mischaracterizes the Foreign Defendants' brief in at least

8    two major ways: 1) that Foreign Defendants never denied that the jurisdictional

9    gravamen of the complaint that they allegedly participated in the "the primary goal

10   of the Enterprise: distributing cheats in the U.S. Nor do they deny the claims arise

11   out of the Defendants' forum related activities – namely, distribution of the Cheats

12   in the U.S." and 2) That "Defendants never claim the exercise of jurisdiction would

13   be unreasonable."  (Opposition at p. 16 (Dckt. No. 91 at 1880)).

14        First, the scattered and ambiguous nature of Plaintiff's allegations make it

15   difficult for the individual defendants to deny anything as Plaintiff's allegations

16   attempt to stick each and every Defendant with the actions of all Defendants and

17   make no particular allegation about distributing so-called Cheats in the U.S. against

18   any particular Foreign Defendant.  (*See generally*, FAC).  Moreover, in its

19   Opposition, Plaintiff fails to show where it alleges any such allegation in the FAC

20   against any Foreign Defendant in the case.  *Plaintiff does not cite a single allegation*

21   *from the FAC in the entire discussion of specific jurisdiction.*  (Opposition at pp. 15-

22   24 (Dckt. No. 91 at pp. 1879-1888)).  Instead of arguing about the FAC it actually

23   filed, Plaintiff seems to be arguing about a hypothetical FAC that it might have filed.

24   Its entire argument about "uncontested allegations" is a counterfactual because the

25   fact is that the FAC made no specific allegations against any specific Defendant with

26   respect to any jurisdictional hook in the first place – so there are no specific

27   allegations to contest.  Indeed, that is the Foreign Defendants' point.

28

- 9 -

Second, Plaintiff's claim that "Defendants never claim the exercise of jurisdiction would be unreasonable" is apparent evidence that Plaintiff did not read the Foreign Defendants' Motion. The entire thrust of Foreign Defendants' argument is that Plaintiff's vague and conclusory allegations makes the exercise of jurisdiction unreasonable. (Motion at pp. 30-31 (Dckt. No. 68-1 at pp. 742-743)). As Foreign Defendants explicitly state in their Motion, "It is simply *not reasonable to exercise jurisdiction over foreign defendants* on these vaguely pled allegations under these circumstances." (*Id*. at p. 31 (Dckt No. 68-1 at p. 743) (emphasis added)).

Plaintiff ignores many of the Motion's arguments. One conspicuous example is Plaintiff's complete lack of a response to the *Tevra Brands* case wherein that court dismissed based on a lack of specific jurisdiction when it refused to allow the plaintiff to piggyback the conduct of the German defendants onto the conduct of U.S. based defendants. Foreign Defendants describe this case on p. 31 of their Motion. Plaintiff does not bother to distinguish the current situation from that discussed in *Tevra* anywhere it its Opposition. (*See generally*, Opposition.) One can assume that ignoring the Foreign Defendants' caselaw without any discussion is tantamount to admitting that it is correct. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").[2] The *Tevra* court found:

> Tevra fails to specify facts showing that Bayer AG and Bayer Animal Health GmbH purposefully directed their activities toward the United States…

---

[2] *See also Salcedo v. Nissan N. Am., Inc.*, No. CV 22-4152-GW-MARX, 2023 WL 332761, at *8 (C.D. Cal. Jan. 18, 2023) ("The failure to substantively oppose a motion to dismiss can be "construed as a waiver or abandonment of those issues warranting dismissal of [those] claims."); *Am. Nat'l Ins. Co. v. Akopyan*, No. 2:20-CV-08502-RGK-E, 2021 WL 2792313, at *2 (C.D. Cal. Apr. 8, 2021) ("[T]he Court does not need to delve into the merits of ANICO's argument because Akopyan failed to address that argument in his Opposition."); *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, No. CV 20-4822-PLA, 2020 WL 6875178, at *3 (C.D. Cal. Oct. 23, 2020) ("Moreover, in its Opposition, plaintiff does not contest this argument and, as such, concedes that the Rogers test applies to plaintiff's first and third causes of action.").

1

2      The FAC contends that the Defendants carried out multiple "schemes of
3      illegal exclusive dealing and tying involving wholesale sales of
       'squeeze-on' Imidacloprid topical flea and tick treatments." FAC at 2.
4      ***However, it largely fails to particularize which Defendant engaged in***
       ***the anticompetitive acts it describes, repeatedly referring to the***
5      ***Defendants collectively as "BAH" and piggybacking the conduct of***
6      ***the German Defendants onto the conduct of U.S.-based Defendant***
       ***Bayer Healthcare.***
7

8      *Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV-04312-BLF, 2020 WL
9      8513082, at *2 (N.D. Cal. Sept. 15, 2020) (citations omitted) (emphasis added).

10          This is precisely the situation that has occurred here.  As discussed in its
11     Motion, Plaintiff fails to particularize which Defendants engaged in which alleged
12     wrongful acts – instead Plaintiff mentions the individual Foreign Defendants
13     sparingly:

14     • EngineOwning Software UG, alleged to be a shell corporation, is mentioned
15       in two (2) paragraphs of the FAC (FAC at ¶¶ 14-15);

16     • Valentin Rick, alleged to be a founder and mastermind residing in Germany,
17       is mentioned in four (4) paragraphs of the FAC (*id*. at ¶¶ 15, 17, 18, and 21);

18     • Leon Schlender, alleged to be a founder and mastermind residing in Germany,
19       is mentioned in two (2) paragraphs of the FAC (*id*. at ¶¶ 15, 18);

20     • Bennet Huch, alleged to be a one-time owner of the EO Website and a primary
21       administrator, is mentioned in one (1) paragraph of the FAC (*id*. at ¶ 20);

22     • Leonard Bugla, alleged to be an operations administrator residing in Germany,
23       is mentioned in one (1) paragraph of the FAC (*id*. at ¶ 21);

24     • Marc-Alexander Richts, alleged to be a primary moderator of the EO Website
25       forums residing in Germany, is mentioned in one (1) paragraph of the FAC
26       (*id*. at  ¶ 22);

27     • Leon Frisch, alleged to be a lead moderator on the EO Website forums residing
28       in Germany, is mentioned in one (1) paragraph of the FAC (*id*. at ¶ 29);

- Alexander Kleeman, alleged to be a moderator on the EO Website forums residing in Germany, is mentioned in one (1) paragraph of the FAC (*id*. at ¶ 30);

- Remo Loffler, alleged to be a moderator on the EO Website forums residing in Germany, is mentioned in one (1) paragraph of the FAC (*id*. at ¶ 31); and

- Pascal Classen, alleged to be a reseller residing in Germany, is mentioned in one (1) paragraph of the FAC (*id*. at ¶ 43).

These are the only particularized allegations relating to said Foreign Defendants and they are wholly insufficient to support a finding of jurisdiction. *Tevra Brands*, No. 19-CV-04312-BLF, 2020 WL 8513082, at *2. ***The FAC nowhere alleges that Mr. Rick himself or any of the other individual Foreign Defendants ever sold or distributed the "Cheat Codes" into the US or otherwise had any specific contacts with the United States whatsoever.*** Instead, the FAC makes blanket allegations about Defendants and Plaintiff attaches screenshots of anonymous and unverified customer inquiries in chat rooms. Plaintiff never applies *Schwarzneggar* to the facts of this case; instead Plaintiff engages in a fanciful hypothetical wherein in applies *Schwarzneggar* to the allegations it wishes it had made in the FAC – but did not actually allege.

