UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 22-51-MWF (JCx)                        Date: May 28, 2024
Title:    Activision Publishing, Inc. v. EngineOwning UG, et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [167]

Before the Court is Plaintiff Activision Publishing, Inc.'s Motion for Default Judgment against Defendants EngineOwning UG ("EO"), Garnatz Enterprise Ltd ("Garnatz"), Valentin Rick, Leonard Bugla, Leon Frisch, Marc-Alexander Richts, Alexander Kleeman, Leon Schlender, Bennet Huch, Ricky Szameitat, Remo Loffler, Charlie Wiest, and Pascal Classen (the "Motion"), filed April 12, 2024. (Docket No. 167). No opposition or reply was filed.

The Court has read and considered the papers on the Motion and held a hearing on **May 20, 2024**.

For the reasons set forth below, the Motion is **GRANTED**. Plaintiff has satisfied the procedural and substantive requirements for a default judgment. Plaintiff's requested relief is also reasonable. The Court therefore awards Plaintiff injunctive relief, **$14,465,600** in statutory damages, and **$292,912** in attorneys' fees.

## I.     BACKGROUND

### A.    Factual Allegations

Plaintiff initiated this action on January 4, 2022. (Complaint (Docket No. 1)). Plaintiff subsequently filed a First Amended Complaint ("FAC") on September 16, 2022. (Docket No. 27). The FAC contains the following

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-51-MWF (JCx)            **Date:** May 28, 2024
**Title:**      Activision Publishing, Inc. v. EngineOwning UG, et al.

allegations, which are accepted as true for purposes of the Motion. *See* Fed. R. Civ. P. 8(b)(6); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (internal quotation marks and citations omitted)).

       Plaintiff, a Delaware corporation, is the owner and publisher of video games, including its most popular game franchise, the *Call of Duty* series (the "COD Games"). (FAC ¶ 1). Given the popularity of the COD Games, a secondary market has emerged aimed at profiting off the sale of cheating software that confers unfair advantages to players. (*Id.* ¶ 75). Use of this type of cheating software ruins the game experience for non-cheating players, harms the reputation of the game, causes players to quit the game or turn to competing products, and as a result, has deprived Plaintiff millions of dollars. (*Id.* ¶¶ 98–99).

       Plaintiff has developed various solutions to try to address the problems posed by cheating software. For example, Plaintiff requires players to consent to the Terms of Use (the "TOU") that explicitly prohibits the use of cheating software. (*Id.* ¶ 26). Plaintiff also employs anti-cheating technology designed to detect when a player is using cheating software. (*Id*. ¶ 76). When a user is caught cheating, his or her account is banned from playing, and Plaintiff collects the player's computer hardware ID "signature" ("HWID") to monitor if that banned user is improperly accessing Plaintiff's servers under a different username or email address. (*Id.* ¶ 77).

       Defendants create, market, and distribute several software products that enable members of the public to cheat or otherwise disrupt the online experience of COD Games (the "Cheating Software"). (*Id*. ¶ 2). The Cheating Software is specifically designed to avoid detection by Plaintiff's anti-cheating technology. (*Id*. ¶ 87). Each Defendant plays a role in this illegal enterprise as follows:

- Defendants EO and Garnatz are foreign-based business entities that act as shell companies. (*Id.* ¶¶ 2, 14–15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-51-MWF (JCx)                                         Date:  May 28, 2024
Title:      Activision Publishing, Inc. v. EngineOwning UG, et al.

- Defendant Rick is the founder of EO and the "mastermind behind the venture."  (*Id.* ¶ 17).

- Defendant Leon is the co-creator/co-founder of EO along with Rick and is responsible for developing, maintaining, marketing, distributing, and selling the Cheating Software.  (*Id.* ¶ 18).

- Defendants Schlender, Huch, Richts, and Bugla are part of the "core" management team, who help run EO by administering the website, marketing the Cheating Software, providing customer support, and recruiting and supervising resellers.  (*Id.* ¶¶ 18, 20–22).

- Defendants Loffler, Kleeman, and Frisch serve as moderators and administrators of EO's website.  (*Id.* ¶¶ 29–31).

- Defendant Wiest provides technical support for the Cheating Software.  (*Id.* ¶ 34).

- Defendant Classen is an authorized reseller for the Cheating Software.  (*Id.* ¶ 43).