As such, Plaintiff's contention that Foreign Defendants failed to contest the allegations is off-point. Plaintiff pled the FAC in such a way to make contesting allegations impossible because it intentionally conflates the acts of all Defendants with each other. However, Plaintiff's own caselaw makes clear this is not permissible: "*The jurisdictional inquiry must decouple defendants*, considering whether each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction over that defendant." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022) (emphasis added).

        i.    *Plaintiff Fails to Adequately Plead that Each Foreign Defendant Purposefully Directed His Activity at the Forum*

Plaintiff's caselaw regarding purposeful availment is, for the most part, good law.  (*See generally*, Opposition at pp. 16-23).  The problem is that Plaintiff did not allege any of the facts against any particular Foreign Defendant that would make such caselaw applicable.   (See generally, FAC).   Instead, Plaintiff makes general allegations about all Defendants – and fails to decouple each Foreign Defendant from each other, and from the other defendants in the case, as *Burri Law* requires.   Indeed, even when arguing over jurisdiction, Plaintiff does not point to a single allegation it made in the FAC against any individual Foreign Defendant.   (*See generally*, Opposition at pp. 16-23).

ii.   *Plaintiff Fails to Adequately Plead that Each Foreign Defendant Engaged in Intentional Acts*

Plaintiff tries to get around this jurisdictional issue by arguing that "all of the Defendants acted as 'primary participants' in the unlawful conduct."  (Opposition at p. 18).  Note that Plaintiff fails to cite where in its FAC it named each Foreign Defendant a primary participant.  (*Id.*).  Unlike *Calder*, in which the Plaintiff named two (2) defendants, Plaintiff has named more than twenty (20).  (*See generally*, FAC).  None of the cases Plaintiff cites to have to do with asserting personal jurisdiction against more than twenty (20) defendants based upon conclusory group allegations:

- *Calder v. Jones,* 465 U.S. 783 (1984) (two defendants);
- *Allstar Mktg. Grp., LLC v. Your Store Online,* 666 F. Supp. 2d 1109 (C.D. Cal. 2009) (four defendants);
- *World Designs, Inc. v. DHR Co.,* 322 F. Supp.2d 1065 (C.D. Cal. 2004) (two defendants); and
- *Imageline, Inc. v. Mintskovsky,* 2009 WL 10672787 (C.D. Cal. 2009) (two defendants).

Moreover, when jurisdiction in the above cases was found over both corporate entities and natural persons, the natural persons were alleged to have been owners and high-ranking corporate officers – not mere website administrators or moderators.

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1116 (C.D. Cal. 2009) ("Chris and Paul Reoch are the co-owners, managing members, and sole employees of YSO, a Wisconsin limited liability company with its principal place of business in Wisconsin."); *World Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1068 (C.D. Cal. 2004) ("Defendant David Richardson ("Richardson"), a resident of Georgia, was and is the President of DHR."); *Imageline, Inc. v. Mintskovsky*, No. CV0901869SJOJCX, 2009 WL 10672787, at *1 (C.D. Cal. June 16, 2009) (" . . . Imageline filed this suit against CD Earth, a Texas limited liability company whose principal place of business is Dallas, Texas, and Mintskovsky, a Texas resident who is the manager and sole owner of CD Earth . . . .").

Here, Plaintiff only plausibly alleges potential control and/or direction by three individual Foreign Defendants: Rick, who it alleges "continues to manage and operate EO," Schlender, who it alleges "has directed and/or been responsible for developing, maintaining, marketing, distributing, and selling Cheating Software," and Huch who it alleges "was among the people primarily responsible for the development, maintenance, distribution, and sale of the Cheating Software." (FAC at ¶¶17-18, 20). Even then, Plaintiff fails to plead that Rick, Schlender or Huch specifically targeted Plaintiff or the US. (*See generally*, FAC). The rest of the Foreign Defendants are alleged to have had secondary roles by the very nature of what their alleged actions were:

- Bugla is alleged to be an operations administrator residing in Germany, (*id*. at ¶ 21);

- Richts is alleged to a moderator on EO Website forums residing in Germany, (*id*. at ¶ 22);

- Frisch is alleged a moderator on EO Website forums residing in Germany, (*id*. at ¶ 29);

- Kleeman is alleged to be a moderator residing in Germany, (*id*. at ¶ 30);

- Löffler is alleged to be a moderator residing in Germany, (*id*. at ¶ 31); and

- Claβen is alleged to be a reseller in Germany, (*id*. at ¶ 43).

Moreover, it is not clear that any of Plaintiff's cited cases deal with the problem of jurisdiction here – that Plaintiff impermissibly conflated all of the defendants with each other.  In this case, at no point does the FAC allege that any of the above-named Foreign Defendants committed any actions in the United States or aimed any conduct at the United States at all.  (*See*, *e.g.*, FAC at pp. 9-15).  Instead, Plaintiff impermissibly groups all Foreign Defendants together with conclusory group allegations failing to decouple the individual defendants from each other with broad allegations such as "Defendants market the Cheating Software in the United States." (FAC at p. 31).

Likewise, Plaintiff tries to stick each individual Foreign Defendant with jurisdiction on the basis of the acts of a "joint venturer."  There are several issues with this argument.  First, Plaintiff simply did not plead this – not even in conclusory fashion.  Where it made its conclusory pleadings regarding each Defendant being responsible for the acts of the other, it did so under an agency theory – not a joint venture theory.  (FAC at ¶ 9).  The FAC does not remotely follow the caselaw Plaintiff cites.  (Opposition at p. 19) (*citing Pepper, N.A. v. Expandi, Inc.*, 2016 WL 1611039, at *2 (N.D. Cal. Apr. 22, 2016)).  Nowhere does Plaintiff plead that each of the Foreign Defendants have "an understanding to share profits and losses" or have a "right to joint control."  (*Id*.).  Once again, Plaintiff is asking the Court to decide the Motion based upon a hypothetical FAC that it did not plead.

Moreover, even if Plaintiff had pled there was a joint venture – and it did not – none of the caselaw Plaintiff cites to, (Opposition at p. 19), is Ninth Circuit caselaw (or even Central District caselaw for that matter) and there is some Ninth Circuit caselaw standing for the general proposition that a co-owner's contacts are not sufficient to hail a co-defendant into court who would not otherwise be subject to such jurisdiction.  *See*, *e.g.*, *Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990) ("Thus, a partner's actions may be imputed to the partnership for the purpose of

- 15 -

establishing minimum contacts, but ordinarily may not be imputed to the other partners.").  In *Sher*, the Court held that while a partnership may be hailed into court based upon the contacts of its partners with the forum state, the partners as individuals cannot be hailed into court simply because of the contacts of their other partners. (*Id*.).  This case is very similar to the instant action as it has to do with attributing jurisdiction to all individual co-defendants based on the acts of a single defendant, in fact it was cited in the recent Ninth Circuit *Burri Law P.A.* case which Plaintiff cited in its Opposition (albeit for a different proposition).  (Opposition at p. 19).  Without being able to conflate the actions of all Defendants with each other, Plaintiff's proposition that it sufficiently pled "intentional acts" as to each individual Foreign Defendant falls apart.

Likewise, Plaintiff's argument that it has sufficiently alleged "express aiming" at the U.S. market is underwhelming.  Most of Plaintiff's argument comprises of the following: 1) that Foreign Defendants created a distribution system available to U.S. purchasers, 2) that Foreign Defendants marketed "the Cheats" to U.S. customers, 3) that the Foreign Defendants engaged with U.S. customers online, and 4) that the sale of a "Cheat" constitutes a continuing relationship with EO.  (Opposition at pp. 20-21).  Upon closer inspection though, this argument falls apart:

- Is creating an English language website proof of targeting the U.S.? According to Statista, 58.8% of the world's websites are written in English. (Supplemental RJN at Ex. S (printout of Statista webpage)).

- Is using Apple Pay proof of an intent to target the U.S. market? According to Apple's website, Apple Pay is available on six continents. (Supplemental RJN at Ex. T (print out of Apple Pay availability webpage)).

- Is marketing on Twitter proof of targeting the U.S. market?  According to Twitter, as of 2015 marketers could serve ads in over 200 different countries and jurisdictions (Supplemental RJN at Ex. V (printout of

Twitter ad availability)).