Based on the foregoing allegations, the FAC brings seven claims for relief: (1) violation of Section 1201 of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2); (2) violation of Section 1125 of the DMCA, 15 U.S.C. § 1125(a); (3) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (4)–(5) two violations of the Federal Civil Racketeer Influenced and Fraud Influenced ("RICO") statute, 18 U.S.C. § 1962(c)–(d); (6) intentional interference with contract under California law; and (7) unfair competition under California law.  (*Id.* ¶ 100–183).

### B.  Procedural History

On January 13, 2023, Defendants EO, Bugla, Classen, Frisch, Huch, Kleeman, Loffler, Richts, Rick, and Schlender (the "Moving Defendants") moved

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 22-51-MWF (JCx) | **Date:** May 28, 2024 |
| **Title:** Activision Publishing, Inc. v. EngineOwning UG, et al. | |

to dismiss the FAC. (Docket No. 68). On April 4, 2023, the motion to dismiss was granted with leave to amend as to the Section 1125 claim but was otherwise denied. (MTD Order (Docket No. 101) at 1–3). The MTD Order also instructed Moving Defendants to file an answer to the FAC by May 2, 2023. (*Id.* at 51).

After the Court issued the MTD Order, attorneys for the Moving Defendants indicated that there was a breakdown in communications with their clients. (Docket No. 109). The Court therefore granted counsel's request to withdraw from this matter and extended Moving Defendants' deadline to file an answer to the FAC to July 17, 2023. (Docket No. 111).

On July 4 and 5, 2023, Defendants Frisch, Richts, and Schlender each indicated their intent to proceed *pro se*. (Docket Nos. 117, 118, 119). Since then, no Defendant has appeared or defended itself in this action.

## II. DISCUSSION

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the Clerk under Rule 55(a). To determine whether a default judgment is appropriate, the Court must assess whether Plaintiff has met the jurisdictional, procedural, and substantive requirements.

### A. Jurisdiction

Before entering default judgment, courts have an "affirmative duty" to evaluate the basis for jurisdiction over the defendant, as "[a] judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Federal courts do not have personal jurisdiction over a defendant unless he has been properly served under Federal Rule of Civil Procedure 4. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-51-MWF (JCx)            **Date:** May 28, 2024
**Title:** Activision Publishing, Inc. v. EngineOwning UG, et al.

Here, the Court previously found that it had personal jurisdiction over the ten Moving Defendants under Rule 4(k)(2) based on their specified roles in the distribution of the Cheating Software to U.S. consumers. (MTD Order at 1–2). That same reasoning applies to the Defendants Garnatz, Szameitat, and Wiest, who have not appeared in this action. Moreover, as the Court previously determined when ordering the Clerk to enter default, Defendants Garnatz, Szameitat, and Wiest were properly served under Rule 4(f)(1) and 4(h)(2). (*See* Docket Nos. 151, 164).

Accordingly, the Court has personal jurisdiction over Defendants.

### B.     Procedural Requirements

Under Rule 55, the clerk must enter default judgment when a defendant has failed to plead, defend, or appear in any form. *See* Fed. R. Civ. P. 55(a). Here, the FAC was filed on September 16, 2022. (Docket No. 22). On February 6, 2024, the Clerk entered default against Defendants EO, Classen, Huch, Loffler, and Rich. (Docket Nos. 142, 143, 144, 145, 146). On February 6, 2024, the Clerk entered default against Defendants Szameitat, Wiest, Frisch, Schlender, Bugla, Richts, and Kleeman. (Docket Nos. 152, 153, 154, 155, 156, 157). Finally, on March 21, 2024, the Clerk entered default against Defendant Garnatz. (Docket No. 165). Plaintiff then properly moved for default judgment pursuant to Rule 55(b).

Additionally, the Local Rules require the party moving for default judgment to submit a declaration establishing: (a) when and against what party the default was entered; (b) the identification of the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) that notice has been served on the defaulting party, if required by Rule 55(b)(2). *See* Local Rule 55-1. Here, the Court concludes that the declarations and proofs of service provided by Plaintiff substantially complies with Rule 55 and Local Rule 55-1. (*See* Docket No. 128 ¶ 9 (Huch); Docket No. 130 ¶ 9 (Classen); Docket No. 131 ¶ 9 (Loffler); Docket No. 132 ¶ 9 (Rick);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-51-MWF (JCx)                           Date:  May 28, 2024
Title:    Activision Publishing, Inc. v. EngineOwning UG, et al.