The only thing these arguments "prove" is that the EO Website is an Internet business circa 2023.  With respect to other arguments Plaintiff makes, they apparently have not been actually pled in the FAC – as the Opposition does not cite to any allegations in the FAC supporting such arguments, but instead cites to caselaw and Mr. Mayer's lengthy, hearsay-heavy declaration.  (*See generally*, Opposition at pp. 19-21).

iii.    *Plaintiff Fails to Adequately Plead that the Foreign Defendants Individually Targeted Plaintiff*

Regarding allegations of targeting Plaintiff, the Foreign Defendants do not quibble with the cited caselaw in so far as the caselaw says what it says. (*See generally*, Opposition at pp. 21-23).  The question however is the applicability of such case law here – whether the individual defendants, whether summarily described as masterminds, administrators, moderators, or resellers, can be fairly said to have targeted Plaintiff in their individual roles as Plaintiff actually alleges in its complaint.  Take Foreign Defendant Classen, for example.  He is alleged to be a reseller of the "Cheat Codes".  (FAC at ¶ 43). This would seem at first blush to show some nexus with the forum – however, upon examination, there is no particularized allegation whatsoever that Defendant Classen intentionally did anything having to do with the forum.  The FAC does not even allege that Classen sold Cheat Codes to U.S. residents.  (*Id*.).  The totality of Plaintiff's allegations against Classen as an individual is a single sentence in the FAC:

> Activision is informed and believes. And on that basis alleges, that Defendant Pascal Classen, a/k/a Proton, Proton1001, P1001, Proton909, and Proton007 ("Classen") is an individual residing in Germany who has acted as a reseller for the EO Cheating Software.

FAC at ¶ 43.  On its face, this allegation is not remotely sufficient to justify U.S. jurisdiction.  In fact, on its face, this allegation shows there is no jurisdiction because Defendant Classen resides in Germany and is not alleged to have any contacts with

the U.S.  The only way that Defendant Classen could possibly be subject to U.S. jurisdiction would be if the Court were to impute all of the actions of the nameless "Defendants" onto Defendant Classen.  However, Plaintiff's own mandatory and binding Ninth Circuit caselaw shows this is impermissible.  *Burri Law PA v. Skurla*, 35 F.4th 1207 at 1213 (Ninth Circuit 2022) ("The jurisdictional inquiry must decouple defendants, considering whether each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction over that defendant.") (*quoting Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990)).  Likewise, the particular allegations Plaintiff does make regarding the other individual Foreign Defendants are similarly insufficient and do not contain any language regarding "express aiming" at the U.S., Plaintiff or otherwise.  (*See generally*, FAC at ¶¶14-45).

In this circumstance, Plaintiff's argument that the Foreign Defendants targeted Plaintiff is off point.  Plaintiff does not cite to any allegations in the FAC in this section.  (Opposition at pp. 21-23).  Nor does it cite to any evidence it introduced.  (*Id*.).  Instead, it cites to a case its affiliate brought against Bossland Gmbh.  However, *Bossland* is totally inapplicable to the instant case.  First, in *Bossland* there was only one defendant – Bossland – so there was no issue of wrongfully attributing actions of any defendant against all defendants.  *Blizzard Ent., Inc. v. Bossland GmbH*, No. SACV161236DOCKESX, 2017 WL 412262, at *1 (C.D. Cal. Jan. 25, 2017).  Second, Bossland had explicitly entered the U.S. market voluntarily by among other things, registering its trademarks with the USPTO.  *Id*. at *1 ("Bossland has registered United States trademarks for "Honorbuddy" and "Demonbuddy" and has applied for United States trademark registration for "Hearthbuddy.").  Although the Court did not cite Bossland's trademark registrations in the section wherein it discussed purposeful availment, it did mention them earlier – so obviously the Court thought that fact was relevant to something (perhaps "fairness").  *Id*.  Regardless, at most *Bossland* stands for the proposition that a corporate defendant that purposefully

availed itself of the privilege of doing business in California by targeting a plaintiff is subject to jurisdiction – the problem for Plaintiff is that once again Plaintiff's FAC as actually pled does not specifically accuse Foreign Defendant EngineOwning UG of doing anything other than being a "shell corporation."  (FAC at ¶¶ 14-15).

iv.   *The Exercise of Jurisdiction Would Be Unreasonable*

As before, the Foreign Defendants do not argue that the caselaw Plaintiff cites is not good caselaw.  Again, the Foreign Defendants argue it is simply not applicable to this case.  The correct case to apply in this situation is *Tevra* – so the Court should not even reach a reasonableness analysis.  That being said, here jurisdiction would be unreasonable for essentially the same reason – that individual Foreign Defendants should not be dragged into U.S. court based upon the actions of un-named other Defendants.  *See* discussion *supra*.

**B.    This Case Should be Dismissed Under *Forum Non Conveniens***

Although some deference is normally warranted to a plaintiff's choice of home forum, "a plaintiff who files suit in its home forum does not, per se, defeat a motion to dismiss for *forum non conveniens* by virtue of being in its home forum." *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 754 (S.D.N.Y. 2006).  In this case, Germany is an adequate available forum and the balance of private and public factors favor dismissal.  First, Plaintiff claims that "a German court would be unable to adjudicate this dispute (a fact alone which is dispositive)" – but this assertion is expressly contradicted by Plaintiff's own lawyer who plainly states that it is, in fact, possible – it is just time consuming and expensive.  (Krueger Decl. ¶ 14 ("While it is theoretically possible for a German court to adjudicate issues of U.S. law, the process is time consuming and expensive.")).  Second, Plaintiff claims that "Defendants do not point to any serious burden not present in every case against a foreign defendant." (Opposition at p. 25).  Although the time and expense of travel may not seem like a "serious burden" to a multi-billion dollar company like Plaintiff, it is a real burden to the individual defendants residing

in Germany.  (Motion at pp. 34-36 (Dckt. No. 91 at pp. 746-749)).[3]

### 1.    *Germany is an Adequate Alternative Forum*

Germany is a perfectly adequate available forum.  (Motion at 33 (Dckt. No. 91 at 1889)).  Plaintiff dodges all of the Foreign Defendants' caselaw on the subject and does not bother to respond to Foreign Defendants' caselaw regarding sufficiency of the adequacy or availability of the forum at all. (Opposition at 25-26). Instead, Plaintiff states – without proof – that seven Defendants who are not the subject of the instant motion are not subject to jurisdiction in Germany or amenable to process there.  Assuming *arguendo* that is true, in this instance, it should not matter because each and every one of the defendants cited by Plaintiff was not in the original complaint and, one can infer, was simply added to the FAC in a transparent gambit to try to defeat Foreign Defendants' anticipated Motion by adding U.S. defendants. (*See* Gipson Decl. at ¶¶4-5 (Dckt. No. 68-2 at pp. 768-769) (noting U.S. Defendants were only added to the complaint subsequent to counsel's initial phone call with Plaintiff's counsel)).  The Court should not reward such stratagems.

### 2.    *The Private and Public Interest Favor Dismissal*

Plaintiff makes light of Foreign Defendants' burdens of litigating in the United States. (Opposition at p. 26-27).  Again, the inconvenience and expense of travel may not seem burdensome to a multi-billion dollar Plaintiff, but to individual people, it is quite burdensome.  Plaintiff also argues that the existence of the German litigation is irrelevant and was introduced to the Court by Foreign Defendants for nefarious purposes.  (*Id*. at p. 27).  However, it is highly relevant and there is nothing nefarious about it.

The complaint included in Kompa's Declaration was not a "fake Document" – it was the document Plaintiff sent. (Suppl. Kompa Decl. at ¶ 4.) Defendant EngineOwning's and Mr. Rick's German lawyer simply had not noticed that the

---

[3] Moreover, this is not a case like *In Re Amwest Ins. Grp., Inc.*, 285 B.R. 447, 456 (Bankr, C.D. Cal 2002)  which Plaintiff cited in its Opposition at p. 25.  There, the court found that an insolvent corporate debtor assumed the risk of being sued in the Nebraska by a creditor by doing business there.

named plaintiff in the document had changed from Activision Publishing, Inc. (the Plaintiff here) and Activision Blizzard International, B.V. (the plaintiff in the German litigation) between the time it was sent and the time of the lawsuit. (*Id*. at ¶¶ 3-4.) He was just focused on the word "Activision." (*Id*. at ¶ 3.) After all, both entities use the name "Activision" and both are apparently owned and controlled by the same ultimate owner Activision Blizzard, Inc. (*Id*.). If anything, this innocent mistake just goes to show a unity of interest between Plaintiff and Activision Europe – a unity of interest so close that its parent company chose to swap out one entity with the other prior to filing a lawsuit. Although the specific claims in the lawsuits may be legally distinct insofar as the German lawsuit was brought under German law and the U.S. lawsuit brought under U.S. law – the underlying claims of conduct are exactly the same. Moreover, Plaintiff does have the ability to adjudicate U.S. law in Germany – per its own lawyer. (Krueger Decl. ¶ 14). Finally, Plaintiff is perfectly capable of suing the Foreign Defendants in Germany – all are German – and Plaintiff has already threatened to sue at least two of the Foreign Defendants (EngineOwning Software UG and Mr. Rick) in Germany – by sending them the draft complaint which Plaintiff now contends is a "fake document." (Suppl. Kompa Decl. at ¶ 4); (Opposition at p. 27).