Docket No. 136-1 ¶¶ 6 (Szameitat), 7 (Wiest); Docket No. 137 ¶ 9 (Frisch); Docket No. 138 ¶ 10 (Schlender); Docket No. 139 ¶ 9 (Bugla); Docket No. 140 ¶ 11 (Richts); Docket No. 141 ¶ 9 (Kleeman); Docket No. 162-1 ¶ 7 (Garnatz); Docket Nos. 171–181 (proofs of service)).  Moreover, Defendants Frisch, Richts, and Schlender, who indicated their intent to proceed *pro se*, received notice of the Motion as required under Rule 55(b)(2) via ECF.

Accordingly, Plaintiff has satisfied the procedural requirements for obtaining a default judgment.

### C.    Substantive Requirements

The choice as to whether a default judgment should be entered is at the sole discretion of the trial court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Ninth Circuit has instructed courts to consider seven discretionary factors before rendering a decision on motion for default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

#### 1.    Possibility of Prejudice

The first factor asks the Court to consider if prejudice to the plaintiff would occur without the default judgment, e.g., where there is no "recourse for recovery" other than default judgment.  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).  Here, Defendants have not appeared and/or failed to respond to the Complaint after the Court issued the MTD Order.  Therefore, failure to enter a default judgment will prejudice Plaintiff by effectively denying its right to judicial resolution of its claims "without other recourse for recovery."  *Elektra Ent. Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-51-MWF (JCx)            **Date:** May 28, 2024
**Title:**     Activision Publishing, Inc. v. EngineOwning UG, et al.

Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

Accordingly, the first *Eitel* factor weighs in favor of default judgment.

    **2.**     **Merits and Sufficiency**

The second and third factors require the Court to examine whether Plaintiff sufficiently alleged a claim for relief. Plaintiff seeks default judgment as to the following four claims: (1) violation of Section 1201 of DMCA, 17 U.S.C. § 1201(a)(2); (2) violation of the CFAA, 18 U.S.C. § 1030; (3) violation of RICO, 18 U.S.C. § 1962(c)–(d); and (4) intentional interference with contract under California law. (Motion at 10–15). Because Defendants' failure to answer the FAC constitutes an admission as to the allegations contained therein, the Court must accept Plaintiff's allegations as true. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

The Court concludes that Plaintiff has sufficiently alleged each claim for which it seeks default judgment as follows:

***DMCA Violation***: Under 17 U.S.C. § 1201(a)(2)(A), "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title." The Court concludes that Plaintiff's allegations that the Cheating Software was specifically designed to circumvent the COD Games' anti-cheating technology is sufficient to allege a claim under Section 1201(a)(2). (*See* FAC ¶ 87).

***CFAA Violation***: A claim for violation of the CFAA requires a plaintiff to show that a defendant (1) intentionally accessed a computer; (2) "without authorization or exceeding authorized access"; (3) "obtained information"; (4) "from any protected computer (if the conduct involved an interstate or foreign

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 22-51-MWF (JCx) | Date:  May 28, 2024 |
| Title:    Activision Publishing, Inc. v. EngineOwning UG, et al. | |

communication)"; and (5) resulted in a loss of "at least $5,000 in value." *LVRC Holdings, Inc. v. Brekka*, 581 F. 3d 1127, 1132 (9th Cir. 2009).

Here, the Complaint sufficiently alleges each of the five elements.  First, the FAC alleges that Defendants and their customers accessed Plaintiff's servers.  (*See id.* ¶ 123).  Second, the Cheating Software allows Defendants and users to exceed their authorization bypassing Plaintiff's bans on certain HWIDs.  (*See id.*).  Third, the Cheating Software allows users to "see information that is not normally available to players."  (*See id.* ¶ 2).  Fourth, Plaintiff's servers are "protected" as they are affected by or involved in interstate commerce.  *See United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (noting that "effectively all computers with Internet access" meet this requirement.).  Fifth, Plaintiff has suffered damages in excess of the $5,000 statutory minimum.  (*See id.* ¶¶ 124–125).

***RICO Violation***: To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must plead and prove the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Rule 9(b) applies to the fraudulent conduct relevant to the alleged common purpose of the enterprise and the alleged predicate acts, and thus requires a heightened showing of the circumstances of fraudulent acts.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Here, for the reasons already discussed in the MTD Order, the Court concludes that Plaintiff sufficiently alleged a claim under RICO, even under Rule 9's heightened pleading standard.  (*See* MTD Order at 42–48).