### i.     *The Private Interest*

Plaintiff's weighing of the burdens of foreign litigation are unconvincing considering its size and the fact that it – and its affiliates – already purposefully avail themselves of doing business in Germany.

### a.     *The Residence of the Parties and Witnesses*

Technically, Plaintiff may not be a resident of Germany – but it sure is at home there. How else can one explain the fact that it has registered many *Activision* and *Call of Duty* trademarks in Germany and the EU under its own name – Activision Publishing, Inc.? (*See* RJN at Exs. A – L (Dckt. No. 69 at pp. 1008- 1189)). Moreover, even if the *Activision* offices in Germany are not technically owned by

Plaintiff, they are surely owned and/or controlled by Plaintiff's parent or affiliate.  (*See* RJN at Ex. N (Dckt No. 69-14 at pp. 1194-1196)).  With respect to third party witnesses, it may be true that the parties have more limited access in Germany.  However, the most crucial witnesses are the party witnesses – and all of the Foreign Defendants would be available in Germany.  Presumably, Plaintiff would make all of its own employees and those of its parent and affiliates, available as well.  (*See* Terzian Decl. at ¶ 1) (noting that Mr. Terzian is an employee of Activision Blizzard, Inc., the parent of Plaintiff.).

**b.**     *The Forum's Convenience*

Despite Plaintiff's argument, Germany is a more convenient forum than the United States.  While it is true that the burdens of travel go both way, the burden weighs far heavier on the individual Foreign Defendants than it does on a multi-billion dollar corporation like Plaintiff.

**c.**     *Access to Evidence*

Plaintiff does not dispute that the evidence is in Germany. It simply states that it is easy to transmit digital evidence. (Opposition at p. 30).  At best, this argument goes both ways.

**d.**     *Whether Unwilling Witnesses Can Be Compelled to Testify*

Plaintiff argues that U.S.-based witnesses cannot be compelled to testify in German court.  Again, this argument goes both ways – Plaintiff does not contend that German-based witnesses will be able be compelled to testify in U.S. court. (Opposition at p. 30).

**e.**     *The Costs of Bringing Witnesses to Trial*

Plaintiff ignores the costs or bringing witnesses to trial – other than to dismiss it as a non-issue for the Foreign Defendants. (Opposition at pp. 26-27).

//

- 22 -

### f.     *The Enforceability of Judgement*

Plaintiff does not dispute that it would be easier for Plaintiff to enforce a German judgment (as opposed to a U.S. judgment) against the Foreign Defendants in Germany, where all remaining Foreign Defendants are citizens, than it would be in the United States. (Fedtke Decl. at Ex. C (Expert Report) at pp. 13-14).  Instead, Plaintiff argues that it could enforce a U.S. judgment in Germany but that a German judgment would be unenforceable in the U.S.   (Opposition at p. 30). However, Plaintiff's position is not fully supported by its own German lawyer.  Plaintiff's lawyer simply states that the German lawsuit – as currently pled – could not be enforced in the US because it deals with German law.   (Krueger Decl. ¶ 15). However, if Plaintiff pled U.S. claims, then ostensibly such a judgment would be enforceable. (*See* Krueger Decl. ¶ 14 (noting that it is possible to plead US claims in Germany – it is just expensive and time consuming)).

### g.     *Other Practical Problems Making the Case Easy, Expeditious and Inexpensive*

Plaintiff argues that litigating in Germany would be more costly than litigating in the US.  (Opposition at p. 31). However, Plaintiff's German lawyer's declaration which purports to estimate a $3.8 million cost has no basis on its face.  (Krueger Decl. at ¶ 20).  He simply spits out numbers without any explanation of what the numbers were based on or how they were calculated.  (*Id.*).  As such, this evidence may be disregarded as lacking foundation.

### ii.     *The Public Interest*

### a.     *The Local Interest*

While California may have some interest in adjudicating a dispute based on the residency of the Plaintiff, the fact remains that all of the remaining Foreign Defendants are German and none are alleged to have committed any acts within the United States.

- 23 -

1

                *b.*     *Familiarity With Governing Law*

2          With respect to the familiarity with governing law, it is true that if the Plaintiff

3    chose to bring US law claims in Germany, it would require the German court to

4    interpret US law.  (Fedtke Decl. at p. 13 (Dckt. No. 68-5 at p. 908)). But that is

5    something the German court is in fact equipped to do, just as U.S. courts are equipped

6    to interpret German law if needed.  (*See* FRCP 44.1).

7                  *c.*     *Burden on Local Courts and Juries*

8          Plaintiff's protestations to the contrary, this case is not a simple slip and fall.

9    With over twenty (20) named Defendants, this case would be burdensome on the

10   courts.  Dismissing the Foreign Defendants will relieve some of that burden.

11                *d.*     *Court Congestion*

12         It is beyond serious dispute that the Central District is congested.  Reducing

13  the scope of the U.S. litigation by relieving it of the Foreign Defendants could only

14  help relieve such congestion.

15               *e.*     *The Costs of Resolving a Dispute Unrelated to this*

16                   *Forum*

17       Plaintiff and Foreign Defendants have a difference of opinion of how related

18  this dispute is to the forum.  However, the fact that Plaintiff threatened suit in

19  Germany, and then chose to have its affiliate actually file suit in Germany more than

20  two years prior to Plaintiff initiating a U.S. lawsuit, tends to show that the *Activision*

21  companies, as controlled by their parent Activision Blizzard, Inc., agree that

22  Germany is the proper forum as it is the location where the alleged conduct actually

23  occurred and it is where the remaining Foreign Defendants are located.  Given the

24  above, it makes sense to let the German lawsuit proceed unimpeded by a new

25  American lawsuit, rather than to incur additional costs in the Central District.

26     **C.**    **This Case Should be Dismissed Under International Comity**

27         In addition to lack of personal jurisdiction and *forum non conveniens*,

28  **this case should be dismissed in favor of the German Lawsuit that Plaintiff's**

- 24 -

**affiliate voluntarily initiated approximately three (3) years ago against Engineowning Software UG and Valentin Rick.**  Because the events underlying Plaintiff's claims occurred in Germany and were alleged to have been conducted by a German company and primarily by German citizens, and because Germany is an adequate alternative forum, the Court should dismiss this action on international comity grounds. Plaintiff claims that the German litigation is not "parallel" but cites no reason for its assertion.  Activision Europe's prosecution is clearly being driven by the same conduct that Plaintiff seeks to punish and deter in US courts.  The proof? Plaintiff originally sent two of the Foreign Defendants a draft complaint in Germany before switching the plaintiff to Activision Europe prior to filing.  (Suppl. Kompa Decl. at ¶ 4).

Perhaps sensing the weakness of its arguments (or on the other hand, being overconfident with its two cited cases on the subject), Plaintiff does not bother going through any of the comity analysis except through a footnote and instead largely rests upon its argument that there are no "exceptional circumstances" in this case, citing a the Second Circuit case,  *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174 (2d Cir. 2018).  (Opposition at p. 33).

First, the *Leopard Marine* case does not help Plaintiff's cause in any significant way.  It is a Second Circuit case, not binding on this Court, and was simply a review under an abuse of discretion standard, from a lower court's ruling that refrained from abstaining from dismissing a case on comity grounds.  *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 189 (2d Cir. 2018). ("Easy Street contends that the district court erred in denying its motion to dismiss or stay the case in deference to the Panamanian proceedings on grounds of international comity. We review a district court's decision to extend or deny comity to a foreign proceeding for abuse of discretion.").  The Court applied Second Circuit precedent – which it admits is often amorphous and fuzzy – and found that the district court did not abuse its discretion. *Id*. at 190 ("While the doctrine can be stated clearly in the abstract, in practice we

1  have described its boundaries as 'amorphous' and 'fuzzy.'").