***Intentional Interference with Contractual Relations***:  The elements of a claim for intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55, 77 Cal. Rptr. 2d 709 (1998); *see also United Nat'l Maint.,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  CV 22-51-MWF (JCx) | **Date:**  May 28, 2024 |
| **Title:**     Activision Publishing, Inc. v. EngineOwning UG, et al. | |

*Inc. v. San Diego Conv. Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014). The intent element requires that the defendant acted "with a primary purpose or desire to interfere with the contract" or knew "that the interference is certain or substantially certain to occur as a result of his action." *Baez v. Pension Consulting All., Inc.*, No. CV 17-1938-RGK (AGRx), 2018 WL 1942389, *3 (C.D. Cal. Mar. 16, 2018) (citation omitted).

Here, the Complaint alleges that the TOU constitutes a valid contract between Plaintiff and players of the COD Games. (*See* FAC ¶ 128). Defendants are aware of the TOU and that it prohibits the use of cheating software. (*See id.* ¶ 131). Nevertheless, Defendants intentionally induce players to purchase and use the Cheating Software knowing that it would necessarily result in a breach of the TOU. (*See id.* ¶¶ 131–132). As a result of this breach, Plaintiff has suffered lost profits and a loss of goodwill among users. (*See id.* ¶ 133).

The Court therefore concludes that Plaintiff sufficiently alleges claims for violation of the DMCA, violation of the CFAA, violation of RICO, and intentional interference with contract. Accordingly, the second and third factors weigh in favor of default judgment.

### 3.     Amount in Dispute

Under the fourth factor, the Court "must consider the amount of money at stake in relation to the seriousness of [the] [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-cv-2532, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

Here, Plaintiff seeks a total of $14,465,600 in statutory damages. (Motion at 18–21). Ordinarily, such a large sum of money at stake would weigh in favor of Defendants. But the Court has "wide discretion in determining the amount of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 22-51-MWF (JCx) | Date: May 28, 2024 |
| Title: Activision Publishing, Inc. v. EngineOwning UG, et al. | |

statutory damages to be awarded." *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998).

Here, the Court deems the amount of requested damages reasonable, given that Plaintiff alleges that Defendants have acted willfully. (*See, e.g.*, FAC ¶ 108). Courts have not hesitated to award comparable amounts of statutory damages in similar circumstances. *See, e.g., Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal.2010) (finding default judgment damages in the range of $1.8–$4.9 million appropriate given similar allegations of willful conduct); *DISH Network L.L.C. v. Whitcomb*, No. 3:11-cv-00333-W-RBB (S.D. Cal. July 18, 2011) (awarding $10,000 per violation for a total of $14.4 million).

Accordingly, the Court concludes that this factor weighs in favor of default judgment because Plaintiff's allegations provide a basis for the award.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of a dispute between the parties regarding the material facts in the case. A defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint upon entry of default. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007). Here, the possibility of a dispute regarding a material fact is minimal because Defendants have shown no intent to participate in this action, Plaintiff has demonstrated facts necessary to support its claims, and default has been entered. Accordingly, this factor also weighs in favor of default judgment.

### 5. Excusable Neglect

Defendants have been served with the FAC and this Motion but have failed to appear in this action for unknown reasons. Additionally, there is no indication that their failure to answer the FAC is due to excusable neglect. Accordingly, the likelihood that default is the result of excusable neglect is remote. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 22-51-MWF (JCx) | Date: | May 28, 2024 |
| Title: | Activision Publishing, Inc. v. EngineOwning UG, et al. | | |

2001) (finding no excusable neglect where the defendants were served and failed to respond). This factor thus weighs in favor of default judgment.

### 6. Policy

Under the sixth factor, the Ninth Circuit has stated that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But here, Plaintiff's claims cannot be adjudicated on the merits as Defendants have failed to answer or respond to the FAC. While this factor may slightly weigh against entering default judgment, it is not dispositive in light of the other factors supporting default judgment. *See PepsiCo*, 238 F. Supp. 2d at 1177 (noting that the policy preference to decide cases on the merits "standing alone, is not dispositive").

Accordingly, on balance, the Court concludes that the *Eitel* factors weigh in favor of granting the Motion.

### III. REMEDIES

Having determined that default judgment is appropriate, the Court next considers the issue of remedies, which must be proven to the standard of summary judgment as discussed below. Plaintiff requests (1) injunctive relief, (2) statutory damages, and (3) attorneys' fees. (Motion at 17–22). The Court discusses each in turn.

### A. Injunctive Relief

Plaintiff first requests entry of a permanent injunction to enjoin Defendants' illicit enterprise and to transfer EO's domain name, www.EngineOwning.to, to Plaintiff's control. (*Id.* at 17–18, 22).