2      Moreover, *Leopard Marine* is off point because the Ninth Circuit's well-

3  developed precedent is different from that of the Second Circuit, which apparently

4  Plaintiff belatedly realized, and mentioned passingly in a footnote.  (Opposition at p.

5  34, n. 5).   Under Ninth Circuit precedent, Plaintiff's comity analysis completely

6  ignores the interests of Germany and the existence of Germany as an adequate

7  alternative forum.  This is a fairly large oversight, since there are only three major

8  factors in the analysis under Ninth Circuit precedent: the strength of U.S. interests,

9  the strength of foreign government's interests, and the adequacy of the forum.

10  *Mujica v. Airscan Inc.*, 771 F.3d 580 (9th Cir. 2014).  Given this, Foreign Defendants

11  will take the last two points of the strength of German interests and the adequacy of

12  the alternative forum as conceded by Plaintiff and respond to the five points Plaintiff

13  did make in its argument regarding strength of U.S. interests. (Opposition at p. 34 n.

14  5); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174,

15  178 (D.D.C. 2002) ("…a court may treat those arguments that the plaintiff failed to

16  address as conceded.").

17      Plaintiff makes the following contentions in his footnote:

18  • The conduct at issue in this lawsuit took place in the U.S., where the cheats

19     were distributed, the Activision servers were improperly accessed, and

20     Activision's contracts were breached;

21  • Activision and several of the defendants are U.S. residents;

22  • the conduct at issue targeted a U.S. company and U.S. users;

23  • this lawsuit will not impact any U.S. foreign policy interests; and

24  • there is a strong public policy in favor of protecting U.S. companies form

25     misconduct by foreign actors.

26  (*Id.*).  Plaintiff did not cite any allegations in the FAC, any evidence in its filings, or

27  any caselaw to support these contentions.  (*Id.*).  The Foreign Defendants respond as

28  follows:

- The conduct at issue – that of the Foreign Defendants – was not in fact alleged to have taken place in the U.S.  (*See generally*, FAC). At best, Plaintiff can argue that it alleged the effects of some un-named Defendants were felt in the Untied States. (*Id*.).

- Although Activision is a U.S. resident and Activision added other U.S. residents as Defendants in the FAC, the majority of the parties are foreign – including all of the Foreign Defendants. (*See generally*, FAC).

- The FAC never alleges that the Foreign Defendants as individuals specifically targeted a U.S. Company or users. (*See generally*, FAC).  At best, the FAC solely alleges that un-named Defendants in general targeted a U.S. Company or users. (*Id*.).

- The lawsuit could impact relations with Germany insofar as the U.S. asserts jurisdiction over German residents for conduct which occurred entirely in Germany. Germany has an interest in protecting its citizens from over-expansive U.S. jurisdiction.

- While there may be a public policy in favor of protecting U.S. companies from bad conduct by foreign actors, that policy is less so when the entirety of the conduct of foreign actors occurs abroad.  Moreover, there is also a public policy against unrestricted jurisdiction of U.S. courts.

Overall, the Ninth Circuit comity analysis weighs in favor of dismissal.  The conduct at issue is already being litigated in Germany.  The Court should allow that to proceed without the duplication of efforts a parallel U.S. litigation would entail. Given the arguments presented and those effectively conceded by Plaintiff, it would not be an abuse of discretion to dismiss the Foreign Defendants from the case on the ground of comity. *See Hopkins v. Women's Div.,* 238 F. Supp. 2d 174 (D.D.C. 2002).

//

**D.     Plaintiff's Claims Should be Dismissed for Failure to State a Particularized Claim**

**1.     *Activision makes pure legal conclusions as to any individual defendant.***

A 12(b)(6) motion is proper where the facts as alleged in the pleading fail to state a claim. Fed. R. Civ. P. 12(b)(6). Rule 8 requires a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In its Opposition, Plaintiff confuses brevity for ambiguity, opting for broad unsupported legal conclusions rather than pleading allegations about the individual Defendants upon which it bases its claims.  Plaintiff's vague and conclusory pleading violates Rule 8 and therefore all claims should be dismissed.

"*Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions . . . that plausibly give rise to an entitlement to relief[.]" *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). "The plausibility of a pleading thus derives from its well-pleaded factual allegations." *Id*.; *Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 995–97 (9th Cir. 2014) (". . . plaintiffs must include sufficient factual enhancement to cross the line between possibility and plausibility.").

As stated in Defendants' original motion, Plaintiff's FAC lacks key factual allegations as required by Rule 8.  Plaintiff endeavors to satisfy the pleading standard by making general allegations of involvement concerning Defendants. However, Plaintiff does not allege any particular act to any particular Defendant, making it impossible to decipher who is being accused of what. Instead, Plaintiff makes a number of vague allegations that are merely conclusory. In paragraphs 17 through 45 of the FAC, Plaintiff attempts to superficially connect all Defendants with EO or the EO website by stating that all Defendants were involved in some way, whether through marketing, distributing, sales, or administration. Plaintiff uses these catch-

all terms to broadly allege involvement with the EO website, yet doesn't allege anything in particular as to each individual Defendant – let alone Foreign Defendants. Plaintiff merely states that all Defendants were involved with EO or the EO website in some capacity.

Plaintiff attempts to support its pleading strategy by citing to *Parity Networks, LLC v. Moxa Inc.* – claiming that Defendants in this case are "similarly situated," and therefore "group pleading" is permissible. (Opposition at p. 34). In *Parity*, Plaintiff conflates two defendants – Moxa Americas Inc. and Moxa Inc. – alleging that "Moxa Americas and Moxa Inc. worked together and thereby jointly infringed on Parity's patents." *Parity Networks, LLC v. Moxa Inc.*, 2020 WL 6064636, at *3 (C.D. Cal. Sept. 11, 2020). The Court found that this type of group pleading is permissible as each corporation was "similarly situated." *See id.* Yet in *Parity*, the Plaintiff alleges that "Moxa Americas Inc. operates as a sales arm of Moxa Inc. within the United States, using selling, offering for sale and practicing patented methods of the Patents-in-Suit." *Id.* Moxa Americas Inc. and Moxa Inc. are affiliate companies who coordinate the importation of the allegedly infringing products. *Id.* The difference here is that the *Parity* Plaintiff made clear how the Defendants acted in concert with regard to distributing the infringing products. *Id.* Further, as affiliated corporations, with one acting as a "sales arm" of the other, "similarly situated" is a fitting description.

The circumstances in the case at bar are distinct from those in *Parity*. On its face, *Parity* involves only corporate defendants – not a combination of corporate and individual defendants, as is the case here. Plaintiff has not made any specific factual assertions against any particular Defendant. If anything, Plaintiff has highlighted that each Defendant is **not** similarly situated by summarily describing a generally hypothesized role for each named Defendant. (FAC at ¶¶ 17-45). Plaintiff fails to allege factual details against any individualized Defendant as to how their hypothesized role subjects them to liability under each specific cause of action.

Rather, Plaintiff concludes that any alleged tie to EO or the EO Website it can come up with is enough detail to "give fair notice of the claim being asserted and the grounds upon which it rests." *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) (internal quotations omitted) (citation omitted) (finding that "[a] complaint that lumps together thirteen 'individual defendants,' where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants.").

Plaintiff relies on caselaw where the "Defendants are all related corporate entities, there are no individual defendants, and all allegations against the . . . Defendants can reasonably be understood to be against each . . . defendant." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 9763371, at *6 (N.D. Cal. Feb. 8, 2021) (finding that group pleading is permissible because "the Farasis Defendants are all related corporate entities, there are no individual defendants, and all allegations against the Farasis Defendants can reasonably be understood to be against each Farasis defendant."); *see also In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1059 (S.D. Cal. 2017) (the court finds that the corporate conspiracy alleged by Plaintiff's clearly included the involvement of the "Parent Defendants" – referring to Defendants TUG and Dongwon Industries Co., Ltd.); *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 1585702, at *5–6 (C.D. Cal. Apr. 4, 2022) (the court finds that "ConsumerDirect's allegations delineate different roles different roles for the different [corporate] defendants."). Each of these cases are easily distinguishable from the circumstances at hand. In each of the above-cited cases, the Plaintiff makes collective allegations against corporate entities working in concert where it can reasonably be understood that each allegation is against each corporate entity. None of these cases hold that group pleading is appropriate in circumstances of collective allegations against both corporate and individual defendants.