Under the DMCA, a court "may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation." 17 U.S.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 22-51-MWF (JCx) | **Date:** | **May 28, 2024** |
| **Title:** | Activision Publishing, Inc. v. EngineOwning UG, et al. | | |

§ 1203(b)(1). In order for a permanent injunction to issue, Plaintiff must demonstrate the following elements:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

According to the FAC and the Motion, Defendants continue to circumvent Plaintiff's security systems and sell the Cheating Software in violation of the DMCA. (*See* FAC ¶¶ 107, 110; *see also* Declaration of Marc E. Mayer (Docket No. 167-1) ¶¶ 2–7, Exs. 1–3). Given the difficulty in estimating actual damages arising from Defendants' unlawful activities, Plaintiff will continue – in the absence of an injunction – to suffer injuries that are not easily compensable. Nor will monetary damages remedy Plaintiff's future harm from the continuing violations. Moreover, in these circumstances, the balance of hardships and the public's interest favor Plaintiff.

The scope of the injunction is also appropriate. As Plaintiff notes, courts in the Ninth Circuit have ordered the transfer of domain names in similar cases. *See, e.g.*, *China Cent. Television v. Create New Tech. (Hk) Ltd.*, No. CV 15-01869-MMM (AJWx), 2016 WL 6871281, at *7–9 (C.D. Cal. May 31, 2016); *Craigslist, Inc. v. Doe 1*, No. C09–4739 SI (BZ), 2011 WL 1897423, at *4 (N.D. Cal. Apr. 25, 2011).

The Court is therefore satisfied that a permanent injunction should be issued to enjoin Defendants' unlawful conduct and to transfer EO's domain to Plaintiff.

### B.     Statutory Damages

Next, Plaintiff request $14,465,600 in statutory damages. (Motion at 20).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 22-51-MWF (JCx) | Date: May 28, 2024 |
| Title: Activision Publishing, Inc. v. EngineOwning UG, et al. | |

When a plaintiff seeks money damages in a default judgment, "the plaintiff must 'prove-up' its damages." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1053–54 (C.D. Cal. 2011) (citations omitted). When proving up damages, admissible evidence (including witness testimony) supporting damage calculations is usually required. *See* Weil & Brown, *Federal Civil Procedure Before Trial* § 5:201 (Rutter Group) (2023).

Under the DMCA, a plaintiff "may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A).

Here, Plaintiff seeks the minimum statutory damages of $200 under the DMCA, multiplied by the general approximation of the number of downloads of the cheating software in the United States (72,328), for a total of $14,465,600. (*Id.*). The Court finds this request reasonable in light of Defendants' willful conduct and Plaintiff's request for the ***minimum*** amount of damages per violation.

The Motion does not provide any sort of apportionment of the requested damages between each Defendant. However, it appears that Plaintiff seeks joint and several liability against all Defendants. (*See* Corrected Proposed Judgment (Docket No. 169-1). Accordingly, the Court will enter final judgment against Defendants pursuant to Federal Rule of Civil Procedure 58 with damages in the amount of **$14,465,600**.

### C. Attorneys' Fees

Finally, Plaintiff seeks $292,912 in attorneys' fees under Local Rule 55-3. (Motion at 22).

Pursuant to Local Rule 55-3, when an applicable statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated according to the following schedule:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-51-MWF (JCx)            **Date:** May 28, 2024

**Title:**      Activision Publishing, Inc. v. EngineOwning UG, et al.

| Amount of Judgment | Attorneys' Fees Awards |
|---|---|
| $0.01 - $1,000 | 30% with a minimum of $250.00 |
| $1,000.01 - $10,000 | $300 plus 10% of the amount over $1,000 |
| $10,000.01 - $50,000 | $1200 plus 6% of the amount over $10,000 |
| $50,000.01 - $100,000 | $3600 plus 4% of the amount over $50,000 |
| Over $100,000 | $5600 plus 2% of the amount over $100,000 |

Plaintiff is entitled to attorneys' fees and costs under the DMCA. *See* 17 U.S.C. § 505. Because Plaintiff's judgment is over $100,000, its attorneys' fees are calculated by adding $5,600 to 2% of $14,365,600 (the amount of judgment, $14,465,600, subtracted by $100,000.00).

Accordingly, Plaintiff is entitled to recover **$292,912** in attorneys' fees.

## IV. CONCLUSION

The Motion is **GRANTED**. Plaintiff is awarded injunctive relief, **$14,465,600** in statutory damages, and **$292,912** in attorneys' fees.

A separate judgment will issue.

IT IS SO ORDERED.