Plaintiff cites *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, to illustrate that this court has found group pleading to be permissible. (Opposition at pp. 35-36). However, the *Centaur* Court found that the plaintiffs did not rely on group pleading, and therefore did not adjudicate whether group pleading was permissible in this setting. *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 793 F. Supp. 2d 1138, 1145 (C.D. Cal. 2011) ("The Court agrees with Defendant Sambol that group pleading is not permissible, but concludes that Plaintiffs are not relying on group pleading here."). This court found that the *Centaur* Plaintiffs included "numerous detailed allegations of e-mails, meetings, and other evidence showing Sieracki and Sambol were acutely aware that Countrywide was violating its own underwriting guidelines, improperly characterizing its 'prime loans' and that its purportedly 'high quality investment portfolio' in fact had a substantial risk of 'unexpected losses.'" *Id*. at 1146.  In their FAC, Plaintiff includes no such detail as to the individual Defendants. Plaintiff merely alleges an affiliate role with EO or the EO Website to draw the conclusion that each individual Defendant was involved in some way with the Cheating Software. (FAC at ¶ 17-45).

*ConsumerDirect, Inc. v. Pentius, LLC*, is similarly distinguishable from the case at hand. The Court points to a number of different allegations which delineates the different roles for the different defendants. *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 1585702, at *6 (C.D. Cal. Apr. 4, 2022). The Court concludes that ConsumerDirect, Inc. does not engage in group pleading, citing:

> As to Pentius, the FAC alleges . . . : "Pentius [ ] created financial services websites using infringing marks and domain names for the specific purpose of unfairly competing with Plaintiff"; "Pentius and Array also pre-create various turn-key cybersquatting websites, including copycat websites of nationally known and trademarked brands, and market these copycat websites to Plaintiff's partners such as CreditLife"; "Pentius has set up a network of shell companies, including the Alter Ego Defendants, to register these copycat websites in an attempt to hide its and Array's involvement"; "Pentius directly manages

- 31 -

over 450 of these copycat websites"; and "Pentius and Array falsely told partners of Plaintiff that Plaintiff provides consumers with outdated credit reports that are up to two weeks old, in an attempt to divert the partners' business from Plaintiff to Pentius and Array's websites" *Id*.

Note, the Court does not approve of group pleading in *ConsumerDirect*, as the Opposition would lead this Court to believe. (Opposition at p. 34); *ConsumerDirect, Inc.*, 2022 WL 1585702, at *6 ("Accordingly, the FAC does not group plead and thus meets Rule 8(a)'s notice pleading standard."). Activision's FAC does not include factual details as to the individual defendants that would allow the Court to conclude plausible claims against each individual Defendant. Instead, Plaintiff relies on the individual Defendant's generalized association with EO or the EO website to conclude liability. (*See* FAC at ¶¶ 17-18, 20-22, 29-31, 43). There are no tangible supporting details or facts.

"[G]rouping corporate defendants and individual defendants does not provide each defendant with adequate notice of the claims against it." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 9763371, at *5 (N.D. Cal. Feb. 8, 2021); *see also Yu v. Design Learned, Inc*., No. 15-CV-05345-LB, 2016 WL 1621704, at *1 (N.D. Cal. Apr. 22, 2016) (holding that Plaintiff failed to put defendants on sufficient notice of the allegations against them, when they pled allegations against seven defendants, which included a corporation and individual employees.); *PLS-Pac. Laser Sys. v. TLZ Inc.*, No. C-06-04585 RMW, 2007 WL 2022020, at *11 (N.D. Cal. July 9, 2007) (holding that, regardless of the fact that the "the same underlying facts and theories of infringement apply to all the defendants[,]" Plaintiff failed "to give each named defendant sufficient notice of the particular claims and grounds for the claims against them. Although there may be some overlap in the alleged conduct upon which claims against the different corporate defendants and individual defendants rest, the parties do not dispute that each corporate defendant and the individual defendants have

different roles within defendants' corporate structure."). Plaintiff's statements with regard to the individual defendants are conclusory and unsupported by facts. (*See* FAC at ¶¶ 17-18, 20-22, 29-31, 43). Plaintiff clearly relies on a group pleading strategy, and has failed to give Defendant's fair notice of the claims against them.

### E.    The RICO Counts VI and VII Fail to State a Claim

Plaintiff alleges that Defendant only sets forth one argument regarding Plaintiff's failure to adequately plead a RICO claim – "Defendants' only argument – [is] that Activision fails to 'specify any particular act performed by any particular defendant[.]'" (Opposition at p. 36). However, Plaintiff fails to address each facet of Defendant's argument. Defendant makes the following assertions that remain ignored and unaddressed by Plaintiff:

- "There is no allegation pleading the time, time, place and manner of each act of fraud – let alone the role of each defendant." (Motion at p. 44).

- "[T]he FAC does not distinguish between any of the Defendants with respect to their alleged acts." (Motion at p. 44).

- "Second, there are no specific dates pled." (Motion at p. 45).

- "Third, reliance is an essential element of fraud and Plaintiff has failed to plead that Plaintiff relied upon the Foreign Defendants alleged misrepresentations." (Motion at p. 45).

- "Fourth, Plaintiff's RICO civil conspiracy cause of action necessarily fails if the underlying RICO cause of action fails." (Motion at p. 45).

Plaintiff does not dispute Defendant's contention that "[t]here is no allegation pleading the time, time, place and manner of each act of fraud . . . ." (Motion at p. 44). The Ninth Circuit has long applied the "particularity requirements of rule 9(b) to RICO claims." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (*citing Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988)). "Rule 9(b) requires that the pleader state the time, place, and specific content

- 33 -

of the false representations as well as the identities of the parties to the misrepresentation." *Id*. The *Moore* Court does not even find the identification of a year to be sufficiently particular – stating that plaintiff's RICO claim does not adequately "specify either the time or the place of the alleged wrongful conduct other than to say: 'Commencing on or about October, 1982, and through and including March, 1983, within the Central District of California, and elsewhere, the defendants, and each of them, devised . . . .'" *Id*. "Allegations of fraud under section 1962(c) 'must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme.'" *Id*. Plaintiff does not acknowledge or address the fact that it has failed to plead its RICO allegations with particularity as required by the Ninth Circuit. (*See* Opposition at pp. 36-37). Nor does Plaintiff even acknowledge Defendants' contention that Plaintiff failed to meet the pleading standard as set out by the Ninth Circuit. *Id*. Plaintiff merely states that they did, in fact, specify particular acts to particular Defendants, (Opposition at p. 36), which is inaccurate. (*See generally*, FAC at ¶¶ 142-157).

Although Plaintiff has already failed the Rule 9(b) pleading standard as defined by the Ninth Circuit, it bears repeating that "none of the RICO allegations identifies the role of the individual defendants in the alleged fraudulent scheme." *Moore*, 885 F.2d at 541; (*see generally,* FAC at ¶¶ 142-157). Plaintiff attributes each and every RICO allegation to each and every Defendant and fails to identify the role of each defendant in each alleged scheme. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th Cir. 1991) ("Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme."). Rule 9(b)'s heightened pleading requirements demand that Plaintiffs plead sufficient facts to allege liability – Plaintiff simply makes a cursory allegation that all "Defendants together form an association-in-fact enterprise in the pursuit of a common and continuing purpose . . . ." (FAC at ¶ 146). However, "Plaintiff does not allege how

each individual Defendant is engaged in the enterprise[.]" *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1254 (N.D. Cal. 2014) (finding that Plaintiff failed to "meet his burden to allege with particularity the factual circumstances of the predicate acts giving rise to his claimed RICO violation."). Lumping every Defendant together in each RICO allegation, while not alleging which Defendant engaged in which behaviors giving rise to Plaintiff's RICO claim, is not sufficient to create liability for all Defendants. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ("Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant.") (emphasis in original); *Ward v. Crow Vote LLC*, No. SACV211110FWSDFMX, 2022 WL 17887530, at *16 (C.D. Cal. Oct. 7, 2022).

Plaintiff similarly fails to address Defendant's assertion that "Plaintiff has failed to plead that Plaintiff relied upon the Foreign Defendant's alleged misrepresentations." (Motion at p. 45; *see generally* Opposition at p. 36-37). Because the Complaint "fails to adequately plead that Plaintiff relied on any of Defendants' alleged misrepresentations to his detriment[,]" Plaintiff's RICO claim fails. *Vaughn v. Wells Fargo Bank, N.A.*, No. CV1205453DMGJEMX, 2013 WL 12138850, at *4 (C.D. Cal. May 15, 2013) (finding that Plaintiff's failed to state a claim under RICO because Plaintiff "failed to state facts that Plaintiff relied on any misrepresentation by Defendants to his detriment."); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1038 (C.D. Cal. 2011) ("Having failed to allege reliance in any form, these RICO claims are insufficiently pleaded."). Nowhere in Plaintiff's Complaint does Plaintiff assert that they relied on any particular misrepresentation by any particular Defendant. (*See* FAC at ¶¶ 142-165). Plaintiff's Opposition completely ignores all of Defendant's offered precedent in favor of insisting that Plaintiff has satisfied the pleading requirement of particularity, (Opposition at p. 37), all the while disregarding the actual pleading requirements. Therefore, Plaintiff's RICO claim fails as pled.

**F.     The False Designation of Origin (Count II) Fails to State a Claim**

Plaintiff's Opposition ignores Defendant's assertion that Plaintiff made contradictory statements in its FAC. (Opposition at pp. 37-38); *Hopkins v. Women's Div.*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *see* cases cited supra at p. 27.   Nowhere in its Opposition does Plaintiff address the fact that it states that **Defendants are offering a product that tricks Plaintiff – not one that tricks consumers**. (FAC at ¶ 88 (describing a Spoofer that hides the player from "anti-cheat" measures taken by Plaintiff).)  In fact, Plaintiff describes in detail how "counterfeit computer signatures enable users who have been denied access to the COD Game servers to fraudulently obtain unauthorized access to those servers." *Id*.  By Plaintiff's own admission, users of the Cheating Software and/or Spoofer "circumvent and overcome HWID bans by generating counterfeit digital computer access devices or 'signatures.'" *Id*.  It is implausible if not impossible that users of the alleged "Cheating Software" or "EO Spoofer" would believe that these products would originate from Activision, especially when these products are allegedly used to circumvent a specific user's denied access *by Activision*, to the COD games.

In Plaintiff's own words, "the likelihood of confusion is a fact-specific inquiry best left for decision after discovery and [a]t the pleading stage, a plaintiff simply must **plausibly allege**, in a manner sufficient under the *Iqbal*/*Twombly* standard, a likelihood of confusion between the marks." (Opposition at p. 38) (*citing Charisma Brands, LLC v. AMDL Collections, Inc.*, 2019 WL 6331399, at *4 (C.D. Cal. Sept. 3, 2019) (internal quotations omitted)). However, Plaintiff has failed to plausibly allege a likelihood of confusion because it is impossible that any consumer allegedly purchasing a "Cheating Software" or "EO Spoofer" for a videogame would be confused into thinking that such "Cheating Software" or "Spoofer" is authorized by the videogame company it is purportedly cheating or hiding from. While Plaintiff

may not be required to *prove* likelihood of confusion at the pleading stage, Plaintiff is required to make a plausible allegation of likelihood of confusion. *See Charisma Brands*, 2019 WL 6331399 at *4. A likelihood of confusion is not plausible in these circumstances. (*See* FAC at ¶ 88).

### G.   Failure to State a Claim under the CFAA

Foreign Defendants withdraw their specific contention in their Motion at pp. 46-47 that Plaintiff has failed to state a claim under the Computer Fraud and Abuse statute, but maintain their remaining contentions stand as discussed.

### H.   The Computer Fraud and Abuse Act Does Not Apply Extraterritorially

First, Plaintiff has not provided any binding precedent on this Court to mandate that this Court find the CFAA applies extraterritorially. Plaintiff relies on *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434 (N.D. Cal. 2018) to persuade this Court that the CFAA applies extraterritorially. Yet this case is noticeably distinguishable from the circumstances at hand. Some of the Plaintiffs attempting to invoke the CFAA in *In re Apple*, are non-U.S. Plaintiffs. The *In re Apple* Court is therefore analyzing whether non-U.S. Plaintiffs can bring claims in a U.S. Court under the CFAA. *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 448 (N.D. Cal. 2018) ("In any event, the Court will address Apple's argument that the CFAA does not apply extraterritorially, Mot. at 14, as it provides an independent justification for the non-U.S. Plaintiffs to bring their CFAA claims."). The Court determines that the CFAA covers "computer[s] located outside the United States that [are] used in a manner that affects interstate or foreign commerce or communication of the United States." *Id.*; 18 U.S.C. § 1030(e)(2)(B). However, this case deals with foreign plaintiffs' use of Apple products, and the degradation of such products after certain iOS updates. *See id*. at 440-442 ("These lawsuits generally alleged that Apple's conduct violated federal and state computer-intrusion laws, as well as state consumer-protection laws and common law."). The *In re Apple* Court found that

- 37 -

because these products were "protected computers," they therefore came under the purview of the CFAA.  However, "Activision maintains U.S.-located game servers." (FAC at ¶ 174). *In re Apple* is not applicable because Plaintiff's servers are not located outside of the United States. In its Opposition, Plaintiff is attempting to twist the *In re Apple* disposition to fit the circumstances at bar, when in fact they are easily distinguishable.  The CFAA has still never been extended to apply to a foreign defendant's extraterritorial conduct in private rights of action as far as Foreign Defendants' counsel can tell. It has simply been used in one case in this circuit by foreign plaintiffs against a U.S. based company, in relation to the products that were purchased from that U.S. company. Plaintiff failed to point to any analogous case in which the CFAA applies to the foreign conduct of foreign defendants, and therefore, on the facts of this case, it is only appropriate for the court to presume that the CFAA meant to solely apply within the confines of the United States, as the there are no "protected computer[s]" outside of the United States involved here. *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (It is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'") (*quoting Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)).

### I.     Plaintiff Does Not Allege Why the Lanham Act Should Apply Extraterritorially in this Case

Defendants acknowledge that in certain circumstances, the Lanham Act has been found to apply extraterritorially. In 15 U.S.C. § 1127, Congress directed that the Lanham Act applies to "all commerce which may lawfully be regulated by Congress." "Whether this provision sweeps foreign activities into the Act's proscriptive reach depends on a three-part test we originally applied to the Sherman Act in *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir. 1976)." *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016).

Under *Timberlane*, the Lanham Act applies extraterritorially if: (1) the alleged violations ... create some effect on American foreign commerce; (2) the effect [is] sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Id*. (*citing Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 613 (9th Cir. 2010).

Plaintiff fails to acknowledge that the Lanham Act does not apply extraterritorially in all circumstances. (Opposition at p. 41). Further, Plaintiff relies on *Trader Joe's Co. v. Hallatt* to support the proposition that the Lanham Act is always applied extraterritorially. However, in *Trader Joe's*, the Defendant was entering the United States to purchase Trader Joe's products and reselling them in Canada. *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 971-72 (9th Cir. 2016) (finding that "[t]his domestic economic activity weighs in favor of applying the Lanham Act to Hallatt's conduct.).

Further, the Ninth Circuit has declined to extend the Lanham Act universally where "all relevant acts occurred abroad." *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 613 (9th Cir. 2010). Plaintiff has not argued that the Lanham Act should apply extraterritorially in this case, despite the fact that all relevant acts in this case occurred overseas. (*See* FAC at ¶¶ 114-120).

## J.   Plaintiff Does Not Allege Why the RICO Claims Should Apply Extraterritorially

Defendants acknowledge that in certain circumstances, RICO has been found to apply to some foreign racketeering activity. *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 340 (2016). However, this application "subject to the important limitation that RICO covers foreign predicate offenses only to the extent that the underlying predicate statutes are extraterritorial." *Id*. at 342. "RICO's extraterritorial effect is pegged to the extraterritoriality judgments Congress has made in the predicate statutes, often by providing precise instructions as to when those statutes apply to

- 39 -

foreign conduct." *Id.* at 344; *see also United States v. Bondarenko*, No. 217CR306JCMVCF, 2019 WL 2450923, at *8 (D. Nev. June 12, 2019) ("First, courts ask whether the statute gives clear, affirmative indication that it applies extraterritorially. Second, if the statute does not apply extraterritorially, then courts must determine whether the case involves a domestic application of the statute by looking at conduct relevant to the statute's focus.") (*citing RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016) (internal citations and quotations omitted).

The Ninth Circuit has not established that Trafficking in and Use of Counterfeit Access Devices ("Access Device Statute"), 18 U.S.C. § 1029 or Wire Fraud, 18 U.S.C. § 1343, applies extraterritorially. In fact, Courts within this Circuit have said the opposite. *See Bondarenko*, 2019 WL 2450923, at *8 ("The respective statutes for the predicate acts do not contain any indication that they apply extraterritorially[,]" referring to 18 U.S.C. § 1029 and 18 U.S.C. § 1343). Plaintiff has failed to allege under the test laid out in *Nabisco* that its RICO claims should be applied extraterritorially.

### K.    Plaintiff's Copyright Claims Should Not Apply Extraterritorially

Plaintiff continues to attempt to apply US law to Foreign Defendant's whose alleged conduct that has taken place purely overseas. Plaintiff attempts to bring Defendants under the jurisdiction of the Copyright Act by implying that they are importing infringing material into the United States by virtue of the alleged "Cheating Software" being available for purchase on the Internet. If foreign companies selling infringing material online automatically subjected them to liability under U.S. Copyright law, jurisdictional limitations might all but cease to exist. *See Doe v. Geller*, 533 F. Supp. 2d 996, 1003 (N.D. Cal. 2008) ("United States copyright laws do not apply extraterritorially."). "In general, United States copyright laws do not have extraterritorial effect, and therefore, infringing actions that take place entirely outside the United States are not actionable." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1091 (9th Cir. 1994) (citation omitted). Plaintiff cites

unpersuasive and irrelevant caselaw pertaining to the extraterritoriality of the Securities Exchanges Act and weapons trafficking. (Opposition at p. 42) ("Moreover, courts consistently hold that where similar statutorily proscribed trafficking or sales activity is allegedly domestic, there is no extraterritoriality problem.") (*citing Morrison v. Nat'l Austrl. Bank Ltd.*, 561 U.S. 247, 247 (2010) ("The Exchange Act's focus is not on the place where the deception originated, but on purchases and sales of securities in the United States.")).  However, analysis of extraterritoriality as to the Securities Exchange Act and weapons trafficking is irrelevant to this action – this case is not about conduct related to guns or securities – it's about conduct related to video games.

## L.   Plaintiff's California Common Law Claims do not have Extraterritorial Application

Plaintiff's common law claims have no extraterritorial application. Plaintiff fails to address Defendant's cited caselaw defining the inquiry of whether California state law should be applied extraterritorially. (Opposition at p. 43). Plaintiff has cited no authority supporting the extraterritorial application of its common law claims of intentional interference with contractual relations and unfair competition. "Without authority from the California courts or the California legislature, the Court will not presume that the California common law is meant to have extraterritorial effect." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc*., No. 15-CV-02177-SI, 2017 WL 1436044, at *7 (N.D. Cal. Apr. 24, 2017) (dismissing claims for unfair competition and intentional interference with prospective economic advantage, stating "Plaintiff cites no authority regarding the California common law's extraterritorial application."). California courts have numerous times declined to apply unfair competition laws and contractual torts extraterritorially. *See id*.; *see also Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207, 254 P.3d 237, 248 (2011) ( "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the

presumption against extraterritoriality applies to the UCL in full force."); *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 223 (1999) (holding that the unfair competition law was inapplicable to injuries "caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California").

Plaintiff merely cites *Healthcare Ally Mgmt. of California, LLC v. Med. Mut. of Ohio*, 2015 WL 12746216 (C.D. Cal. Jan. 26, 2015), where the "defendant carried out tortious activity in California while located in Ohio." (Opposition at p. 43). California law being applied to an Ohio defendant has no bearing on the extraterritorial applications of California law. In fact, nowhere in *Healthcare Ally Mgmt. of California, LLC v. Med. Mut. of Ohio* is the word "extraterritorial" even mentioned.

**M.  Plaintiff is Not Entitled to Jurisdictional Discovery**

Any jurisdictional discovery conducted by Plaintiff would be nothing more than a fishing expedition, as the allegations as pled are insufficient to establish that the Defendants would be subject to the specific personal jurisdiction of this Court. The Mayer Declaration lists a number of generalized topics he "believe[s] . . . will reveal additional facts" to confirm that jurisdiction and venue are appropriate. (Mayer Decl. at ¶ 103); s*ee Butcher's Union Local No. 498 v. SDC Inv.*, Inc., 788 F.2d 535, 540–41 (9th Cir. 1986) (rejecting jurisdictional discovery because plaintiffs "state only that they 'believe' that discovery will enable them to demonstrate sufficient" contacts, and "speculation does not satisfy" the required showing). Plaintiff's wish to conduct discovery is not sufficient to support a grant of limited jurisdictional discovery in the face of "specific denials made by the Defendants" – such that they live in Europe, have never traveled to the United States as adults, and have not conducted business in the United States. *See Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 586 (N.D. Cal. 2020).

If the Court in its discretion decides to grant Plaintiff limited jurisdictional discovery, Defendants request that this discovery be limited only where "facts bearing on the question of jurisdiction are controverted." *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). It is clear from the Mayer Declaration that Plaintiff intends to use jurisdictional discovery as a basis to establish civil liability. (*See* Mayer Decl. at ¶ 103). Mr. Mayer admits he would take discovery on topics such as "(1) EO's corporate, organizational, and ownership structure and the specific role and involvement of each Defendant in the EO venture. . . . (3) EO's distribution and accounting of revenue to each of Defendants, and the amount received by each Defendant in connection with EO and its Cheats. . . . (4) EO's marketing and promotional activities, including any keyword advertising and search engine optimization tactics. (5) Agreements between EO and its server hosts, payment processors, and other service providers. . . . (7) Defendants' financial condition, personal schedule, and/or ability to travel to the United States for trial." (*See id*).  None of these topics have any bearing on whether this Court has personal jurisdiction over Defendants. *Matrix Inc. v. Midthrust Imports Inc.*, No. CV1301278GAFSPX, 2013 WL 12132031, at *4 (C.D. Cal. May 2, 2013) ("[D]iscovery should be limited to issues pertinent to the exercise of specific jurisdiction[.]").  Defendants request that any grant of jurisdictional discovery be limited to inquiry into where the Defendants are located and where the alleged conduct took place.[4]

//

---

[4] If the Court were to dismiss the Foreign Defendants on the basis of *forum non conveniens* or comity, any such request for jurisdictional discovery would be moot. *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 518 (S.D.N.Y. 2006), aff'd, 343 F. App'x 623 (2d Cir. 2009) ("[P]reemptive dismissal of a suit on the basis of *forum non conveniens* prior to the court's confirmation of personal or subject matter jurisdiction is justified.").

**IV.   CONCLUSION**

For the reasons stated above, Foreign Defendants hereby respectfully request that the Motion be granted and that Plaintiff's FAC be dismissed without leave to amend.

DATED:  March 10, 2023                    Respectfully submitted,

ELLIOT GIPSON PC
Elliot B. Gipson
Brianna N. Logan

By_____/s/ Elliot B. Gipson_____
            Elliot B. Gipson

Attorneys for Defendants EngineOwning UG, Valentin Rick, Leonard Bugla, Leon Frisch, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Classen, and Remo Loffler

- 44 -

## **CERTIFICATE OF COMPLIANCE**

I, the undersigned, counsel of record for the Foreign Defendants, certify that this Memorandum of Points and Authorities contains 13,989 words, which complies with the word limit established by stipulated court order for this Motion.

DATED:  March 10, 2023

ELLIOT GIPSON PC
Elliot B. Gipson
Brianna N. Logan

By_____/s/ Elliot B. Gipson_____
        Elliot B. Gipson

Attorneys for Defendants EngineOwning UG, Valentin Rick, Leonard Bugla, Leon Frisch, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Pascal Classen, and Remo Loffler

- 45 -